UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | 2:23-cv-10492-AB-AGR | Date: | May 23, 2024 |

| | |
|---|---|
| Title: | *Anya Roberts v. eXp Realty, LLC et al* |

| | |
|---|---|
| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **[In Chambers] ORDER DENYING BJORKMAN MOTION TO DISMISS (Dkt. 39); GRANTING EXP AND SANFORD MOTION TO DISMISS (DKT. 62); GRANTING GOVE MOTION TO DISMISS (DKT. 66)**

Before the Court are various motions to dismiss filed by four Defendants, eXp Realty, LLC, eXp World Holdings (together, "eXp"), Inc., Michael L. Bjorkman, Brent Gove and Glenn Sanford (all together, "Defendants")[1]. *See* Dkts. 39, 62, 66. Plaintiff Anya Roberts opposes each. *See* Dkts. 69, 70, 73. This Court hereby **DENIES** Bjorkman's motion to dismiss (Dkt. 39), and **GRANTS** eXp Realty, LLC and Glenn Sanford's motion to dismiss (Dkt. 62) and **GRANTS** Gove's motion to dismiss (Dkt. 66).

//
//

---

[1] Defendants David S. Golden, Emily Keenan, and Michael Sherrard did not file motions to dismiss.

## I.    Background

The case is related to another case before this Court, *Fabiola Acevedo v. eXp Realty, LLC et a*l, Case No. 2:23-cv-01304-AB-AGR. The general contentions are relatively the same in both cases as it concerns allegations of drugging and sexual assault involving a large real estate company, eXp, and its agents. Plaintiff Roberts, a real estate agent alleges that after being recruited into the company by Defendant Gove, she was encouraged by Gove, Sanford, and the entity eXp to attend certain industry conferences to help her career. *See* Dkt. 1, ("Complaint"). During a conference in Dallas in December 2019, Roberts alleges that "someone" above her in the hierarchical structure "acted grossly inappropriate to an agent" below Roberts' in the hierarchy. Compl. ¶ 36. Based upon this observation, Roberts concluded that "alienation from the inner circle at eXp Realty translated into lost revenue." Compl. ¶ 38.

Two more conferences are relevant here. First, during a conference in Puerto Vallarta, Mexico, in February 2020, Roberts alleges that Defendant Keenan put a pill in Roberts' mouth while the pair was speaking with Golden, and that Roberts later "blacked out" without any personal recollection of what happened. Compl. ¶ 53. She was allegedly told by others that she was kissing Defendant Keenan, and Roberts believes she was sexually assaulted by Golden and Keenan. Roberts alleges that Golden told her that if she chose him as her sponsor at the company, she would have more financial success. Following a conference in Las Vegas, Nevada, that same month, Roberts began a relationship with Golden. Roberts and Golden shared a hotel room during a conference the next month where Roberts took what was pitched by Golden as a workout performance enhancing drug. Compl. ¶ 80. After taking the drug from Golden, Roberts alleges that she "blacked out", and recalls that Bjorkman exposed himself to her the next morning and that she believes she was sexually assaulted by Golden and Bjorkman. She also believes that the men took pictures of her that night.

Roberts sued, lodging six causes of action, including three claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which is codified as 18 U.S.C. § 1591, and various state tort claims including battery, intentional infliction of emotional distress claim, negligent hiring, retention, and supervision claim. As to the federal claims, Roberts alleges Defendant Golden and Bjorkman each perpetrated sex trafficking under the TVPRA (Claim One and Two), and that Defendants eXp Realty, Sanford, and Gove benefitted from sex trafficking within the meaning of the TVPRA (Claim Three).

## II.    Legal Standard

### A. 12(b)(6)

Fed. R. Civ. P. 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

### B. TVPRA

Because this motion concerns the same law and general allegations as in *Acevedo*, the Court re-summarizes the law as stated in the Court's motion to dismiss. *Acevedo v. Exp. Realty, LLC*, 2024 U.S. Dist. LEXIS 16498, 2024 WL 650189 (C.D. Cal Jan. 29, 2024).

Congress enacted the Trafficking Victims Protection Act of 2000 ("TVPA") to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Ditullio v. Boehm,* 662 F.3d 1091, 1094 (9th Cir. 2011) (quoting Pub. L. No. 106–386, 114 Stat. 1464 (Oct. 28, 2000) (codified as amended at 18 U.S.C. § 1589 et. seq.)). The legislation created several new federal criminal offenses for forced labor and sex trafficking "intended to more comprehensively and effectively combat human trafficking." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1164 (9th Cir. 2022) (quoting *Roe*

*v. Howard*, 917 F.3d 229, 236 (4th Cir. 2019)). Congress has repeatedly reauthorized and amended the Trafficking Victims Protection and Reauthorization Act ("TVPRA") to expand coverage—most significantly, by creating a civil remedy against traffickers and then extending liability to those that benefit from what they should have known was a trafficking venture. [2]

Two provisions of the TVPRA are relevant to this case.   First, 18 U.S.C. § 1591 provides for criminal penalties for sex trafficking:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Section 1591 defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," 18 U.S.C. § 1591(e)(4), "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity," 18 U.S.C. § 1591(e)(6), and "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

Second, 18 U.S.C. § 1595 sets forth the standard for civil liability under the TVPRA. That section currently provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person

---

[2]  The Court hereinafter refers to the TVPA, as reauthorized and amended, as the TVPRA.

knew or should have known has engaged in an act in violation of this
chapter) in an appropriate district court of the United States and may
recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

Thus, § 1595 provides trafficking victims with a private right of action to
pursue claims against perpetrators of trafficking ("direct liability") or those who
knowingly financially benefit from trafficking ("beneficiary liability"). *Doe v.
Mindgeek,* 558 F. Supp. 3d 828, 835 (C.D. Cal. 2021) (*Mindgeek*). The
requirements for beneficiary liability can be stated as follows: (1) the person or
entity must "knowingly benefit[ ], financially or by receiving anything of value,"
(2) from participating in a venture, (3) that the "person knew or should have known
has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a); *M.A. v.
Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019).

## III.   Discussion

### A. Bjorkman's Motion to Dismiss (Dkt. 39)

Bjorkman moves to dismiss the TVPRA count (Claim Two) against him for
much of the same reasons he moved to dismiss the claims in *Acevedo*, arguing that
the Plaintiff failed to allege a "commercial sex act" and that she failed to allege
"enticement" or "recruitment". He further contends that because the federal claim
against him ought to fail, the Court lacks subject matter jurisdiction to hear the
remaining state law allegations against him.

As to the sex act, Bjorkman argues that there is no assertion that Bjorkman
spoke with the Plaintiff regarding her career which he argues would be required to
establish the bargained for exchange element of a commercial sex act. Bjorkman
further argues that the Plaintiff failed to allege any "sex act" at all as it relates to
Bjorkman, contending that Bjorkman is alleged to have entered her hotel room
naked and alleged to have made a comment about Plaintiff's shyness. Just as the
Court did in *Acevedo*, we reject the Bjorkman's argument that Bjorkman appearing
naked could not rise to that of a "sex act". First, there is no requirement that a sex
act, in fact, occur. *United States v. Hornbuckle,* 784 F.3d 549, 553–54 (9th Cir.
2015) (finding commission of a sex act or sexual contact is not an element of a
conviction under 18 U.S.C. § 1591). Rather, the relevant statutory language
requires the defendant take certain action (i.e., "entice" the victim) knowing that
she "will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a).

Furthermore, Plaintiff alleges that Bjorkman "knew that Golden arranged to have a delivery of GHB made to their hotel for the purpose of drugging Ms. Roberts so that they could both engage her in sex acts" and that "Bjorkman…fraudulently caused Ms. Roberts to engage in sexual contact for the purpose of using that relationship to get Ms. Roberts to change her sponsor…" Compl. ¶ 141, 143. The sexual contact referenced in ¶143 was first described in ¶81, where Roberts stated that she "believes she was sexually assaulted by …Defendant Bjorkman the previous night while she was incapacitated." The Court finds that this is sufficient to have alleged a sex act.

Whether it was commercial in nature is also resolved in Plaintiff's favor. As reasoned in *Acevedo*, Plaintiffs must allege "*any sex act* on account of which *anything of value* is given to or received by *any person*." 18 U.S.C. § 1591(e)(3) (emphasis added). While this implies a causal connection between the sex act and the commercial exchange, it does not require a bargained for exchange. The coexistence of the sex act and the thing of value is the exchange necessary to satisfy a commercial sex act. Here, Plaintiff alleges that attendance at the industry conferences, where the sex acts occurred, were crucial for career advancement and alleges that Bjorkman stood to financially benefit by gaining Roberts as an agent in his downline following Golden's "pressure campaign." *See* Compl. ¶ 64, ¶142. Plaintiff further alleges that Bjorkman took pictures of her following the sexual assault, which courts have considered to be "things of value". *See, e.g.*, *Doe v. Fitzgerald*, No. cv-20-10713-MFW (RAOx), 2022 U.S. Dist. LEXIS 8194, at *18 (C.D. Cal. Jan. 6, 2022) (declining to find that sexual acts themselves represent things of "value" but finding that photographs and videos of the alleged sex acts do). Thus, construing these factual allegations in the light most favorable to Plaintiff, there is a plausible inference that Defendant Bjorkman caused Plaintiff to engage in a commercial sex act within the meaning of § 1591. Accordingly, the Court **DENIES** Defendant Bjorkman's motions to dismiss Claim Two.

### B. Sanford and eXp's Motion to Dismiss (Dkt. 62)

Defendants eXp and its CEO Glenn Sanford (together "Entity Defendants") move to dismiss Claim Three (violation of 18 U.S. ¶ 1595) and Claim Seven (negligent hiring, retention, and supervision), arguing that the Plaintiff failed to include any facts supporting the contention that they received anything of value because of sexual assaults or that they knew or should have known about Golden and Bjorkman's actions. Claim Three alleges that the Entity Defendants participated in a venture (the Revenue Share Plan) with Golden and Bjorkman by promoting Golden and Bjorkman's recruitment efforts, "which included luring

agents to attend recruitment events with promises of career advancement." Compl.
¶ 146. Plaintiff alleges that the Entity Defendants received monetary gain from
Golden and Bjorkman's recruitment activities (as they were the top recruiters).
Furthermore, Plaintiff alleges that the Entity Defendants knew or should have
known that Golden and Bjorkman were using drugs to sexually assault real estate
agents, and that after having "actual knowledge" of the illegal conduct, they
continued to endorse the scheme. Plaintiff contends that at least some of the
knowledge would be based on various incidents that occurred in Las Vegas that
resulted in police reports. Compl. ¶ 124. Plaintiff also alleges that in April 2022, an
eXp Board Member addressed the failure to take action to curb sexual assault
incidents at the conferences, but Sanford told that Board Member that "this was not
their problem and would be simply a three-to-five-day newspaper phenomenon and
then would disappear." Compl. ¶ 3.

Regarding Claim Three and the Entity Defendants' receipt of anything of
value, as summarized in *Acevedo*, the requirements for beneficiary liability under
the TVPRA can be stated as follows: (1) the person or entity must "knowingly
benefit, financially or by receiving anything of value," (2) from participating in a
venture, (3) that the "person knew or should have known has engaged in an act in
violation of [the TVPRA]." *M.A.*, 425 F. Supp. 3d at 964 (citing 18 U.S.C. §
1595(a)). Unlike § 1591, § 1595 does not define "participation in a venture."
*Compare* 18 U.S.C. § 1595 *with* 18 U.S.C. § 1591(e)(4) (defining "participation in
a venture" as "knowingly assisting, supporting, or facilitating a [TVPRA]
violation[.]"). The Court agrees with numerous courts that have held this and the
"should have known" language means that a beneficiary's "participation" need not
include an overt act in furtherance of or actual knowledge of a sex trafficking
venture. *See A.B. v. Marriot Int'l, Inc.*, 455 F. Supp. 3d 171, 183–88 (E.D. Pa.
2020) (collecting cases and declining to apply § 1591's "participation in a venture"
definition to a § 1595 claim).

As the Entity Defendants recognized in their briefing, this Court denied their
motion to dismiss in part because the Defendants knowingly received a financial
benefit from a relationship with Bjorkman whose recruitment efforts were
allegedly intertwined with the sexual assaults. However, the Entity Defendants
distinguish the present case on the ground that the Plaintiff was already an agent
with the company. In other words, Defendants argue that there are no recruitment
efforts in play since Roberts already worked for eXp, never joined Golden's
downline, and whatever benefit eXp could receive from her employment was
already received at the time she joined, not after a failed attempt to switch her
sponsor. Dkt. 63 at 15 ("Plaintiff fails to plead how Golden's alleged attempt to

recruit Plaintiff to change her sponsor to Golden would confer an additional benefit to eXp or Sanford had he succeeded, except to conclusory and speculatively allege that Sanford would benefit from Plaintiff receiving Golden's sponsorship"). The Court agrees. Even reading the complaint in favor of the Plaintiff, it remains unclear what benefit the Entity Defendants stood to gain from Plaintiff switching her sponsor in response to the alleged sex acts. Indeed, it is not alleged that her initial recruitment was intertwined with the sex acts as was the case in *Acevedo*. Instead, the Plaintiff hitches the Entity Defendants' liability to a generalized theory that what may benefit Golden or Bjorkman necessarily benefits the Entity Defendants within the meaning of the TVPRA, and without more, the Court cannot endorse that proposition based on the current pleading. Additionally, the Entity Defendants correctly note a few other deficiencies, including Plaintiff's failure to allege that the Defendants were made aware of the police reports or that they knew the contents. Even accepting the truth of the allegation regarding Sanford's comment to the Board Member, who remains unidentified, it is unclear whether that conversation included discussion of the conference attendance scheme involving Bjorkman and Golden as alleged here. Therefore, the motion to dismiss is **GRANTED**, **with leave to amend,** to further clarify the benefits conferred by Roberts' attendance at the conferences or switching uplines, in addition to curing any other deficiencies.

Regarding Claim Seven, Defendant challenges the Complaint for failure to allege facts sufficient to establish an employer relationship, control, or that the actions of Bjorkman and Golden were foreseeable. Plaintiff appears to concede in her Opposition that certain amendments are warranted. *See* Dkt. 70 at 17. For these reasons, the motion to dismiss is **GRANTED, with leave to amend,** to cure the deficiencies related to the employer relationship, among any other deficiencies.

### C. Gove's Motion to Dismiss (Dkt. 66)

Defendant Gove also moves to dismiss the Claim Three, which is the only cause of action against him. Roberts alleges that Gove "was personally involved in this high-pressure recruitment effort of Ms. Roberts." Compl. ¶ 25. Like her allegations against the Entity Defendants, Robert alleges that Gove "stressed at these conferences that the sole path to success at eXp REALTY was not selling real estate, but rather, attracting more people to join DEFENDANT eXp REALTY… [i]n essence, DEFENDANT GOVE, DEFENDANT SANFORD and DEFENDANT eXp REALTY's focus was on recruitment and the money that could be made by recruiting others, rather than simply selling real estate." Compl. ¶ 31.

Defendant Gove challenges the Complaint as including insufficient facts to demonstrate "enticement" because the alleged recruitment activities were "nothing more than passive advertisements…" Dkt 66-1 at 5. Defendant Gove also challenges the Complaint for failure to allege facts demonstrating his knowledge of the sexual assaults sufficient to confer beneficiary liability. Plaintiff contends that he was aware of the "modus operandi", and that he was present on the boat where Roberts was drugged and acting erratically. The Court generally agrees with the Defendant's critique and believes the Complaint would benefit from additional facts articulating Gove's awareness of the alleged bad behavior with more specificity.

Finally, Defendant Gove challenges the sufficiency of the facts alleging a benefit, and we concur with this challenge for the reasons articulated for the Entity Defendants: based upon the current pleadings, it is unclear what thing of value Gove stood to gain from the sexual assault or Roberts switching her sponsor. In her Opposition, Roberts appears to suggest that the "thing of value" was Roberts' presence at conference events because her "natural allure" would "reinforce Defendants' desired optics…" Even if the Court were to accept that as a thing of value within the meaning of TVPRA, that contention is not plead in the Complaint.

Defendant Gove separately moves to dismiss the requested relief of punitive damages. Gove concedes that the TVPRA allows for punitive damages but argues that no malicious conduct is alleged as required. This Court finds this motion unnecessary, or at least premature, because punitive damages are not requested in the claim against Gove as it is in other Claims, and to the extent that punitive damages are generally referenced in the "Request for Relief" section, it reads "for any *appropriate* punitive…" Compl. at 40. In other words, if punitive damages are not appropriate, they will not be rewarded. Nonetheless, it appears that Plaintiff Roberts is amenable to articulating more facts that support a punitive damage claim, *see* Dkt. 67 at 14, and so we grant her leave to do so.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **DENIES** Defendant Bjorkman's motion to dismiss (Dkt. 39), **GRANTS** the Entity Defendants' motion to dismiss with leave to amend (Dkt. 62), and **GRANTS** Gove's motion to dismiss with leave to amend (Dkt. 66). Plaintiff shall file her amended complaint within 21 days of this Order.

**IT IS SO ORDERED**.