CHESNOFF & SCHONFELD
RICHARD A. SCHONFELD, ESQ. (SBN 202182)
Email: rschonfeld@cslawoffice.net
ROBERT Z. DEMARCO, ESQ. (admitted *pro hac vice*)
Email: rdemarco@cslawoffice.net
520 S. 4th Street
Las Vegas, NV 89101
Telephone: 702-384-5563
Facsimile: 702-598-1425
Attorneys for Defendant Michael Bjorkman

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANYA ROBERTS, | ) Case No. 2:23-cv-10492-AB-AGR |
| Plaintiff; | ) **DEFENDANT MICHAEL** |
| v. | ) **BJORKMAN'S** |
| | ) **STATEMENT OF** |
| | ) **UNCONTROVERTED FACTS** |
| eXp REALTY, LLC, | ) **FOR PURPOSES OF** |
| MICHAEL L. BJORKMAN, | ) **SUMMARY JUDGMENT** |
| DAVID S. GOLDEN, BRENT GOVE, | ) |
| EMILY KEENAN, GLENN SANFORD, | ) |
| MICHAEL SHERRARD, and DOES 1-10 | ) |
| | ) |
| Defendants. | ) |

**TO:   PLAINTIFF AND THEIR COUNSEL OF RECORD;**

**TO:   DEFENDANTS AND THEIR COUNSEL OF RECORD;**

**TO:   ANY OTHER INTERESTED PARTY**

1

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

COMES NOW, Defendant Michael Bjorkman, by and through his undersigned counsel and hereby submits this Statement of Uncontroverted Facts for Purposes of Summary Judgment.

Dated this 12th day of March, 2026

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/ Robert Z. DeMarco
RICHARD A. SCHONFELD, ESQ.
(SBN 202182)
Email: rschonfeld@cslawoffice.net
ROBERT Z. DEMARCO, ESQ.
(admitted *pro hac vice*)
Email: rdemarco@cslawoffice.net
520 S. 4th Street
Las Vegas, NV 89101
Telephone: 702-384-5563
Facsimile: 702-598-1425
Attorneys for Defendant
Michael Bjorkman

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

## STATEMENT OF UNCONTROVERTED FACTS

Defendant Michael L. Bjorkman submits the following Statement of Uncontroverted Facts in support of his Motion for Summary Judgment. All excerpts are bracketed in compliance with the Court's Standing Order requiring pinpoint evidentiary support:

1.    Plaintiff went to Daytona Beach Florida around March 12, 2020, because Defendant David Golden invited her. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████    *also* FAC ¶131:

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

████████████████████████████

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT



4
DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

**2.**     Plaintiff testified that, at the initial recruiting conference, no one mentioned Defendant Michael Bjorkman to her. Supporting Evidence: Ex. D, 12.12.2025 Roberts Dep. Vol. IV, 25:24–26:1-2:

> [Q:  Did anybody at the conference mention Michael Bjorkman?
> A: No.]

**3.**     Plaintiff first met Defendant Bjorkman during a recruiting trip to Daytona Beach, Florida in March 2020. Supporting Evidence: Ex. C, 12.11.25 Roberts Dep. Vol. III, 20:21–22:

> [Q. Okay. So your first substantive interaction with Mr. Bjorkman was in March of 2020 in Daytona Beach, Florida; true?
> A. True.]

**4.**     Plaintiff testified that she had only met Defendant Bjorkman in person approximately 48 hours or less before the alleged shower interaction.  Supporting Evidence: Ex. A, 11.14.25 Roberts Dep. Vol. I, 266:19–267:1:

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

[Q: How long had you known Mr. Bjorkman as of that shower?
A: A couple -- I mean depending on when this happened -- okay. Let's
see.  If the trip was a few nights, 48 hours, potentially, from when --
or that's an estimate from when I had first met Michael Bjorkman in
person]

5.     Plaintiff testified that Defendant Bjorkman was, at that time, essentially

a business associate and stranger.  Supporting Evidence: Ex. A, 11.14.25 Roberts

Dep. Vol. I, 267:4–13:

[THE WITNESS: It's out of character for me to be naked around a -- a
business associate that I would consider a stranger. So it didn't seem
like a normal occurrence with a colleague that they would feel
comfortable coming in a room where you're showering and you're
naked and they're naked and they're indicating that I should be
comfortable. I put all of those facts together to make the assumption
that there was a sexual assault the night before.]

6.     Plaintiff  testified  that  on  the  first  night  in  Daytona  Beach,

Defendant Bjorkman arrived at the hotel room with luggage and stated he

would also be staying in the room. Supporting Evidence: Ex. A, 11.14.25

Roberts Dep. Vol. I, 238:10-239:2; *see also* FAC ¶133:

[Q.  Okay. And was this a hotel room under your name or David's
name?
A.  I should say my first memory is checking into the hotel room with
-- with -- or going to the hotel room and Michael Bjorkman arriving.
This is David's hotel room.
Q.  Did you check in?
A.  I don't have a specific memory of that.
Q.  Okay.  So your recollection is that you went to the room?

6
DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

A. Yeah, that -- went to the room, and I think that night there was a
concert, and I remember Michael Bjorkman arriving at the room with
his luggage.
Q. Before or after the concert?
A. This was before. I -- I think this was before. And I remember being
shocked that Michael Bjorkman was staying in the same room as
David and I. I remember being upset by that.]

7.     Plaintiff testified that at some point during the trip Defendant Golden

received a delivery of GHB, although she could not recall precisely when the delivery

occurred. Ex. C, 12.11.25 Roberts Dep. Vol. III, 21:24-24:4 *see also* FAC ¶134:

[Q. Okay. And then you had testified in your last deposition sessions
that at some point in time, Defendant Golden received a delivery of
GHB, but you didn't recall whether that was the first day, the second
day? You didn't know what when it happened; true?
A. That's true. I -- I did have – my memories are in flashes and hard to
-- to decipher chronologically. But it doesn't make sense that it was on
the concert day.
Q. Okay. But do you see here in your Complaint where you
definitively stated the next day, while at the hotel, Defendant Golden
received a delivery of GHB?
A. I do see that.
MS. HIRSCH: Object to form.
THE WITNESS: And now that I see it written here, the way it is, that
that might be incorrect. That --
BY MR. SCHONFELD:
Q. Okay. So --
A. The date may be wrong.
Q. Right. Okay. So your Complaint says that the GHB was received
the day after Mr. Bjorkman arrived at the hotel room with his luggage,
correct?
A. Correct.
Q. But your testimony is that you do not know which day the GHB
was actually delivered, correct?

7

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

MS. HIRSCH: Object to form.

And I'm gonna state to the extent that this calls for communications
with your counsel, I'd instruct you not to answer.

But to the extent you have independent recollection outside
conversations with your counsel, go ahead and answer.

MR. SCHONFELD: Respectfully, I think she's the only one that can
have a recollection as to when the GHB was allegedly delivered.

MS. HIRSCH: Well, we actual evidence of that. So I don't -- that's not
true.

THE WITNESS: So my understanding would be based on
communications that I had with my attorneys. So I think it's better that
I don't answer.

BY MR. SCHONFELD:

Q. Okay. As you sit here today, you do not have a personal
recollection as to which day the alleged GHB was delivered to the
hotel in Florida; true?

A. It's -- it's hard for me to say with certainty.

Q. Okay. So I'm correct that you don't have a personal recollection as
to which day the alleged GHB was delivered to the hotel in Florida,
correct?

A. You're correct. Yeah.]

**8.**     Plaintiff testified that she voluntarily accepted and consumed GHB

during the trip.  Supporting Evidence: Ex. B, 11.18.25 Roberts Dep. Vol. II, 199:8-

200:14; FAC ¶135:

[Q.  You testified that Mr. Golden told you that the package had GHB
in it; correct?
A.  Yes.
Q.  So it was not hidden from you, that the substance that you alleged
to be GHB was represented to you to be GHB; correct?
A.  Can you say it again?
Q.  Yeah.  I'm -- what I'm getting at is it wasn't, like, slipped into your
drink. You knew that it was GHB when you consumed it; correct?
MS. LENZE:  Object to form.

8

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

THE WITNESS: Yes.
BY MR. SCHONFELD:
Q. So I'm correct. When you consumed the GHB, you knew that it was GHB; correct?
MS. LENZE: Object to form.
THE WITNESS: Correct.
BY MR. SCHONFELD:
Q. And you voluntarily consumed it; correct?
MS. LENZE: Object to form.
THE WITNESS: I'd like to clarify. I was told it was GHB.
BY MR. SCHONFELD:
Q. Okay. As you sit here today, do you believe it was something other than GHB?
MS. LENZE: Object to form.
THE WITNESS: No.
BY MR. SCHONFELD:
Q. Okay. And you voluntarily consumed the item that you were told was GHB; correct?
A. Correct.]

**9.** Plaintiff testified that the next morning Defendant Bjorkman entered the bathroom while she was showering. Further she testified that she did not recall locking the door and that she does not normally lock the door when she takes a shower. Supporting Evidence: Ex. A, 11.14.25 Roberts Dep. Vol. I, 260:8-19:

[A. So the next memory I have is taking a shower. It was the next day. And I remember Michael Bjorkman coming into the bathroom fully naked.
Q. Was the door closed when you were taking a shower?
A. Yes.
Q. Did you lock the door?
A. Not that I recall.

9

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

Q. Do you normally lock the bathroom door when you take a shower?
A. No.]

**10.**    Plaintiff testified that she does not remember what Defendant

Bjorkman was doing prior to entering the bathroom. Moreover, Plaintiff testified

that she does not remember where Defendant Bjorkman was located in the room

prior to entering the bathroom. Supporting Evidence: Ex. C, 12.11.25 Roberts Dep.

Vol. III, 281:13–25:

> [Q. What was Mr. Bjorkman doing when you went to get into the
> shower before he walked into the bathroom?
> MS. HIRSCH: Object to form.
> THE WITNESS: I don't remember.
> BY MR. SCHONFELD:
> Q. You don't remember where he was located in the room either, do
> you?
> MS. HIRSCH: Object to form.
> THE WITNESS: I don't.]

**11.**    Plaintiff testified that she does not know whether Defendant Bjorkman

knew she was in the shower when he entered the bathroom. Furthermore, Plaintiff

testified that she cannot state with certainty what Defendant Bjorkman did while in

the bathroom and that her knowledge was limited to hearing the sound of the toilet

flushing. Supporting Evidence: Ex. C, 12.11.25 Roberts Dep. Vol. III, 282:4-284:24:

> [Q. Okay. What evidence can you point to that would even suggest, if
> not evidence, that Mr. Bjorkman knew you were in the shower when he
> walked into the bathroom?
> MS. HIRSCH: Object to form.

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

THE WITNESS: I don't know. Maybe the sound of the shower.

BY MR. SCHONFELD:

Q. Okay. You'd be speculating, correct?

MS. HIRSCH: Object to form.

THE WITNESS: Can you rephrase the question, please?

BY MR. SCHONFELD:

Q. Yeah. I'll ask it again. Can you point to any evidence that would establish that Mr. Bjorkman knew that you were in the shower at the moment that he walked into the bathroom?

MS. HIRSCH: Object to form.

THE WITNESS: I'm sorry. One more time. Can I point to any --

BY MR. SCHONFELD:

Q. Can you point to any evidence that would establish that Mr. Bjorkman knew that you were in the shower at the point in time when he walked into the bathroom?

A. No. I don't know.

Q. And you testified that when he walked into the bathroom, he went and used the toilet, correct?

MS. HIRSCH: Object to form.

THE WITNESS: I remember the toilet flushing.

BY MR. SCHONFELD:

Q. Which would suggest that he used the toilet, correct?

MS. HIRSCH: Object to form.

THE WITNESS: I -- I don't want to speculate. I just heard the sound of the toilet flushing.

BY MR. SCHONFELD:

Q. Okay. So you won't speculate that Mr. Bjorkman used the toilet, but you've reached the conclusion that he must have had some form of sexual contact with you based upon his statement that, "Oh, now you're shy"; is that accurate?

MS. HIRSCH: Object to form.

THE WITNESS: I -- I can't tell with certainty if he used the toilet. But as I previously testified, there was a culmination of factors that gave me the belief I was sexually assaulted by Michael Bjorkman.

11

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

BY MR. SCHONFELD:
Q. If it wasn't Mr. Bjorkman who flushed the toilet while you were in the shower, then who was it?
MS. HIRSCH: Object to form.
THE WITNESS: I'm not sure I understand what you're asking.
BY MR. SCHONFELD:
Q. Okay. Well, you said he walked into the bathroom and you heard the toilet flush, correct?
MS. HIRSCH: Object to form.
THE WITNESS: I -- I heard the sound of the toilet flushing while he was in the bathroom. But what I previously said is that I don't know if he used the bathroom.
BY MR. SCHONFELD:
Q. Okay.
A. But I only know that the toilet flushed.]

12.    Plaintiff testified that her belief she had been sexually assaulted was based on Defendant Bjorkman's verbal comment in the bathroom. Plaintiff testified that her conclusion was based on an assumption drawn from circumstances and her interpretation of the comment. Supporting Evidence: Ex. A, Roberts Dep. Vol. I, 265:23–267:13.

[Q. So your belief that you had been sexually assaulted the night before was because of Mr. Bjorkman's comment to you in the bathroom?
A. Yes. But also, I had the bad feeling that something had happened, and I don't know – I don't know how to describe it, except I knew something was wrong.
Q. When did you believe something was wrong?
A. I had an undercurrent of feeling like something was wrong during this entire time period.
Q. So in the shower you had an undercurrent?

12
DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

A.   Well, certainly after that comment. Well, first of all, I have somebody that I consider to be a business associate exposing themselves to me and making a joke, "Oh, what are you shy now." That's very out of character.  So to me, that was an indication that something sexual had occurred or that I should be comfortable being naked around this individual that I thought was a colleague.

Q.  How long had you known Mr. Bjorkman as of that shower?

A.  A couple -- I mean depending on when this happened -- okay.  Let's see. If the trip was a few nights, 48 hours, potentially, from when -- or that's an estimate from when I had first met Michael Bjorkman in person.

Q.  How do you know what is out of character for Mr. Bjorkman?

MS. HIRSCH:· Object to form.

THE WITNESS: It's out of character for me to be naked around a -- a business associate that I would consider a stranger. So it didn't seem like a normal occurrence with a colleague that they would feel comfortable coming in a room where you're showering and you're naked and they're naked and they're indicating that I should be comfortable. I put all of those facts together to make the assumption that there was a sexual assault the night before.]

**13.**    Specifically, Plaintiff alleges that the sole basis of her claim against

Defendant Bjorkman arises from an interaction that occurred while Plaintiff was in

the shower at the hotel room in Daytona Beach.  Supporting Evidence: Ex. B,

11.18.25 Roberts Dep. Vol. II, 207:1–209:19:

[Q.  When was the first time you told anybody about the interaction that you allege to have occurred between you and Mr. Bjorkman while you were in the shower and Mr. Bjorkman walked in naked?

A.  I don't remember.

Q.  So as you sit here today, you cannot testify when the first time was that you told anybody related to that interaction; correct?

A.  Correct.

Q.  Did you tell anybody prior to filing this lawsuit -- strike that.

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

Other than communicating with your counsel and filing this lawsuit, did you ever tell anybody regarding the interaction you allege to have occurred between you and Mr. Bjorkman while you were in the shower and he walked into the bathroom naked?

A. Yes.

Q. Who?

A. Holly Madden.

Q. Okay. And you don't recall whether that was within a month of the alleged occurrence?

A. I don't recall.

Q. Six months of the alleged occurrence?

A. I would be guessing if I answered.

Q. Okay. So it could have been one month; it could have been three years. Fair?

MS. LENZE:· Object to form.

THE WITNESS:· I don't remember when.

BY MR. SCHONFELD:

Q. Okay. Do you remember how you told her? Was it in person? Was it by E-mail? Was it by text message?

A. No.

Q. So you don't remember how you told --

A. Correct.

Q. -- Holly Madden about that alleged interaction; correct?

A. Correct.

Q. Did you tell anyone else other than your counsel and by way of filing this lawsuit?

A. Not that I recall.

Q. But just so we're clear, it was in that moment that Mr. Bjorkman allegedly said to you, "Oh, now you're shy," that you reached the conclusion that you had been sexually assaulted in that hotel room in Daytona Beach, Florida; correct?

MS. LENZE: Object to form.

THE WITNESS: I had a feeling that something bad had happened.· But what he said, coming in naked when I was naked, was indicating that we had been naked together previously.

BY MR. SCHONFELD:

14
DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

Q. Okay. Do you recall testifying at your last deposition that
certainly after that comment, that was out of character, so to you that
was an indication that something sexual had occurred?
A. What was the question?
Q. Do you remember that testimony?
A. Yes.
Q. Okay. So you reached the conclusion while standing in the
shower inside the hotel room at Daytona Beach, Florida, in March of
2020, that something sexual had occurred between you and Mr.
Bjorkman. Is that your testimony?
A. Yes.
Q. And that it was based solely on Mr. Bjorkman walking into the
bathroom naked and making the comment, "What, are you shy now";
correct?
A. Yes.]

**14.** Plaintiff did not report the alleged assault to police, did not get a "rape

kit," and did not get a toxicology screen. Supporting Evidence: Ex. A, 11.14.25

Roberts Dep. Vol. I, 280:11-18:

Q. Did -- after the events in Daytona Beach, did you get any tox
screen to figure out what drugs were in your system?
A. No.
Q. Did you get a rape kit done?
A. No.
Q. Did you call law enforcement?
A. No.

**15.** Plaintiff testified that she has no knowledge or evidence of Mr.

Bjorkman and/or Mr. Golden taking pictures or videos of her. Plaintiff expressly

testified that she cannot point to any evidence whatsoever that pictures or videos of

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

her engaged in a sexual act were ever taken during the Daytona Beach weekend.

Supporting Evidence: Ex. C, 12.11.25 Roberts Dep. Vol. III, 33:1-36:14:

> [In the next two paragraphs, 139, do yousee where it says, "Upon information and belief, Defendant Bjorkman and Defendant Golden took pictures and/or videos of her" -- meaning you -- "that night."
> Do you see that?
> A. Yes.
> Q. What information and belief do you have that Defendant Bjorkman or Defendant Golden took pictures or videos of you that night?
> MS. HIRSCH: Object to form.
> THE WITNESS: I don't know.
> BY MR. SCHONFELD:
> Q. Okay. So, as you sit here today, you cannot testify as to why you have a belief that Defendant Bjorkman or Golden took pictures or videos of you that night; true?
> MS. HIRSCH: I'm gonna instruct the client, Miss Roberts, not to answer this question to the extent it calls for conversations and information she received from her attorneys and that would violate the attorney-client privilege. But to the extent you have information outside of those conversations, then you're free to go ahead and testify.
> THE WITNESS: It's better that I don't speak on that.
> BY MR. SCHONFELD:
> Q. Okay. So the only information you have as to forming a belief that Defendant Bjorkman and Defendant Golden took pictures or videos of you that night is something that your attorney told you; true?
> MS. HIRSCH: Object to form.
> THE WITNESS: Correct.
> BY MR. SCHONFELD:
> Q. And as you sit here today, you cannot point to a single piece of evidence to establish that Defendant Bjorkman or Defendant Golden took a picture or a video of you that night; true?
> MS. HIRSCH: Object to form.
> THE WITNESS: I've -- I've seen photos.
> BY MR. SCHONFELD:

16

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

Q. From -- photos of what?

A. Produced by counsel.

Q. Okay. I'm asking you to identify for the time period of March 10th, 2020 to March 12th of 2020 what evidence exists to suggest or establish Defendant Bjorkman or Defendant Golden took sexual pictures or videos of you that night.

MS. HIRSCH: Object to form.

THE WITNESS: I don't know.

BY MR. SCHONFELD:

Q. Okay. And the reason I qualified that with "sexual" is, I've already shown you a video of you and other people on the patio listening to the music of the concert below. Do you remember that?

A. Yes.

Q. Okay. So I'm not referring to that type of a video, which is just people, you know, spending time together and celebrating. You understood that?

Okay. It's just that --

Q. I'm ask- -- I'm asking you what evidence you can point to that would establish that Defendant Bjorkman or Defendant Golden took an improper, inappropriate picture or video of you that night?

MS. HIRSCH: Object to form.

THE WITNESS: I've seen pictures from other nights.

BY MR. SCHONFELD:

Q. Okay. So you cannot point to any evidence to establish that Mr. Bjorkman or Mr. Golden took an inappropriate picture or video of you between March 10th, 2020 and March 12th, 2020; true?

MS. HIRSCH: Object to form.

THE WITNESS: That's correct. Sorry. MS. HIRSCH: Yeah. Just give me a second.

THE WITNESS: I'm sorry.

MS. HIRSCH: I know you want to answer.

THE WITNESS: All right.

BY MR. SCHONFELD:

Q. What was your answer?

A. That's correct.]

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

**16.**    Plaintiff's retained expert, Dr. Chitra Raghavan, testified that Ms.

Roberts did not recall any sexual contact with Defendant Michael Bjorkman and

that Dr. Raghavan is not offering any opinion that Bjorkman engaged in sexual

misconduct toward Plaintiff.  Specifically, Dr. Raghavan testified that the only

conduct Roberts described involving Bjorkman was that he entered the bathroom

while Roberts was showering, and that Roberts did not recall any physical contact

with him.  During approximately 13 hours of interviews with Plaintiff, Roberts

likewise never told Dr. Raghavan that Bjorkman sexually assaulted her.  Dr.

Raghavan therefore acknowledged that Roberts did not claim to her that Bjorkman

sexually assaulted her.  Supporting Evidence: Ex. E, 2.13.26 Dr. Chitra Raghavan

Dep.:

> [Q.  Is it your recitation that as a result of your interactions with Ms.
> Roberts, she does not know what role Mr. Bjorkman played in terms of
> the events between March
> 10 and 12, 2020?
> MS. LENZE: Objection to form.
> A. I'm just being careful here. I'm not opining on whether Mr. Bjorkman
> did or didn't do anything. My role here is are her symptoms consistent
> with allegations of coercion and sexual trauma. But she does not recall
> -- she does not recall any contact with Mr. Bjorkman, other than his
> entering the shower naked when she was showering also in the nude.
> And I noted that and she -- so I don't know if I answered your question,
> Mr. Schonfeld.
> …

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

Q. I'll rephrase. I'll rephrase. You were not opining that Ms. Roberts exhibits symptoms of coercion related to her contact with Mr. Bjorkman, true?

A. Correct.

Q. You are not opining that Ms. Roberts exhibits symptoms related to improper sexual contact with Mr. Bjorkman, are you?

MS. LENZE: Objection to form. Go ahead.

A. The only thing -- the only information that I have is, there is two pieces; one, around the drugs, which is neither here nor there; and the second is he entered her shower while she was naked and he was naked, and it caused her much consternation which would reverberate. But beyond that, you know, I have nothing else to say.

Q. What information did you rely upon to form your understanding that Mr. Bjorkman entered the shower where Ms. Roberts was naked showering?

A. From what she said. And I don't actually remember if Mr. Bjorkman agreed that he did that in his deposition. It was 700 pages, I think. So I don't recall if he admitted that he had and that it was innocuous. I don't recall, I think he might have.

Q. If I recall your testimony, you said that you personally would have found that to be shocking if it had occurred to you, correct?

A. Well, I would be upset if I were showering in the nude and a man not -- who -- how do I put this delicately -- unrelated to me walked in while I was showering.

Q. Would it change your opinion if the facts alleged were that Mr. Bjorkman walked into the bathroom, but not into the shower where Ms. Roberts was?

A. I would want to know -- I suppose I would want to know if he knew she was in there and naked.

Q. Would you agree with me that you have seen no evidence that Mr. Bjorkman had any type of physical contact with Ms. Roberts, correct?

A. Correct.

Q. You understand that Ms. Roberts' sole basis for alleging that Mr. Bjorkman had improper sexual contact with her is what you've described as him walking into the shower, correct?

19

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

MS. LENZE: I object to form and insert a belated objection to form to the previous question. Go ahead, Doctor.

A. I don't, at least in her speaking with me, she doesn't say with any certainty she thinks that was improper sexual contact. She just noted that she felt afraid and uncomfortable and couldn't understand why he would walk in with such confidence and be and you know -- but I don't think she claimed, at least with me, that she thought he had sexually assaulted her or had sex with her. She wondered if he might have, but she didn't claim that he had.

Q. So in your, I think -- I don't want to misstate it so let me get the exact amount of time. Was it 14 hours or 16 hours that you had interactions with Ms. Roberts?

A. I believe it was 13.

Q. So in your 13 hours of personal interactions with Ms. Roberts not once did she tell you that she believed that Mr. Bjorkman had, in fact, sexually assaulted her, true?

MS. LENZE: Objection to form. Go ahead.

A. I don't -- that's not how a forensic opinion is built. So I'm trying to-- I don't exactly remember. But you know, what she did say is, I don't know if he did anything but I didn't feel good about – I was scared.

Q. So I'm correct, in the 13 hours you interacted with Ms. Roberts, she never told you Mr. Bjorkman sexually assaulted her?

A. I think that's about right.]

Dated this 12th day of March, 2026

Respectfully Submitted:
CHESNOFF & SCHONFELD

/s/ Robert Z. DeMarco
RICHARD A. SCHONFELD, ESQ.
(SBN 202182)
Email: rschonfeld@cslawoffice.net
ROBERT Z. DEMARCO, ESQ.
(admitted *pro hac vice*)
Email: rdemarco@cslawoffice.net
Attorneys for Defendant Michael Bjorkman

20

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

## **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of CHESNOFF & SCHONFELD that on the 12th day of March 2026, I served a true and correct copy of the foregoing, electronically via email to the following:

Andrea Hirsch — Cohen Hirsch
andrea@cohenhirsch.com

Jennifer Lenze — Lenze Lawyers
jlenze@lenzelawyers.com

Brooke Cohen — Cohen Hirsch
brooke@cohenhirsch.com

William Pallares — Lewis Brisbois Bisgaard & Smith LLP
william.pallares@lewisbrisbois.com

Peter Levine — The Law Offices of Peter Levine
peter@peterlawfirm.com

David A. Poull — Cannon & Nelms
dpoull@cannonnelms.com

Daniel J. Wadley — Greenberg Traurig LLP
wadleyd@gtlaw.com

Garrett W. Messerly — Greenberg Traurig LLP
garrett.messerly@gtlaw.com

Ivy A. Wang — Greenberg Traurig LLP
ivy.wang@gtlaw.com

Joseph M. Dietrich — Greenberg Traurig LLP
joe.dietrich@gtlaw.com

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT

1   Shauna E. Imanaka — Greenberg Traurig LLP
2   imanakas@gtlaw.com

3   Kyle R. Maland — Lewis Brisbois Bisgaard & Smith LLP
4   kyle.maland@lewisbrisbois.com

5

6                          /s/ Robert Z. DeMarco
7                          Employee of Chesnoff & Schonfeld

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT MICHAEL BJORKMAN'S STATEMENT OF
UNCONTROVERTED FACTS FOR PURPOSES OF SUMMARY JUDGMENT