Ivy A. Wang (SBN CA 224899)
Daniel J. Wadley (*Admitted Pro Hac Vice*)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
Ivy.Wang@gtlaw.com
wadleyd@gtlaw.com

William E. Pallares (SBN CA 187740)
Mack Reed (*Pro Hac Vice* forthcoming)
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900
William.Pallares@lewisbrisbois.com
Mack.Reed@lewisbrisbois.com

Attorneys for Defendants
eXp Realty, LLC; eXp World Holdings, Inc.;
and Glenn Sanford

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANYA ROBERTS, | CASE NO. 2:23-cv-10492-AB-AGR |
| Plaintiffs, | [Hon. André Birotte Jr., Ctrm 7B] |
| v. | **DEFENDANT eXp WORLD HOLDINGS, INC.'S:** |
| eXp REALTY, LLC; eXp WORLD HOLDINGS, INC.; MICHAEL L. BJORKMAN; DAVID S. GOLDEN; BRENT GOVE; AND GLENN SANFORD; and DOES 1–10 inclusive, | **MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS ASSERTED BY PLAINTIFF ANYA ROBERTS** |
| Defendants. | Date: April 17, 2026<br>Time: 10:00 AM<br>Place: Courtroom 7B, 7th Floor |
| | Action Filed: December 14, 2023 |
| | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 17, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable André Birotte Jr., of the above-entitled Court, in Courtroom 7B of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, Defendant eXp World Holdings, Inc. ("World Holdings") will and hereby does move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order entering summary judgment as follows.

First, the Court should grant World Holdings' summary judgment on Plaintiff Anya Roberts ("Plaintiff" or "Roberts") cause of action for Trafficking Victims Protection Act of 2000 (the "TVPRA") because there are no allegations against World Holdings, the evidence disproves elements of the statutory claim, including that neither eXp Realty, LLC nor World Holdings knew or had a basis to suspect that two of its thousands of agents were allegedly luring female agents to events for the purpose of drugging and sexually assaulting them, until many months after Plaintiff claims she was trafficked, and there are no allegations or evidence to support vicarious liability.

Second, the Court should grant World Holdings summary judgment on Plaintiff's common law negligent hiring claims because this Court previously held the statute of limitations in the jurisdiction where Plaintiff suffered her alleged assaults should govern her state law claims. Thus, any claim based on the February 2020 incident in Mexico is barred by Mexico's two-year limitations period. While claims based on assaults allegedly occurring in March 2020 in Florida may be timely, summary judgment is still required because (a) World Holdings has no employment relationship with Golden and Bjorkman; (b) eXp Realty did not have actual or constructive knowledge that they were unfit to be hired as real estate agents *before* the alleged assaults; and (c) as with the sex trafficking claim, Plaintiff has not alleged (and cannot prove) any set of facts that would render World Holdings vicariously liable for eXp Realty's hiring decisions.

World Holdings bases its Motion on this Notice of Motion and Motion, the

following Memorandum of Points and Authorities, the Statement of Uncontroverted Facts required by C.D. Cal. L.R. 56-1 filed by Co-Defendants eXp Realty, LLC and Glenn Sanford, the Declarations of Ivy A. Wang, the Declaration of William Pallares, the Declaration of James Bramble, the Evidence filed by Co-Defendants eXp Realty, LLC and Glenn Sanford, the pleading and other materials filed in this case, and on such other and further oral or documentary evidence and argument as it may present to the Court at or prior to the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to C.D. Cal. L.R. 7-3, which took place on March 9, 2026. *See* Declaration of Ivy A. Wang.

Granting this Motion would resolve all claims against World Holdings in this action.


DATED: March 13, 2026                    GREENBERG TRAURIG, LLP


By */s/ Ivy A. Wang*
Ivy A. Wang
Daniel J. Wadley
Attorneys for Defendant eXp World Holdings, Inc., eXp Realty, LLC, and Glenn Sanford

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION .................................................................................... 9

II.    FACTUAL BACKGROUND................................................................. 12

III.   LEGAL STANDARD ............................................................................ 20

IV.    ARGUMENT........................................................................................... 21

    A.    Plaintiff Has Not Raised a Material Issue of Fact as to her Sex Trafficking
        Claim Against World Holdings......................................................... 21

        1.    **Direct Beneficiary Liability**................................................ 22

        2.    **Vicarious Liability** ............................................................... 28

    B.    Summary Judgment Must Be Entered Dismissing Plaintiff's Negligence
        Claims Against World Holdings. ..................................................... 30

        1.    **The Statute of Limitations Bars Claims Based on Events in
            February 2020** ....................................................................... 30

        2.    **World Holdings Did Not Hire, Retain or Supervise Bjorkman or
            Golden** ..................................................................................... 33

        3.    **Plaintiff Cannot Prove Negligence, Injury or Proximate Causation**
            .................................................................................................. 35

V.     CONCLUSION....................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
  484 F. Supp. 3d 921 (D. Or. 2020) ...................................................21, 22, 28

*Acevedo v. eXp Realty, LLC*,
  713 F. Supp. 3d 70 (C.D. Cal. 2024) ............................................... 25, 31, 32

*Estate of Alvarado v. Tackett*,
  2018 WL 2543880 (S.D. Cal. June 4, 2018) ................................................. 36

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................ 20

*B.C. v. G6 Hosp. Prop. LLC*,
  No. 3:25-cv-05057-DGE, 2025 WL 1837620 (W.D. Wash. 2025) ....................... 21, 26

*B.J. v. G6 Hosp., LLC*,
  Case No. 22-cv-03765-MMC, 2023 WL 6120682 (N.D. Cal. Sept. 18,
  2023) ............................................................................................................... 29

*C.C. v. Rashid*,
  No. 2:23-cv-02056-GMN-BNW, 2025 WL 1785273 (D. NV 2025).......................... 22

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................ 20

*Coombes v. Washoe Cty. Sch. Dist.*,
  No. 3:22-cv-00368-ART-CLB, 2024 WL 1300065 (D. Nev. Mar. 27,
  2024) ............................................................................................................... 31

*Doe v. Aylo Glob. Ent. Inc.*,
  No. CV 23-07488-MWF, 2024 WL 4599539 (C.D. Cal. 2024) ........................... 21, 28

*Doe v. G6 Hosp. Prop. LLC*,
  No. 2:25-cv-00347-LK, 2025 WL 3537626 (W.D. Wash. 2025) ................................ 21

*Doe v. Wyndham Hotels & Resorts, Inc.*,
  No. 2:24-cv-04895-SVW-MAR, 2025 WL 1119736 (C.D. Cal. Mar. 5,
  2025) ............................................................................................................... 26

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
  No. C–09–00511 RMW, 2012 WL 713289 (N.D. Cal. 2012) ...................................... 28

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F. Supp. 3d 156 (S.D.N.Y. 2019) .................................................................. 25, 26

*Gregory v. Union Pac. R.R. Co.*,
  673 F. Supp. 1544 (D. Nev. 1987) .......................................................................... 32

*Heighley v. J.C. Penney Life Ins. Co.*,
  257 F. Supp. 2d 1241 (C.D. Cal. 2003) ................................................................... 21

*Holly v. Alta Newport Hosp., Inc.*,
  612 F. Supp. 3d 1017 (C.D. Cal. 2020) ................................................................... 35

*J.M. v. Wyndham Hotels & Resorts, Inc.*,
  No. 20-cv-00656-BLF, 2025 WL 523894 (N.D. Cal. 2025) ........................... 21, 22, 26

*James v. The Money Source Inc., No. 5:23-cv-00870-SSS-SHKx,*
  *2023 WL 12171005* (C.D. Cal. Nov. 7, 2023) .......................................................... 35

*K.R. v. G6 Hospitality, LLC*,
  No. 19-cv-08252-VC, 2020 WL 5653287 (N.D. Cal. 2020) ....................................... 22

*Ramsbottom v. Ashton*,
  No. 3:21-cv-00272, 2022 WL 106733 (M.D. Tenn. Jan. 11, 2022) ...................... 27, 28

*Ratha v. Rubicon Res., LLC*,
  No. 23-55299, 2026 WL 480006 (9th Cir. Feb. 2026) .............................................. 26

*Roberts v. eXp Realty, LLC*,
  No. 2:23-cv-10492-AB-AGR, 2025 WL 4036423 (C.D. Cal. May 2, 2025) ......... 31, 32

*Shubin v. Universal Vacation Club*,
  622 F. Supp. 3d 849 (C.D. Cal. 2022) ..................................................................... 31

*Walter v. Am. Modern Ins. Group*,
  No. CV 18-CV-02959-RGK-RAO, 2018 WL 5099499 (C.D. Cal. July 26,
  2018) ....................................................................................................................... 35

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
  435 F.3d 989 (9th Cir. 2006) ................................................................................... 21

*Weiser Law Firm PC v. Hartleib*,
   No. 23-55693, 2024 WL 4987351 (9th Cir. Dec. 5, 2024) ........................................... 31

**California Cases**

*Baj v. Roaming Am., Inc.*,
   2017 Cal. Super. LEXIS 7960 (Los Angeles Cnty. 2017) ........................................... 33

*Cossman v. DaimlerChrysler Corp.*,
   108 Cal. App. 4th 370 (2003) ..................................................................................... 31

*Federico v. Super Ct*,
   59 Cal. App. 4th 1207 (1997) ................................................................................ 35, 36

*Hernandez v. Howroyd-Wright Empl. Agency*,
   Case No. 20STCV42499, 2021 Cal. Super. LEXIS 2930 (Los Angeles
   Cnty. 2021) ................................................................................................................. 33

*Leek v. Cooper*,
   194 Cal. App. 4th 399 (2011) ................................................................................ 20, 34

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) .................................................................................................. 31

*Parra v. Feit*,
   No. 19STCV08726, 2021 WL 5514389 (Los Angeles Cnty. 2021) ............................ 33

*Phillips v. TLC Plumbing, Inc*,
   172 Cal. App. 4th 1133 (2009) ................................................................................... 36

**Other State Cases**

*Cantlon Tr. of William & Margaret Cantlon Family Tr. Dated March 7, 2000
   v. Wells Fargo & Co.*,
   475 P.3d 776 (Nev. 2020) ........................................................................................... 32

*Cox v. Oasis Physical Therapy, PLLC*,
   153 Wn. App. 176 (2009) ........................................................................................... 33

*Kang v. Omni Tech.*,
   No. 91-15313, 1993 WL 212650 .................................................................................. 33

*Mendenhall v. Tassinari*,
   403 P.3d 364 (Nev. 2017) ........................................................................................... 31

*Morton v. Sky Nails*,
    884 A.2d 480 (2005) ................................................................................................ 33

**Federal Statutes**

18 U.S.C. 1595 ........................................................................................................... 22

18 U.S.C.
    § 1591(e)(3) ......................................................................................................... 23
    § 1595 ................................................................................................................... 21

Fed. R. Civ. P. 56(c) .................................................................................................. 20

ICA ............................................................................................................. 14, 15, 19, 20

**California Statutes**

Cal. Code Civ. Proc.
    § 361 ..................................................................................................................... 31

Trafficking Victims Protection Act of 2000 ............................................................... 9

TVPRA ................................................................................................................ *passim*

**Other State Statutes**

N.R.S. 11.215(1) ........................................................................................................ 32

**Other Authorities**

Restatement (Third) of Agency ................................................................................. 29

## MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF ROBERTS' CLAIMS

### I.    INTRODUCTION

Congress enacted the Trafficking Victims Protection Act of 2000 (the "TVPRA") to address the very real problem of sex trafficking – coercing or forcing individuals to engage in commercial sex acts for the purpose of generating a financial benefit for the trafficker.  The typical sex trafficking victim is a person, often a minor, who was forced or coerced into prostitution.  The TVPRA not only makes sex trafficking a crime, but also enables the victims to recover civil damages both from their traffickers and persons or entities who knowingly benefitted from their participation in a venture that they knew or should have known had engaged in sex trafficking.  United States laws (and the laws of most states) also separately provide employees with protections from sexual harassment and predation perpetrated by their colleagues and bosses.  Finally, in addition to criminal penalties, those who sexually or physically assault anyone, in the workplace or otherwise, can be held liable under state tort law; and, if the assault is perpetrated by an employee, the employer can also be held liable to assault victims under state tort law for its negligence in hiring, retaining or supervising the perpetrator.  Most workplace sexual harassment and sexual assault do not constitute sex trafficking.

Plaintiff  Anya Roberts ("Roberts" or "Plaintiff") contends in the First Amended Complaint (the "FAC") that, in February and March 2020, she was the victim of sex trafficking and sexual assaults perpetrated by David Golden ("Golden") and Michael Bjorkman ("Bjorkman"), two real estate agents who were independent contractors for eXp Realty, LLC ("eXp Realty").  She further contends that both eXp Realty and its parent company, eXp World Holdings, Inc. ("World Holdings") should be held liable for the agents' conduct.  As discussed herein, by virtue of both the allegations of the FAC and the record evidence adduced in discovery, World Holdings cannot be liable to Plaintiff under the TVPRA or state tort law.

As discussed in Point V(A) below, liability under the TVPRA requires proof that there was an underlying sex trafficking venture (a venture that generated a financial benefit from coerced sex acts), and that the plaintiff was trafficked (she was forced to engage in commercial sex acts). Here, both the allegations of the FAC and the record evidence negate these required elements. Although this Court has held that, as pled by the plaintiffs in a related case, eXp Realty's revenue sharing program could conceivably constitute a sex trafficking venture, the evidence demonstrates that, even by the broad definition of "commercial sex" underlying the Court's ruling, the revenue sharing plan is not a sex trafficking venture. If Golden and Bjorkman lured Plaintiff to real estate industry events for the purpose of drugging and sexually assaulting her, then that is certainly reprehensible and potentially criminal. However, the assaults she claims occurred do not become commercial sex acts, and the revenue sharing program does not become a sex trafficking venture, simply because the purported lure was a promise to teach Plaintiff the secrets to becoming an "alpha" agent at eXp Realty. Even more importantly, Plaintiff admits she entered into a consensual romantic relationship with Golden without any financial motivation.

Further, as this Court correctly held in dismissing Plaintiff's initial complaint, Plaintiff failed to allege any viable theory by which either eXp Realty or World Holdings benefited (knowingly or otherwise) from the alleged sex trafficking venture, which is an essential element of beneficiary liability under the TVPRA. The FAC fails to cure that deficiency and the evidence is overwhelming that neither eXp Realty nor World Holdings benefited from the alleged venture. Plaintiff had already joined eXp Realty as an independent contractor when the alleged trafficking occurred, and thus there was no potential benefit based on her recruitment. If the alleged benefit was a change in Plaintiff's sponsor (upstream) agent, the evidence confirms that: (a) the deleterious effects of agent poaching led eXp Realty to adopt a written policy *prohibiting* sponsor changes; (b) sponsor changes generate no revenue for eXp Realty or World Holdings; and (c) Plaintiff never changed her sponsor.

Beneficiary liability exists under the TVPRA only where the defendant has participated in the venture.  Absent active control over a subsidiary's alleged sex trafficking venture, mere ownership of the subsidiary does not constitute participation in a sex trafficking venture.  Plaintiff does not allege, and there is no evidence, that World Holdings exerted control over eXp Realty's revenue sharing program.

Assuming World Holdings' participation in, and knowing benefit from, the revenue sharing program could be proven (it cannot), direct beneficiary liability cannot exist unless Plaintiff proves that World Holdings had either actual or constructive knowledge that the venture had engaged in acts of sex trafficking.  The FAC alleges, and the evidence confirms, that neither eXp Realty nor World Holdings knew or had a basis to suspect that two of its thousands of agents were allegedly luring female agents to events for the purpose of drugging and sexually assaulting them, until many months after Plaintiff claims she was trafficked.  It was not until years later that the *commercial* nature of the purported lure – telling female agents they would learn how to capitalize on the revenue sharing program – was even alleged.

Absent any viable claim that World Holdings itself participated in a sex trafficking venture, a claim under the TVPRA can succeed against it only if (a) eXp Realty is liable as a direct beneficiary of sex trafficking and (b) eXp Realty is either World Holdings' alter ego or participated in the sex trafficking venture as World Holdings' agent.  Plaintiff's failure to allege an alter ego or agency relationship between World Holdings and eXp Realty mandates summary judgment in World Holdings' favor; but regardless, there is no evidence of alter ego or agency status.

Plaintiff's common law negligent hiring claims fare no better than her TVPRA claims.  As discussed in Section V(B) below, this Court previously held the statute of limitations in the jurisdiction where Plaintiff suffered her alleged assaults should govern her state law claims.  Thus, any claim based on the February 2020 incident in Mexico is barred by Mexico's two-year limitations period.  While claims based on assaults allegedly occurring in March 2020 in Florida may be timely, summary judgment is still required

because (a) World Holdings has no employment relationship with Golden and Bjorkman; (b) eXp Realty did not have actual or constructive knowledge that they were unfit to be hired as real estate agents *before* the alleged assaults; and (c) as with the sex trafficking claim, Plaintiff has not alleged (and cannot prove) any set of facts that would render World Holdings vicariously liable for eXp Realty's hiring decisions.

## II.    FACTUAL BACKGROUND

### A.    World Holdings and eXp Realty Are Independent Corporate Entities

World Holdings is a publicly traded Delaware corporation located in Washington and indirectly owns 100% of the membership interests in eXp Realty, a Washington limited liability company that shares its business address with World Holdings and whose business is brokering real estate transactions through independent contractors licensed to do so.  (Statement of Undisputed Material Facts ("SUF") #s 1-3.)  World Holdings and its numerous subsidiaries observe all corporate formalities, have their own management teams, maintain their own books and records, and bank accounts, have their own personnel to run day-to-day operations, and do not co-mingle funds or assets.  (SUF #s 4-7.)

World Holdings' shareholders elect its board of directors, which appoints its management team and a management team (officers) for eXp Realty.  (SUF # 8.)  The management teams for the two entities are generally independent of each other, except that (a) there have been periods of time during which one or two individuals on World Holdings' management team also held positions on the management team of eXp Realty, and (b) the individuals serving as World Holdings' general counsel and chief marketing officer have, at various times, sat on eXp Realty's Compliance Committee.  (SUF # 10.)

In addition to engaging brokers as independent contractors, eXp Realty employs one or more brokers in each state to field agent questions, concerns and complaints, and to ensure that agents comply with law and the terms of their contracts ("ICAs") and employs regional brokers to assist and oversee the designated state brokers.  (SUF # 19.)  World Holdings does not participate in eXp Realty's employment decisions with respect to state

or regional brokers.  (SUF # 20.)  World Holdings does not supervise eXp Realty's independent contractors or employees.  (SUF # 21.)  World Holdings does not determine what training, seminars or similar events eXp Realty provides for its agents.  Nor does it pay for any such training, seminars and events.  (SUF # 22.)

World Holdings does not involve itself in the day-to-day operations of eXp Realty's revenue sharing program or have any economic interest in the program.  (SUF # 23.) World Holdings does not collect any funds from the revenue sharing program.  (SUF # 72.)  World Holdings does not distribute revenue share bonuses to eXp Realty's agents or determine how the bonuses are distributed to agents.  (SUF # 73.)

World Holdings has not authorized eXp Realty to act as its agent with respect to any business or other activities, has not authorized eXp Realty to hold itself out to its agents or employees, or to the public, as having authority to act on World Holdings' behalf with respect to any business or other activities.  (SUF #s 80-81.)  To World Holdings' knowledge, eXp Realty does not hold itself out to agents or employees or to the public as having authority to act on behalf of World Holdings with respect to any business or other activities.  (SUF # 82.)

## B.  eXp Realty's Revenue Sharing Program

Under eXp Realty's business model, the commission generated by each agent's sales transaction is split as follows: the agent retains 80 percent of his or her commission fee and eXp Realty receives 20 percent of that commission fee.  (Glenn Sanford Deposition ("Sanford Depo.") (attached as Exhibit 2 to Wang Decl.), 77:21-23; (December 15, 2025 James Bramble Deposition ("12/15/25 Bramble Depo.") (attached as Exhibit 3 to Wang Decl.), 41:16-22; 42:4-6, 19-23; 91:11-13.)  The revenue generated by eXp Realty's share of sales transaction commissions is considered "Company Dollar." (12/15/25 Bramble Depo. (attached as Exhibit 3 to Wang Decl.), 41:16-22; 42:4-6, 19-23; 91:11-13.)  To date, eXp Realty has chosen to allocate approximately 50 percent of its Company Dollar to a revenue sharing program, in which bonuses are distributed to agents who have elected to participate in the program.  (Sanford Depo. (Wang Decl., Ex. 2),

77:18-20; Stacey Onnen Deposition ("Onnen Depo.") (attached as Exhibit 4 to Wang Decl.), 70:3-5; 12/15/25 Bramble Depo. (Wang Decl., Ex. 3), 38:14-39:12; Sanford Depo. (Wang Decl., Ex. 2), 80:9-12; 333:10-25.)  The size of a participating agent's bonus is determined by the sales productivity of agents recruited by the agent, as well as by agents recruited further downstream. (Brandon Williams Depo., Exhibit 7 at [36 of 85] (Wang Decl., Exhibit 7).)

To ensure that agents remain focused on growing eXp Realty's business by recruiting *new* agents rather than trying to "poach" other agents' downstream agents, eXp Realty has at all times had and enforced a written policy prohibiting changes in designated sponsors.  (SUF # 74.)  As of March 2020, no eXp Realty agent had changed their designated sponsor to name Golden or Bjorkman as their sponsor. (SUF # 75.)  A change in an agent's sponsor does not affect the total amount of commission that is retained by eXp Realty as Company Dollar, nor does it affect the calculation of bonuses in the revenue sharing program if the agent participates in the program. (Glenn Sanford Deposition ("Sanford Depo.") (attached as Exhibit 2 to Wang Decl.), 77:21-23; (December 15, 2025 James Bramble Deposition ("12/15/25 Bramble Depo.") (attached as Exhibit 3 to Wang Decl.), 41:16-22; 42:4-6, 19-23; 91:11-13.)  World Holdings does not receive any portion of the monies that are allocated for the revenue sharing program. (SUF # 73.)

C.    **The Agents Who Plaintiff Alleges Trafficked and Assaulted Her**

Golden, a Nevada resident, signed an ICA with eXp Realty on January 15, 2018. At that time, he was a licensed real estate broker in the state of Nevada, and maintained his licensure until his ICA was terminated in May 2023.  (SUF # 24.)  Plaintiff does not allege, and there is no evidence, that prior to execution of Golden's ICA or during his tenure with eXp Realty, Golden was charged with or convicted of a crime in any jurisdiction.

Bjorkman, a California resident, executed an ICA with eXp Realty on September 4, 2018.  At that time, he was a licensed real estate broker in the state of California, and

maintained his licensure until his ICA was terminated on September 18, 2020.  (SUF ¶ 25.)  Plaintiff does not allege, and there is no evidence, that prior to execution of Bjorkman's ICA or during his tenure with eXp Realty, Bjorkman was charged with or convicted of a crime in any jurisdiction.

### D.    Two Alleged Incidents of Sex Trafficking and Sexual Assault

Plaintiff, a Florida resident, signed an ICA with eXp Realty in November 2018, selecting Chris Bear (another Florida agent) as her sponsor.  (SUF # 30, 45.)

The first of two instances in which Plaintiff alleges she was sexually assaulted and trafficked occurred in Puerto Vallarta, Mexico in February of 2020, more than a year after Plaintiff executed her ICA.  Plaintiff alleges that she and her business partner, Madden, attended an event sponsored by Brent Gove from February 4-9.  (November 14, 2025 Anya Roberts Deposition ("11/14/25 Roberts Depo.") (attached as Exhibit 10 to Wang Decl.),107:15-17; Holly Madden Deposition ("Madden Depo.") (attached as Exhibit 11 to Wang Decl.), 82:7-19, 22-23.)  Plaintiff testified that she has no memory of the first few days of the event but recalls meeting Golden and his girlfriend Keenan (an Arizona resident) for the first time on a boat cruise the evening of February 8.  (SUF # 32) (11/14/25 Roberts Depo. (Wang. Decl., Ex. 10), 83:14-18; 84:8-9; 132:14-135:19; 139:5-9; 146:19-143:6; 149:18-150:3; 154:16-155:7; 155:9-10; December 11, 2025 Anya Roberts Deposition ("12/11/25 Roberts Depo.") (attached as Exhibit 12 to Wang Decl.), 210:11-20; June 30, 2025 David Golden Deposition ("6/30/25 Golden Depo.") (attached as Exhibit 13 to Wang Decl.), 670:1-9; 673:16-21.)  She alleges that she consumed alcohol, took an Adderall pill offered by Keenan, and spent more time with Keenan at the hotel bar after the cruise.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 151:2-13; 158:23-159:15; 160:22-161:11; 162:3-5.)

Plaintiff's testimony about the events that transpired afterward is unclear and inconsistent, but, she claims to recall that, at some point later, she woke up partially clothed, with Keenan's fingers in her vagina and Golden, clothed, watching.  (*Id.*, 162:14-21; 167:8-18; 168:2-5.)  Shortly thereafter, Keenan left the hotel room and Golden and

Plaintiff discussed their respective real estate businesses.  (*Id.*, 170:20-171:25; 173:2-11;
173:20-174:5; 174:3-4.)  Golden allegedly offered to show Plaintiff how to become a
successful agent recruiter if she would name him as her sponsor in place of Bear.  (FAC ¶
113.)  Plaintiff did not tell her business partner or her husband (from whom she was
separated) that she had been drugged or assaulted, and testified that at that time she did
not feel that she had been sexually assaulted.

The FAC next describes Plaintiff's attendance at two events in Las Vegas following
the Mexico trip.  (FAC ¶¶ 118-130.)  Plaintiff testified that, at both events, she voluntarily
consumed alcohol and drugs, and spent the evenings with Golden at his home, where they
had consensual sex.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 201:20-202:4;
219:22-24; 221:14-16; 227:14-25; 198:3-17; 203:7-9; 219:8-10; 222:6-9; Madden Depo.
(Wang Decl., Ex. 11), 92:9-12; 93:5-6, 18-25; 94:13-19; 152:12-21.)  Roberts reported to
Madden, who joined her at the two events, how much she liked Golden, that she had had
sex with him, and that he had told her they would get married and become eXp Realty's
top recruiters.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 203:16-24; Madden Depo.
(Wang Decl., Ex. 11), 93:18-94:19.)  Roberts testified that, at that time, she wanted to be
in an intimate, monogamous relationship with Golden, and wanted him to stop dating
Keenan.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 201:11-14; November 18, 2025
Anya Roberts Deposition ("11/18/25 Roberts Depo.") (attached as Exhibit 15 to Wang
Decl.), 120:2-6.)  Roberts testified that her desire to be in a relationship with Golden was
not based on her career goals, but because she had genuine feelings for him.  (SUF #s 35-
37.)  During the second Las Vegas event, Roberts and her partner informed Golden that
they would not change their designated sponsor.  (Madden Depo. (Wang Decl., Ex. 11),
296:21-297:6.)

In the five days immediately following the second Las Vegas trip, Roberts (then
back in Florida) engaged in extensive and graphic text message exchanges with Golden
reflecting her desire to have an intimate relationship with him, making, among many
others, the following statements:



(SUF # 33.)

A few weeks after Plaintiff and Madden informed Golden they would not switch sponsors, Plaintiff joined Golden at an event he and Bjorkman were hosting in Flagler Beach, Florida to help one of their downstream agents in her recruiting efforts. (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 231:4-6; 232:1-13; 234:4-10; 236:1-21; Madden Depo. (Wang Decl., Ex. 11), 79:16-19; 98:11-15.) Plaintiff planned to go on vacation with Golden following the event. (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 295:19-296:2.) Plaintiff met Bjorkman for the first time when he arrived at the hotel room she planned to share with Golden and announced that he would be staying with them (the room had two beds). (SUF # 34.) (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 238:16-21; 239:14-24; 240:18-22.) Golden, Bjorkman, and Roberts threw a party attended by approximately ten agents in their shared hotel room that evening, where Roberts was observed by her partner to be "drinking, having fun, smiling, and happy." (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 144:7-10; 239:5-9; 244:17-245:5; Madden Depo. (Wang Decl., Ex. 11), 104:22-105:6; 105:11-14; 108:15-18.) After the party, mistakenly thinking Golden was sleeping, Roberts made disparaging remarks about Keenan to Bjorkman. (Id., 118:5-9; 121:11-17; 283:16-19; October 27, 2025 David Golden Deposition ("10/27/25 Golden Depo.") (attached as Exhibit 16 to Wang Decl.), 763:11-16.) The next morning, Madden had breakfast with Golden where (a) she confirmed her prior statements that she and Roberts would not change sponsors, and (b) Golden told her

that he planned to end his relationship with Roberts because of her disparaging remarks and efforts to get him to leave Keenan.  (Madden Depo. (Wang Decl., Ex. 11), 117:16-20.)

That evening, Madden attended a get-together with Golden, Bjorkman, Roberts and other agents in the hotel bar, but left after observing that Golden, Bjorkman and Roberts all appeared to be under the influence of alcohol and/or drugs.  (*Id.*, 127:20-128:2; 131:5-17.)  The FAC asserts, and Plaintiff confirmed in her testimony, that she voluntarily consumed what she knew to be GHB that day and does not recall the evening.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 248:20-23; 253:1-15; 254:16-24; 256:18-20; 11/18/25 Roberts Depo. (Wang Decl., Ex. 15), 199:15-24; 200:4-14; 203:3-5; 12/11/25 Roberts Depo. (Wang Decl., Ex. 12), 21:24-22:8; 198:4-12, 23-25; 199:1-3; 223:23-224:17.)  Plaintiff alleges that the next morning, while she was showering, Bjorkman entered the bathroom naked to use the toilet.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 260:8-11.)  When she objected, he allegedly responded "oh, now you are shy?"  ((*Id.*, 261:16-20; 11/18/25 Roberts Depo. (Wang Decl., Ex. 15), 205:24-2-6:2.)  Plaintiff testified that she has no memory of having sex with Bjorkman (or Golden) during the trip, and on the morning that Bjorkman walked into the bathroom while she was showering, she did not physically feel that she had engaged in intercourse the previous night.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 264:22-25; 265:19-22.)  Based solely on Bjorkman's "oh, now you are shy" comment, Plaintiff has now come to believe that he must have sexually assaulted her.  (SUF # 40.).  Bjorkman testified that he has never had sexual contact with Roberts.  (October 13, 2025 Michael Bjorkman Deposition ("10/13/25 Bjorkman Depo.") (attached as Exhibit 17 to Wang Decl.), 404:17-22; 520:3-6.)

Later that day, Golden in fact broke up with Roberts (and cancelled their planned vacation).  Roberts reported to Madden that Golden had ended their relationship due to her disparagement of Keenan and efforts to get him to leave her.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 277:13-25; 298:12-19; 10/27/25 Golden Depo. (Wang Decl., Ex. 14), 777:10-16.)

After Golden's breakup with her, Roberts continued her career with eXp Realty, and until she filed her Complaint in December 2023, never reported to eXp Realty, the police or anyone else that she had been drugged or assaulted by Bjorkman, Golden or any other eXp Realty agent. (SUF # 31, 84.)  Sometime after April 2021, Plaintiff moved to Costa Rica, where she continued to recruit agents to be in her "downline."  Plaintiff returned to Florida in 2025, where she continues to recruit agents for eXp Realty, and is currently in the top 6% in terms of the number of agents in her downline.  It was not until she learned of the allegations in the Acevedo complaint that Roberts "began to piece together" that she had been drugged and assaulted several years earlier.  (FAC ¶ 142.)

### E.    eXp Realty Learns About Alleged Sexual Misconduct

As alleged in the FAC and confirmed in deposition testimony, eXp Realty did not hear that female agents were claiming that Bjorkman had drugged and sexually assaulted them until September 2020. (SUF #s 46, 48.)  Specifically, on September 17 or 18, 2020, agent Farrell-Nelson reported to eXp Realty's designated Florida broker that Bjorkman had raped her at an August 2020 event hosted by Gove.  (SUF # 47-48.)  Within three hours of receiving this report, eXp Realty terminated Bjorkman's ICA.  (SUF # 49.)

As alleged by Plaintiff, on October 6, 2020, agent Tami Sims (Bjorkman's business partner), reported to eXp Realty management that Bjorkman had a prior practice of teaming up with Golden at industry events to get female targets drunk as part of their recruitment efforts. (FAC ¶ 161.)  On about the same date, Farrell-Nelson provided eXp Realty with a memo that described several prior instances in which Bjorkman and Golden used and offered others drugs and alcohol, including (i) an event where Golden and Bjorkman offered her alcohol and made lewd comments to her, (ii) an event where Golden and Bjorkman got her and her husband "wasted" on alcohol, (iii) an event in Las Vegas where Golden got very drunk and unnamed male attendees had sex with young women, (iv) an event where Bjorkman got drunk and tried to kiss her, (v) an event in Puerto Rico where Golden and Bjorkman made sexual comments to her, (vi) a recruiting event in March 2020, where Golden attempted to "score" cocaine, and (vii) an August 2020 Las

Vegas event (also described in agent Fabiola Acevedo's complaint filed in February 2023) at which several female agents contend Bjorkman sexually assaulted them. (SUF # 50.)

Neither Sims nor Farrell-Nelson described any incident in which Golden sexually assaulted anyone. (SUF # 51.) No such allegation was made against him until Acevedo's February 2023 complaint. (SUF # 58-59.) The day after that complaint was filed, eXp Realty suspended Golden. (SUF # 60s, 62.)

## III.   LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Id.* The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

A pleading deficiency is an independent and sufficient basis for granting summary judgment. *See Leek v. Cooper*, 194 Cal. App. 4th 399, 412 (2011) (internal quotation marks and citations omitted) ("The pleadings are the outer measure of materiality in a summary judgment proceeding…the summary judgment proceeding…is necessarily transmuted into a test of pleadings.") In fact, when there is a pleading deficiency, it is not necessary to evaluate the evidence purporting to support the alleged claims. *Id.* ("…a pleading may be defective in failing to allege an element of a cause of action . . . . In such a case, the moving party need not address a missing element or, obviously, respond to assertions which are unintelligible or make out no recognizable legal claim.") "Defendants are not bound to address unpleaded issues in their motion for summary judgment."

*Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1261 (C.D. Cal. 2003) (*citing Gafcon, Inc. v. Ponsor & Assoc.*, 98 Cal. App. 4th 1388, 1424 (2002) and *Bostrom v. Cnty. of San Bernardino*, 35 Cal. App. 4th 1654, 1663-64 (1995)). A party cannot avoid summary judgment by alleging new facts for the first time in response to a summary judgment motion in order to address a pleading deficiency. *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Id.*, (*quoting Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)).

## IV.    ARGUMENT

### A.    Plaintiff Has Not Raised a Material Issue of Fact as to her Sex Trafficking Claim Against World Holdings

Plaintiff seeks to hold World Holdings liable as a "beneficiary" of sex trafficking pursuant to 18 U.S.C. § 1595 (the "TVPRA").  The law recognizes two bases for imposing "beneficiary" liability for sex trafficking, both of which require that the plaintiff prove that a "perpetrator" has in fact trafficked her.  First, under the express terms of TVPRA, World Holdings can be held liable as a "direct beneficiary" if Plaintiff proves that she is the victim of a sex trafficking venture and World Holdings (a) knowingly benefited (or attempted to benefit), (b) from its participation in that venture, and (c) World Holdings knew or should have known the venture had engaged in sex trafficking.  *See J.M. v. Wyndham Hotels & Resorts, Inc.,* No. 20-cv-00656-BLF, 2025 WL 523894 at *4 (N.D. Cal. 2025).  Second, under common law principles of vicarious liability, World Holdings can be liable for Plaintiff's damages if she proves that eXp Realty was a direct beneficiary of her trafficking, and either eXp Realty was World Holdings' alter ego or was acting as World Holdings' agent.  *See Doe v. Aylo Glob. Ent. Inc.*, No. CV 23-07488-MWF (AGRx), 2024 WL 4599539 *11 (C.D. Cal. 2024); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939-40 (D. Or. 2020)*; B.C. v. G6 Hosp. Prop. LLC,* No. 3:25-cv-05057-DGE, 2025 WL 1837620 at *3-5 (W.D. Wash. 2025); *Doe v. G6 Hosp. Prop.*

*LLC*, No. 2:25-cv-00347-LK, 2025 WL 3537626 at *7 (W.D. Wash. 2025).  Plaintiff has
not raised a material issue of fact on its claim against World Holdings under either theory.

### 1.    Direct Beneficiary Liability

As a threshold matter, summary judgment must be granted because the FAC
contains no allegations of any conduct committed *by World Holdings*.  Rather, Plaintiff
simply notes that World Holdings is eXp Realty's parent company, defines them
collectively as "eXp" or "eXp Realty," and then makes allegations without distinguishing
between them.  As a matter of law, absent specific allegations and evidence that World
Holdings itself knowingly benefited from and participated in the venture that sex
trafficked plaintiff, and that World Holdings itself knew or should have known that the
venture engaged in sex trafficking, the mere fact that it was the corporate parent of an
entity alleged to have done so is insufficient to impose liability on World Holdings.  *See
C.C. v. Rashid,* No. 2:23-cv-02056-GMN-BNW, 2025 WL 1785273 at *8 (D. NV 2025)
(dismissing TVPRA claim under 18 U.S.C. 1595 because "apart from stating that MGM
Resorts is the parent company of the other Defendants, she fails to argue how it is liable
under the TVPRA.");  *cf. K.R. v. G6 Hospitality, LLC,* No. 19-cv-08252-VC, 2020 WL
5653287 at *2 (N.D. Cal. 2020) ("at a minimum, a plaintiff must allege a parent
company's awareness of ongoing problems at a particular hotel"); *J.M. v. Wyndham
Hotels*, 2025 WL 523894 at *5 (N.D. Cal. Feb. 18, 2025). (dismissing TVPRA claim
against franchisor defendants because "Plaintiff has not alleged sufficient facts against
*them*") (citing holding in *A.B. v. Hilton*, 484 F. Supp. 3d 921, 938-39 (D. Or. 2020), that
"the complaint fails to allege facts as to how . . . the parent company, corporate affiliate,
or franchisor of the hotel" satisfied the statutory requirements).  There is no such evidence
in this case, and as such, Plaintiff's trafficking claims against World Holdings must be
dismissed.

Even if Plaintiff's pleading deficiency were to be ignored, she has not raised a
genuine issue of fact on her TVPRA claim against World Holdings.

a.    *Plaintiff Did Not Engage in Commercial Sex*

Sex trafficking requires a "commercial sex act," meaning a sex act "on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). In denying World Holdings' and Sanford's motion to dismiss, this Court held that, at the pleading stage, the Acevedo plaintiffs sufficiently alleged that they were induced to engage in commercial sex based on the theory that Bjorkman and Golden lured them to events where they were drugged and assaulted by promising that it would benefit their careers. Having now completed fact discovery, Roberts has been unable to identify any evidence sufficient to support this allegation. Plaintiff cannot possibly have been lured to the Mexico event in February 2020 by Golden or Bjorkman, as she had not met or spoken to either of them yet, and attended at the invitation of independent contractor Brent Gove. (SUF #s 30, 32, 34.) There is no evidence whatsoever that, when a "starstruck" Roberts met Golden and his girlfriend Emily Keenan (FAC ¶ 100), (a) they lured Plaintiff to party with them with promises that it would advance her career at eXp Realty; or (b) Golden (or any other eXp Realty agent) had sex with her that weekend. (11/14/25 Roberts Depo. (Wang. Decl., Ex. 10), 83:14-18; 84:8-9; 132:14-135:19; 139:5-9; 146:19-143:6; 149:18-150:3; 154:16-155:7; 155:9-10; December 11, 2025 Anya Roberts Deposition ("12/11/25 Roberts Depo.") (attached as Exhibit 12 to Wang Decl.), 210:11-20; June 30, 2025 David Golden Deposition ("6/30/25 Golden Depo.") (attached as Exhibit 13 to Wang Decl.), 670:1-9; 673:16-21.) Indeed, Plaintiff alleges it was only *after* a sexual contact *with Keenan* (who had no affiliation with eXp Realty or World Holdings) that she and Golden discussed the possibility that Plaintiff would switch sponsors.[1] ((11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 162:14-21; 167:8-18; 168:2-5; 170:20-171:25; 173:2-11; 173:20-174:5; 174:3-4.)

---

[1] The record reveals that Plaintiff became disillusioned with her named sponsor's lack of support for her recruiting efforts and raised her concerns to Gove and other eXp Realty agents long before she met Golden. (*See also* November 14, 2025 Anya Roberts Deposition ("11/14/25 Roberts Depo.") (attached as Exhibit 10 to Wang Decl.), 63:10-14; 57:7-19.)

Plaintiff attended two more events in February 2020 (both in Las Vegas, and neither sponsored by eXp Realty), where she admits she stayed in Golden's home, voluntarily drank alcohol, voluntarily took drugs, and had consensual sex with him.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 201:20-202:4; 219:22-24; 221:14-16; 227:14-25; 198:3-17; 203:7-9; 219:8-10; 222:6-9; Madden Depo. (Wang Decl., Ex. 11), 92:9-12; 93:5-6, 18-25; 94:13-19; 152:12-21.)  Plaintiff testified that (a) she wanted to be in an intimate sexual relationship with Golden (and wanted him to leave his girlfriend of several years for her); (b) her desire to be in that relationship was unrelated to her professional ambition to become an alpha agent; and (c) she and her partner told Golden at the February events that they would not switch sponsors.  (SUF #s 35-37.)  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 201:11-14; November 18, 2025 Anya Roberts Deposition ("11/18/25 Roberts Depo.") (attached as Exhibit 15 to Wang Decl.), 120:2-6.)  Thus, when the second alleged trafficking incident occurred at an event in Florida in March 2020, any sexual encounters between Roberts and Golden could not have been *commercial* sex acts.  (11/14/25 Roberts Depo. (Wang Decl., Ex. 10), 231:4-6; 232:1-13; 234:4-10; 236:1-21; 295:19-296:2; Madden Depo. (Wang Decl., Ex. 11), 79:16-19; 98:11-15.)  There is no evidence that Plaintiff engaged in *any* sexual acts with Bjorkman during the Florida event (much less a *commercial* sex act).  Plaintiff alleges (and testified) that her sole "evidence" of sexual contact with Bjorkman during that event is that when she protested to Bjorkman using the bathroom while she was in the shower, he responded that she was being "shy."  From this, Plaintiff infers that Bjorkman assaulted her the night before.[2] (SUF # 40.)

### b. *World Holdings Did Not Benefit from Participation in a Sex Trafficking Venture*

In denying a motion to dismiss in the Acevedo case, this Court held that the plaintiffs there could potentially prove that Sanford and Gove participated in an alleged

---

[2] Plaintiff does not contend that Bjorkman sought to have her name him as her sponsor or either offered or sought any financial gain from the alleged assault (which he denies).

sex trafficking "venture" undertaken by Bjorkman (and Golden), but did not specifically address the basis for any potential liability of "Entity Defendants" World Holdings and eXp Realty.[3]  The Court held that the revenue sharing program could potentially be deemed a "venture" for purposes of the TVPRA, in which other defendants could have participated and from which they could have benefited.  *See, e.g.*, *Acevedo*, 713 F. Supp. 3d at 776.  World Holdings respectfully suggests that, if it is proven that two out of tens of thousands of eXp Realty agents in fact lured prospective agents to real estate industry events with the intention of sexually assaulting them by telling them they would be told how to profit from eXp Realty's revenue sharing program, that would not turn the program itself into a sex trafficking "venture."  The venture must be limited to the activities undertaken by the alleged perpetrators: Golden and Bjorkman.[4]

Even assuming the revenue sharing program itself could be a sex trafficking venture (it cannot), this Court correctly observed that, because Plaintiff was already an eXp Realty agent at the time of her alleged trafficking, Plaintiff had not described how the Entity Defendants benefited from their purported participation in it.  (Order on Motion to Dismiss, pp. 7-8 [Roberts ECF No. 83].)  The FAC fails to cure this deficiency, and the evidence demonstrates that it is incurable.  World Holdings does not participate in or

---

[3] The Court held that since both Sanford and the entities moved to dismiss on the same grounds, the Court would only distinguish between the defendants "where necessary." *See, e.g.*, *Acevedo*, 713 F. Supp. 3d at 776 n.15.  World Holdings respectfully avers that it is *absolutely necessary* for the Court to distinguish between eXp Realty and World Holdings in assessing whether Roberts has raised a genuine fact issue as to World Holdings' liability for sex trafficking.

[4] The Harvey Weinstein case cited by the Court in its decision on defendants' motion to dismiss the Acevedo complaint (*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019)), illustrates this point.  Mr. Weinstein did not turn his production company (TWC) or movie studios he was working with into sex trafficking ventures by luring actresses to meetings where he dangled the prospect of a movie role in order to get them to have sex with him.  Weinstein himself was the only sex trafficking venture.  The Court dismissed the TVPRA claim against his production company and its employees because they did not participate in (or benefit from) *his* sex trafficking venture.  *Id*. at 168-69.

benefit from the revenue sharing program.  "Participation" by a parent company in a sex trafficking venture allegedly undertaken by its subsidiary requires that the parent have significant control over the venture's day-to-day activities, or otherwise "take part in" its sex trafficking activities.  *See Ratha v. Rubicon Res., LLC*, No. 23-55299, 2026 WL 480006 at *14 (9th Cir. Feb. 2026) (denying summary judgment to the parent company because its "marketing materials touted that it was in 'control [of] every aspect of'" the subsidiary's business).[5]  World Holdings does not control eXp Realty's operations in general, or the revenue sharing program specifically.

Nor does World Holdings benefit from the revenue sharing program. (SUF # 72.) The revenue sharing program is a bonus pool distributed to eXp Realty agents – not World Holdings.  (SUF #s 65-67, 69, 72-73.)  Moreover, a sponsor change – which is the basis for Plaintiff's assertion that her alleged assaults were *commercial* sex acts – does not alter the total amount of the bonus pool (or the portion of the agents' commissions that are retained by eXp Realty).  (SUF #s 67, 69.)  Thus, a change in Plaintiff's sponsor would have provided no financial benefit to either eXp Realty or World Holdings.  (SUF # 71-73.)  The fact that agent poaching harms eXp Realty (perhaps doubly so if it is accompanied by sexual assault) is evidenced by the existence of a long-standing eXp Realty written policy against it.  (SUF # 74.)[6]

---

[5] *See also J.M. v. Wyndham Hotels, 2025 WL 523894 at *5* (applying authority holding parent companies [hotel franchisors] do not participate in sex trafficking ventures in their franchisee's hotels by merely exercising "normal supervision and oversight of booking and other aspects of hotel management"); *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 2:24-cv-04895-SVW-MAR, 2025 WL 1119736 at *4-6 (C.D. Cal. Mar. 5, 2025) (plaintiff's allegations against parent company sufficiently "connected the dots" where it alleged numerous elements of "substantial oversight" and "day-to-day control" over franchisee's rental of rooms to sex traffickers); *B.C. v. G6 Hosp. Prop. LLC*, 2025 WL 1837620, at *4-6 and n.3 (plaintiff must "connect the dots" between the parent hotel company and sex trafficking occurring at individual hotels by demonstrating parent's "substantial oversight" operations" or "day to day control" over the hotel).

[6] This is analogous to the facts of the Weinstein case, where the court found that the Weinstein production company was successful despite Mr. Weinstein's sex trafficking activities, not because of them.  *See* 383 F. Supp. 3d at 170.

Finally, there is no evidence that World Holdings knew or should have known that Bjorkman, Golden or anyone else was engaging in sex trafficking at the time Plaintiff contends she was trafficked.  The FAC alleges, and the evidence confirms, that it was not until September 2020 that allegations of misconduct by Bjorkman were reported to eXp Realty, and it was not until February 2023, upon the filing of the Acevedo Complaint, that alleged misconduct by Golden came to eXp Realty's attention.  (*See* FAC ¶¶ 153-167); (SUF # 56-59).  Unable to show actual knowledge, Plaintiff alleges that the Entity Defendants "should have" known that Bjorkman and Golden "used drugs to sexually assault eXp Realty real estate agents and prospective eXp Realty real estate agents." (FAC ¶ 262.)  The sole basis for this conclusory assertion is that (a) Golden and Bjorkman allegedly had a "widespread reputation, even prior to joining eXp, of drugging and assaulting women" (FAC ¶ 185) and (b) the entities "knew of" Golden and Bjorkman before they joined eXp Realty, and Sanford, Gove, and Golden "knew each other from" prior employment at Keller Williams.  (FAC ¶ 289.)  Plainly, a professional acquaintance with a criminal does not equate to actual, constructive or imputed knowledge of his or her crimes.  Plaintiff is unable to offer any evidence that a person whose knowledge can be imputed to eXp Realty or World Holdings observed Bjorkman or Golden engage in sexual assault or trafficking or was otherwise aware that they were engaging in sex trafficking.

*Ramsbottom v. Ashton*, No. 3:21-cv-00272, 2022 WL 106733 (M.D. Tenn. Jan. 11, 2022) is instructive on several of the issues raised by Plaintiff's allegations.  There, three women alleged that a popular musician sexually abused underage women over a span of several years while crossing the country performing.  The plaintiffs brought sex trafficking claims against the musician, his music companies, and other management and promotion companies whose "continuous business relationships" with him – they arranged the music festivals and other events where he would meet and have sex with underage girls – allegedly enabled him to engage in "predatory behavior."  *Id.* at *5-7. The court dismissed the claims against the management entities (and found personal jurisdiction over the musician's own companies lacking), because they did not witness any

of the sex trafficking acts and knew nothing about the musician's private relationships and communications with the girls. *Id*. at *9-11.

In the case at bar, World Holdings' connection to Golden's and Bjorkman's alleged sex trafficking is even more attenuated than the business entities' connection to the musician's alleged trafficking in *Ramsbottom* in that World Holdings is not alleged to have facilitated Golden's and Bjorkman's alleged sex trafficking.

### 2.    Vicarious Liability

Courts have held that the TVPRA does not abrogate the common law doctrines by which a corporate parent can be held vicariously liable for the conduct of its subsidiary. *See* p. 18-19 *supra* and cases cited therein. Thus, if Plaintiff alleges and proves that eXp Realty was either World Holdings' alter ego or its agent when Plaintiff was allegedly trafficked, World Holdings can be held vicariously liable for eXp Realty's participation in her trafficking. However, as a threshold matter, Plaintiff's failure to include any alter ego allegations is dispositive and precludes her from offering any evidence of such a relationship. *See A.B. v. Hilton*, 484 F. Supp. 3d at 943. Moreover, the record is bereft of any evidence supporting alter ego status. To establish alter ego liability, "a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identifies would result in fraud or injustice." *Doe v. Aylo Glob. Ent., Inc.*, 2024 WL 4599539 at *11 (C.D. Cal. June 24, 2024). Sharing offices, management, employees, and corporate philosophy and operating principles is wholly inadequate. One must prove inadequate capitalization, commingling of assets, or disregard of corporate formalities. *See id.* ("significant overlap in officers, owners, directors, and managers" insufficient where entities are adequately capitalized, observe corporate formalities and parent "does not control the day-to-day functions of its subsidiaries"); *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, No. C–09–00511 RMW, 2012 WL 713289 at *5 (N.D. Cal. 2012) (sharing offices, management, employees, "corporate philosophy and

operating principles" insufficient to show "corporate separateness is illusory").  There is no evidence that World Holdings and eXp Realty are alter egos.

The FAC does assert that Bjorkman and Golden were the Entity Defendants' agents, without distinguishing between eXp Realty and World Holdings and without alleging that there was an agency relationship between them.  Plaintiff alleges both entities "retained the right to exercise systematic and day-to-day control over the means and methods used by Defendant Golden and Defendant Bjorkman *when enticing agents to switch their Sponsor agent*."  (FAC ¶ 216; emphasis added.)  Without distinguishing between the two entities, Plaintiff contends that "eXp Realty" – defined to encompass both eXp Realty and World Holdings – provided Golden and Bjorkman with training, tools and guiding policies relevant to agent recruitment, and that "eXp controls all of its agents with respect to recruitment."  (*Id*. ¶¶ 218-230.)  While these conclusory allegations are also untrue with respect to eXp Realty, the evidence plainly disproves any agency relationship either (a) between World Holdings and the alleged sex traffickers or (b) between World Holdings and eXp Realty.  World Holdings does not control the day-to-day affairs of eXp Realty, its revenue sharing program, or its hiring, training, supervision or firing of agents.  (SUF # 4-10, 20-23, 72-73.)  Further, since agent poaching is prohibited (and neither Bjorkman nor Golden had ever poached an agent at the time Plaintiff claims she was trafficked), the assertion that the Entity Defendants controlled the "means and methods" these defendants utilized to engage in such prohibited conduct is meritless. (SUF # 74.)

There is no evidence that World Holdings exerted any control whatsoever over Bjorkman or Golden, or over any other agents or employees of eXp Realty.  The facts necessary to establish an agency relationship are entirely lacking.  *See B.J. v. G6 Hosp., LLC*, Case No. 22-cv-03765-MMC, 2023 WL 6120682, at *9-11 (N.D. Cal. Sept. 18, 2023) (Restatement (Third) of Agency requires principal's manifestation of intent to have agent act for him, acceptance of undertaking by the agent, and understanding that principal is to be in control of the undertaking; dismissing sex trafficking claim against

parent because plaintiff had not alleged the parent's "control over the instrumentality of plaintiff's harm").

### B. Summary Judgment Must Be Entered Dismissing Plaintiff's Negligence Claims Against World Holdings.

Plaintiff's Seventh cause of action alleges that "eXp Realty" (i.e., both entities) is liable for negligently hiring, retaining and supervising Bjorkman and Golden. (FAC ¶¶ 281-91.) Plaintiff does not identify the injuries she suffered at the hands of Bjorkman and Golden, but, based on the allegations of the Fourth, Fifth and Sixth causes of action, it would appear that Plaintiff is alleging that Bjorkman or Golden (or both of them) intentionally drugged and sexually assaulted her at the events in Puerto Vallarta in February 2020 and Florida in March 2020, and "eXp Realty" should have known of their propensity for such behavior before it hired them.

#### 1. The Statute of Limitations Bars Claims Based on Events in February 2020

Plaintiff cannot prevail on her claim for negligent hiring, retention, and supervision against World Holdings (the "Negligent Employment Claim"). *First*, that claim is untimely to the extent it is based on Golden's alleged conduct that occurred in Nevada or Mexico in February or March 2020. *Second*, even if Roberts' Negligent Employment Claim was timely in all respects, she cannot maintain her Negligent Employment Claim against World Holdings under Florida law.

Plaintiff, an out-of-state plaintiff, asserts the Negligent Employment Claim against World Holdings, an out-of-state defendant, based on Golden's alleged conduct that occurred in Nevada and/or Mexico in February and/or March 2020.[7] California's statute

---

[7] World Holdings does not contest for purposes of this Motion that Plaintiff's Negligent Employment Claim is timely to the extent it is based on Bjorkman and/or Golden's conduct that allegedly took place in Florida in March 2020. As explained below, however, Roberts cannot maintain her Negligent Employment Claim based on that conduct in any event.

of limitations therefore does not apply to Roberts' Negligent Employment Claim. And because Roberts' Negligent Employment Claim is untimely under either of the statutes of limitations that do apply, World Holdings are entitled to summary judgment with respect to that claim to the extent it is based on Golden's alleged conduct in Nevada and/or Mexico.

In a federal question action where a court is exercising supplemental jurisdiction over a state law claim, the court applies the choice-of-law rules of the forum state—in this case, California. (*Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 70, 786 (C.D. Cal. 2024).) "These choice of law "rules include California's 'borrowing statute,' which provides that, where a cause of action 'has arisen in another State,' and would be barred by that State's statute of limitations, then California will apply that statute of limitations rather than its own, except in the case of a California plaintiff." (*Weiser Law Firm PC v. Hartleib*, No. 23-55693, 2024 WL 4987351, at *4 (9th Cir. Dec. 5, 2024) (citing Cal. Code Civ. Proc. § 361).)[8] Therefore, when a non-resident brings a claim in California based on conduct that occurred outside of California, a court will "borrow" the limitations period from the state (or states) in which the conduct occurred. (*See Acevedo*, 713 F. Supp. 3d at 788; *Roberts v. eXp Realty, LLC*, No. 2:23-cv-10492-AB-AGR, 2025 WL 4036423, at *2 (C.D. Cal. May 2, 2025); *Shubin v. Universal Vacation Club*, 622 F. Supp. 3d 849, 853 (C.D. Cal. 2022) (Section 361 barred non-California residents' claims that arose outside of California); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 85 (2010).)

For purposes of Section 361, a person's citizenship is determined at the time her cause of action accrues. (*Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370, 378 (2003).) Roberts was a citizen of Florida at the time her Negligent Employment Claim accrued. (SUF # 45.)[9] World Holdings is also not a California citizen. (SUF # 3.) The

---

[8]      To determine where a cause of action has arisen, courts examine and weigh where the elements of the cause of action occurred. (*Hartleib*, 2024 WL 4987351, at *4.)

[9]      Under Nevada law, Roberts' Negligent Employment Claim accrued when she sustained an injury for which she could seek relief—*i.e.*, no later than March 2020. (*Mendenhall v. Tassinari*, 403 P.3d 364, 371 (Nev. 2017).) (*See also Coombes v. Washoe*

Court therefore must "borrow" the limitations period for negligence claims from the states in which the conduct giving rise to Plaintiff's Negligent Employment Claim allegedly occurred—*i.e.*, and for purposes of World Holding's argument, Nevada and/or Mexico.

Nevada and Mexico both have two-year statutes of limitations with respect to negligence claims. (*See Cantlon Tr. of William & Margaret Cantlon Family Tr. Dated March 7, 2000 v. Wells Fargo & Co.*, 475 P.3d 776 (Nev. 2020) (citing N.R.S. 11.190(4)(e)); Código Civil Federal, art. 1934, (Mex.).) While Nevada enacted legislation in 2023 eliminating the limitations period for actions to recover damages arising from sexual abuse or exploitation, by its own terms that legislation *only* applies to claims against the alleged perpetrator of that sexual abuse or exploitation. (N.R.S. 11.215(1).) (*See also Acevedo*, 713 F. Supp. 3d at 795.) In other words, this legislation does not apply to World Holdings. *Id*. And as far as undersigned counsel has been able to determine, there are no applicable exceptions to the limitations period codified in Article 34 of Mexico's Federal Civil Code.

As explained above, Roberts' Negligent Employment Claim accrued no later than March 2020. (SUF #34, 30-41.) Under the laws of either Nevada or Mexico, Plaintiff was therefore required to bring that claim no later than March 2022 to the extent her claim is premised on conduct that occurred in either of those forums. But she did not bring that claim until December 14, 2023. (ECF No. 1.) Plaintiff's Negligent Employment Claim against World Holdings is therefore untimely to the extent it is based on Golden's (or anyone else's) alleged conduct that occurred in Mexico and/or Nevada on or before December 14, 2021.[10]

---

*Cty. Sch. Dist.*, No. 3:22-cv-00368-ART-CLB, 2024 WL 1300065, at *2 (D. Nev. Mar. 27, 2024) (cause of action accrues when a suit may be maintained thereon); *Gregory v. Union Pac. R.R. Co.*, 673 F. Supp. 1544, 1546 (D. Nev. 1987) (a cause of action for a tort accrues at the time of the tortious act).) And under Mexican law, a tort claim accrues at the time the plaintiff suffers an injury. (Código Civil Federal, art. 1934, (Mex.).) (*See also Roberts*, 2025 WL 4036423, at *3.)

[10] Were the Court to borrow the statute of limitations from either Washington or Delaware (eXp Realty and World Holdings are located and/or incorporated there), the claim would

### 2.    World Holdings Did Not Hire, Retain or Supervise Bjorkman or Golden

As to injuries Plaintiff allegedly suffered in Florida in March 2020[11], World Holdings cannot be held liable on a negligence theory because it did not hire, retain or supervise the perpetrators, Golden and Bjorkman.  The substantive law governing negligent hiring, retention and supervision claims is essentially the same in California and Florida.  Only the perpetrator's employer can be held liable for negligence in hiring, retaining or supervising him.  Absent a common law basis for imposing vicarious liability (agency or alter ego), the employer's owner or parent company is not liable for the subsidiary-employer's negligence.  *See Kang v. Omni Tech.*, No. 91-15313, 1993 WL 212650 (Table) at *2 (9th Cir. June 17, 1993) ("Micro's parent-subsidiary relationship, without more, is not enough to support a finding of culpability" for employment discrimination); *Hernandez v. Howroyd-Wright Empl. Agency*, Case No. 20STCV42499, 2021 Cal. Super. LEXIS 2930 at *21-23 (Los Angeles Cnty. 2021) (parent company not plaintiff's employer, and employer was not parent's alter ego or agent); *Baj v. Roaming Am., Inc.*, 2017 Cal. Super. LEXIS 7960 at *6 (Los Angeles Cnty. 2017) (dismissing negligent hiring claim because employer's sole owner was not employer and not its alter ego); *Parra v. Feit*, No. 19STCV08726, 2021 WL 5514389 at *5-7 (Los Angeles Cnty. 2021) (granting summary judgment dismissing negligent hiring and supervision claim against owner of LLC that hired independent contractor because owner was not contractor's employer and contractor was not owner's agent.

The unrebutted evidence demonstrates that World Holdings does not involve itself in eXp Realty's decisions to engage or disassociate from agents; nor does it train or

---

still be untimely.  The limitations period for negligent hiring is three years in Washington and two years in Delaware.  *See Cox v. Oasis Physical Therapy, PLLC*, 153 Wn. App. 176, 190 (2009); *Morton v. Sky Nails*, 884 A.2d 480, 481 (2005).

[11] The March 2020 alleged assaults occurred in Florida, where the limitations period for negligent hiring claims at that time was four years (Florida shortened the appliable limitations period to two years in 2023).

supervise any agents with whom eXp Realty enters into ICAs.  (SUF #s 4-10, 20-23, 72-73.)  There is no evidence that World Holdings was even informed that eXp Realty was contracting with Bjorkman or Golden.  World Holdings does not authorize eXp Realty to represent itself as having authority to act on its behalf and there is no evidence that eXp Realty has held itself out as World Holdings' agent.  (SUF #s 80-83.)  World Holdings cannot be liable for negligently hiring, retaining or supervising Golden or Bjorkman because it did not decide to contract with them, did not decide to retain them after contracting, and did not supervise them during their tenure as independent contractors for eXp Realty.

The bases for holding a parent vicariously liable for the negligence of its subsidiary are the same as the bases for vicarious liability for sex trafficking – agency or alter ego status.  For the same reasons that World Holdings cannot be vicariously liable for eXp Realty's alleged participation in Bjorkman's and Golden's alleged sex trafficking venture, World Holdings cannot be vicariously liable for eXp Realty's alleged negligence in hiring, retaining or supervising them.  There are no allegations contending that eXp Realty is either World Holdings' alter ego or its agent, rendering consideration of the record evidence unnecessary.  *See Leek*, 194 Cal. App. 4th at 416 ("Because the alter ego theory was not adequately pleaded, Cooper had no burden to show that plaintiff's alter ego claim could not be established").  Pleading insufficiency aside, the record is devoid of evidence that there is "such a unity of interest and ownership between the corporation and its equitable owner that no separation actually exists" under California law.  *Id*. at 417 (amendment to allege alter ego status would be futile where corporations were not undercapitalized, did not comingle assets, divert corporate funds or assets, use the corporation as a shell and there was no evidence of that the defendant was hiding behind the corporate form).

As discussed in Section V(A), World Holdings does not exercise the degree of control over eXp Realty's operations, including its hiring, training, supervision, and firing of independent contractors or employees, required to establish vicarious liability through a

principal-agent relationship.  (SUF # 4-10, 20-23, 72-73.); *See Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1023 (C.D. Cal. 2020) (finding insufficient allegations of "nature and extent of control necessary to give rise to an agency relationship" between parent and subsidiary); *Walter v. Am. Modern Ins. Group*, No. CV 18-CV-02959-RGK-RAO, 2018 WL 5099499 at *3 (C.D. Cal. July 26, 2018) ("To establish an agency relationship, California law requires a plaintiff to show that 'a parent corporation so controls the subsidiary as to cause the subsidiary to become merely the agent or instrumentality of the parent'").  The record establishes eXp Realty's independence from World Holdings.  There is not a shred of evidence that eXp Realty is so dominated and controlled by World Holdings that it is a mere instrumentality of its parent company.

### 3.    Plaintiff Cannot Prove Negligence, Injury or Proximate Causation

As with beneficiary liability for sex trafficking, liability for negligent hiring requires a showing that the employer knew or should have known *before* the plaintiff was injured, that its employee (or contractor) posed an unreasonable risk of harming others if hired as a broker.  *See Federico v. Super Ct*, 59 Cal. App. 4th 1207, 1216 (1997).  An employer is not negligent if, *after* harm occurs, other witnesses come forward to describe prior incidents involving the perpetrator which, "in hindsight they interpret[] as  . . . indicative of deviant sexual proclivities" but "there was no showing that any of these incidents was called to defendant's attention at the time they occurred." *Id*. Here, when allegations surfaced in September 2020, that Bjorkman had sexually assaulted another agent, other agents came forward to describe prior incidents involving Bjorkman and, to a lesser degree, Golden, *but there is no evidence that those incidents were reported to eXp Realty or World Holdings management when they occurred*.

Roberts must also allege both injury and that negligent hiring was the proximate cause thereof.  *See James v. The Money Source Inc., No. 5:23-cv-00870-SSS-SHKx, 2023 WL 12171005 at *7, 9* (C.D. Cal. Nov. 7, 2023).  She cannot prove either.  The only alleged assault that is not time barred is the one Plaintiff infers occurred in Florida in March of 2020, when she shared a hotel room with Bjorkman and Golden.  However, there is no

evidence that either of them assaulted her during that event (she disclaims physically feeling as if she had sex and bases her conclusion that she was assaulted solely on Bjorkman's comment that she was being "shy"). Further, by that time, Roberts was engaged in a consensual intimate relationship with Golden, which she very much desired to continue. If in fact Golden drugged and sexually assaulted her during that trip – which makes no sense given her numerous explicit text messages expressing how much she was looking forward to having sex with him (SUF # 33)– eXp Realty's alleged negligence in hiring, retaining or supervising him as a real estate broker is not the cause. It is not enough that an employee acts improperly and thereby harms a third party; the employer must *antecedently* have reason to believe that an undue risk of harm would exist because it employed the employee. (*Phillips v. TLC Plumbing, Inc*, 172 Cal. App. 4th 1133, 1140 (2009) (quoting Restatement (2d) Agency, § 213, cmt. d); *Federico*, 59 Cal. App. 4th at 1214 (quoting Restatement (2d) Agency, § 213, cmt. d).) In other words, there must be "some nexus or causal connection between the principal's negligence in selecting or controlling an actor, the actor's employment or work, and the harm suffered by" the plaintiff. (*Estate of Alvarado v. Tackett*, 2018 WL 2543880, at *10 (S.D. Cal. June 4, 2018) (citing *Phillips*, 172 Cal. App. 4th at 1139).) [Where two employees elect to become lovers, what happens in the context of that relationship is a private matter. If Roberts was injured, it was because Golden was an unfit paramour; not because he was an unfit real estate broker.

## V.    CONCLUSION

For the foregoing reasons, this Court should grant this motion and enter summary judgment for World Holdings as to all claims alleged by Plaintiff in the First Amended Complaint.

DATED: March 13, 2026                    GREENBERG TRAURIG, LLP

                                         By */s/Ivy A. Wang*
                                         Ivy A. Wang
                                         Daniel J. Wadley
                                         Attorneys for Defendant eXp World Holdings, Inc.,
                                         eXp Realty, LLC, and Glenn Sanford