Jennifer A. Lenze, Esq., CA Bar No. 246858
LENZE LAWYERS, PLC
999 Corporate Drive, Suite 100
Ladera Ranch, California 92694
Tel: (310) 322-8800 F: (310) 322-8811
jlenze@lenzelawyers.com
Attorney for Plaintiff

Brooke Cohen, Esq., TX Bar No. 24007019 PHV Admitted
Andrea Hirsch, Esq., GA Bar No. 666557 PHV Admitted
COHEN HIRSCH, LP
5256 Peachtree Road, Suite 195-E
Atlanta, Georgia 30341
Tel: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ANYA ROBERTS,** | **Case No. 2:23-CV-10492-AB-AGR** |
| **Plaintiff,**<br>**v.** | **PLAINTIFF'S OPPOSITION TO DEENDANT EXP REALTY, EXP WORLD HOLDINGS, INC. & GLENN SANFORD'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF LAWRENCE JACOBSON** |
| **EXP REALTY, LLC, EXP WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD,** | |
| **Defendants.** | **Date: June 5, 2026**<br>**Time: 10:00 a.m.**<br>**Location: Courtroom 7B**<br>**Judge: Hon. André Birotte** |

# I.   INTRODUCTION

Defendants eXp Realty, LLC, eXp World Holdings, Inc. and Glenn Sanford ("the eXp Defendants" or "Defendants") Motion *in Limine* seeks to exclude the testimony of Plaintiff's real estate industry expert, Lawrence Jacobson, on the basis that his opinions are assumptions not supported by facts in the record and due to his reliance on "common sense."[1] *See* Defendants' Motion at Page 1. The eXp Defendants support this *in Limine* Motion with the following: 1) an assumption the person vetting Defendant Bjorkman knew of the past allegations of sexual assault and 2) an assumption the eXp Defendants had knowledge of Defendant Bjorkman's alleged misconduct prior to September 15, 2020, and finally a conclusion 3) the eXp Defendants breached their duty to Ms. Roberts based on "common sense."

This Motion is procedurally deficient in that it does not rely on evidence supported by a Declaration pursuant to Local Rule 7-6 *Evidence on Motions*. More fatal is that it is factually deficient, failing to give a full reading of the testimony of Mr. Jacobson *and* the factual record which support his assumptions and reference to "common sense." Mr. Jacobson's qualifications as an expert on issues of real estate agents and real estate industry custom and practice are *not* being challenged by the eXp Defendants through the instant Motion. Any such challenge would be futile.[2] So should

---

[1] Defendants' Motion seeks to exclude the testimony of Mr. Jacobson as opposed to the report of Mr. Jacobson. *See* Defendants' Notice of Motion. [Dkt. 156].

[2] *See* Lenze Dec. ¶ 10, Jacobson's *Curriculum Vitae*.

eXp's challenges with Mr. Jacobson's opinions. An expert's opinions should not be excluded because the facts upon which his opinion are predicated are in dispute *or* because an expert used a colloquial phrase like "common sense." The eXp Defendants' Motion rests on a mischaracterization of both the record and the governing law; it should be denied in its entirety.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony where the expert is qualified, the testimony is reliable, and it will assist the trier of fact. Fed. R. Evid. 702. Under *Daubert*, in assessing the admissibility of expert testimony under Federal Rule of Evidence 702, the Court must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (*Daubert* standards apply to all expert testimony, not only scientific experts). The purpose of the gatekeeping role is to ensure that expert testimony is "properly grounded, well-reasoned and not speculative," but it is not meant to substitute for "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden and proof [which] are the traditional and appropriate means of attacking shaky but admissible evidence." Fed. R. Evid. 702, Adv. Comm. Notes (2000) (quotation omitted).

"Because the Court acts merely as a gatekeeper and not a factfinder, an expert whose methodology is otherwise reliable should not be excluded simply because the facts upon which his or her opinions are predicated are in dispute, unless those factual assumption  are "indisputably wrong." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996); *see also* Fed. R. Evid. 702, Adv. Comm. Notes (2000) (explaining that "[w]hen facts are in dispute, experts sometimes reach different conclusions" and a trial court is not "authorize[d] ... to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other"). *In re MyFord Touch Consumer Litigation,* 291 F.Supp.3d 936, 967 (2018). "Expert opinion must have 'substance such that it would be helpful to the jury.' In other words, it should 'address an issue beyond the common knowledge of the average layman.'" *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1076 (D. Or. 2013) (internal citations omitted).

Here, the facts are disputed, not "indisputably wrong," and the customs and practices of real estate brokerages, including the supervision, security, and vetting of real estate agents, are not within the common knowledge of the average layperson. Accordingly, eXp Defendants' criticisms go to weight, not admissibility, and should be addressed through cross-examination rather than summary judgment.

## III.   ARGUMENT

### A. Defendants Improperly Seek to Exclude Opinions Based on Disputed Facts

Defendants argue that Mr. Jacobson's opinions are based on assumptions. These

assumptions are based on facts in dispute when a full record is considered.

### 1. Assumption: the person who was vetting Bjorkman (and eXp) knew of the past allegations of sexual assault

Mr. Jacobson offers an opinion that eXp Realty (1) did not properly vet Defendant Bjorkman before he entered into an Independent Contracting Agreement and (2) did not properly respond to allegations of wrongdoing by Defendant Bjorkman after he was an agent with eXp. *See* Declaration of Jennifer A. Lenze ("Lenze Dec.") at ¶ 2, Deposition of Jacobson ("Lawrence Dep.), 26:15-28:13; 33:1-17; 58:25-61:11; 61:12-62:18; 64:4-65:4; 65:19-69:13. This opinion is rooted in the factual record.

First, Debbie Penny, eXp Realty's California Broker,[3] herself confirms knew about ▮▮▮▮▮▮ allegation of sexual assault by Defendant Bjorkman but does not recall the exact timing of that knowledge. *See* Lenze Dec. at ¶ 3, Deposition of Debbie Penny, Vol. I (May 29, 2026) ("Penny Dep. Vol. I"), 194:10-205:15; 208:14-211:1; 215:3-14; 241:11-19. However, in the second session of Ms. Penny's deposition, she recalls it was before she started working for eXp. *See* Lenze Dec. at ¶ 4, Deposition of Debbie Penny, Vol. II (Jul. 29, 2025) ("Penny Dep. Vol. II"), 375:21-376:23.

Likewise, ▮▮▮▮▮▮, a real estate agent and former colleague of both Ms. Penny and Defendant Bjorkman, confirmed she told Ms. Penny that Defendant Bjorkman sexually assaulted her while they were both at another brokerage together in

---

[3] Ms. Penny was a managing state broker supporting the state broker in September of 2018 but became the designated state broker for California over Defendant Bjorkman in November of 2018. *See* Lenze Dec. ¶ 3 (Penny Dep. Vol. I, 49: 5-21; 53:10-24).

2011, *before* she, Defendant Bjorkman or Ms. Penny had gone to eXp in 2018. Ms. Penny's knowledge of prior rape allegations is also memorialized in eXp's "investigation" file for Defendant Bjorkman. *See* Lenze Dec. at ¶ 5 (Investigation file for Defendant Bjorkman produced by eXp at 2eXp_004245-2eXp_004356, *see* 2eXp_004313). Moreover, Ms. Penny knew that Defendant Bjorkman was planning on joining eXp *in advance* of him being hired by eXp to act as one of their recruiting agents. Lenze Dec. at ¶¶ 6, 7 (Ex. 20, 21 to Penny Dep. Vol. I).[4]

The eXp Defendants' attempt to circumvent Mr. Jacobson's opinion that Ms. Penny should have reported the sexual allegations lodged against Defendant Bjorkman to her superiors rests solely on the fact Ms. Penny was not *the* State Broker, but rather the Managing Broker. Mr. Jacobson makes clear that, during the vetting process leading to Defendant Bjorkman's onboarding at eXp, Ms. Penny possessed information sufficient for a jury to conclude that she knew of the relevant risks. *See* Lenze Dec. ¶ 2 (Jacobson Dep. at 27:2-28:13). Jacobson concludes that the seriousness of the allegations required attention and could not be dismissed or ignored. *See* Lenze Dec. ¶ 2 (Jacobson Dep. at 61:12-62:18). Whether she did or did not know is a question of fact for the jury to decide. *See* Lenze Dec. ¶ 2 (Jacobson Dep. 235:2-235:13).

---

[4] These communications were exchanged before Defendant Bjorkman signed his Independent Contractor Agreement with eXp on Sept. 4, 2018. *See* Lenze Dec. at ¶ 5 (2eXp_004247) and Dkt. 154-4 (Bjorkman's ICA).  *See also* Lenze Dec. at ¶ 11, Ex. 22 to Penny Dep. Vol. I (Email from Ms. Penny to Defendant Bjorkman, dated Oct. 8, 2018, just a month after Defendant Bjorkman joined eXp, notifying Defendant Bjorkman that agents are not permitted to use cold callers).

## 2. Assumption: eXp Defendants knew what Debbie Penny knew

Defendants' second line of attack of Mr. Jacobson's opinions is based on their premise that even assuming Ms. Penny knew about the sexual allegations against Defendant Bjorkman (she did) prior to her joining eXp, her knowledge cannot be imputed to eXp. The eXp Defendants' reliance on whether an agent's knowledge can be imputed to her principle is misplaced.

First, Defendants cite *In re Northrop Grumman,* ERISA Litig., 2017 WL 11685251 for the proposition an expert cannot give an opinion as a legal conclusion but that is not what Mr. Jacobson has done. As this Court in *In re Northrop* discussed:

> As is well-established, expert witnesses may give an opinion that "embraces an ultimate issue to be decided by the trier of fact," but "cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in original). Thus, for example, this ruling does not prohibit Ruud from testifying to whether Defendants administered the Plans in a manner consistent with an experienced, prudent fiduciary or whether Defendants' actions comported with industry standards. In fact, portions of the Ruud Report do just that. (*See* Ruud Report ¶¶ 95, 113.) But to the extent Plaintiffs seek to exclude the whole of Ruud's testimony on the ground it is comprised solely of legal conclusions, they did not sufficiently make that case. Nevertheless, nothing precludes Plaintiffs from raising objections along these lines at trial should this expert proffer improper testimony. The Court will thread that needle as necessary at trial.

2017 WL 11685251 at *3. As in *In re Northrop*, Mr. Jacobson clearly states: "The conduct of Defendant ("eXp Realty") was not consistent with the custom and practice of residential real estate brokerages as it relates to their supervision and security of real estate agents working under their corporate real estate broker's license." Lenze Dec. at

¶ 8 (Jacobson Report) and Lenze Dec. ¶ 2 (Jacobson Dep. 84:14-85:11; 163:9-18).

California codifies imputation broadly in Cal. Civ. Code § 2332: a principal is deemed to have notice of whatever the agent knows and "ought, in good faith and the exercise of ordinary care and diligence, to communicate." Courts interpret this to require two core elements:

1.  The knowledge was acquired within the scope of the agency; and

2.  The agent had a duty to disclose the information to the principal.

*Hale v. Depaoli*, 33 Cal. 2d 228 (1948). *Hale* confirms both the breadth of the rule and its limits, emphasizing that imputation applies where the agent is acting within their authority and has a duty to report material facts, subject to narrow exceptions (*e.g.*, adverse interest, breach of confidence).

Defendants' imputation argument seems to center on Ms. Penny's testimony that she learned of the sexual assault allegations lodged against Defendant Bjorkman *prior* to her joining eXp; however, California authority squarely recognizes that knowledge acquired *before* the agency relationship can still be imputed if it is "present in the mind" of the agent when acting for the principal on the relevant matter. *Rosenthal v. Garner*, 142 Cal. App. 3d 891, 896 (1983) (*quoting* Witkin) ("But knowledge acquired prior to the employment or in prior transactions may be imputed, if it is shown that, because of the close connection of the transactions, such knowledge was present in the mind of the agent at the time he acted for the principal.").

Defendants' reliance on *Redman v. Walters*, 88 Cal. App. 3d 448 (1979) is

consistent with—but does not undermine—this framework. *Redman* reiterates that knowledge is not imputed where it is acquired outside the scope of the agent's authority or in a context unrelated to the agency relationship. That limitation does not apply where the employee is acting within her managerial or supervisory function. Moreover, *Jefferson Pilot Life Ins. Co. v. Goold*, No. SACV 03-36 VAP (ANx), 2005 WL 5957832 (C.D. Cal. Nov. 15, 2005) reaffirmed that California's imputation doctrine requires a nexus between the knowledge and the agent's duties—*i.e.*, the knowledge must be acquired while acting within the course and scope of the agency **or** in connection with responsibilities that would carry a duty to disclose.

Here, the knowledge concerns the precise risk posed by the very recruiting agent eXp was vetting, and Defendant Sanford's own testimony places Penny inside that vetting chain. Defendant Sanford himself confirms that eXp's vetting policy is a two-step process. The first step is to "look at the agent's license to see if there's any complaints against their license." Lenze Dec. at ¶ 9, Deposition of Glenn Sanford ("Sanford Dep.") at 21:3-8. The second step is for the *managing brokers* themselves to apply their knowledge of the agents' local reputation in the market:

> The second form [of vetting] is the managing broker themselves and any direct or indirect knowledge that they would have about the individual that is joining, and -- and then even post joining, oftentimes we will hear after an agent joins about something that was not uncovered in those two instances that we then learn about and -- and that then becomes part of the decision-making matrix of whether we retain or -- or let go of an agent, based on their local reputation in the market.

Lenze Dec. at ¶ 9 (Sanford Dep. at 21:9-19). Moreover, Defendants' brokerage expert,

Lori Namazi, did not eliminate that issue. Namazi's opinion assumed the managing broker, Debbie Penny, did not know of rape allegations before Defendant Bjorkman was vetted for eXp, but she conceded that if ███████ in fact told Ms. Penny before vetting, that "could trigger a difference in my opinion." *See* Lenze Dec. at ¶ 10, Deposition of Namazi at 55:7–56:24, 58:1–61:2.

Mr. Jacobson's opinion is clear. A jury can determine the earliest point of Ms. Penny's knowledge, but given her role in eXp's California state broker's office and then eventually as eXp's California State Broker with that knowledge, she had an obligation to do more than nothing.

### 3. Mr. Jacobson Concluded eXp Breached their Duty to Ms. Roberts Based on Custom and Practice.

Notably absent from Defendants' Motions is the fact that Mr. Jacobson confirmed that when he said "common sense" in his testimony he was referring to custom and practice. Lenze Dec. at ¶ 2 (Jacobson Dep.79:1-10; 84:14-85:11; 93:7-21; 100:7-22). This custom and practice is not found in the National Association of Realtor Code of ethics which does not deal with an agency's relationship with their agent. *See* Lenze Dec. at ¶ 2 (Jacobson Dep. at 154:3-155:7). Mr. Jacobson offered the standard of care for the real estate industry as a qualified expert. Lenze Dec. at ¶ 2 (Jacobson Dep. at 20:12-18; 27:2-28:13. The standard of care/custom and practice of a real estate brokerage over its agents is not common knowledge to the average juror. As such, To rest an argument based on his colloquial use of the word "common sense" is not in good faith nor can it be equated with common knowledge when the full testimony of

Mr. Jacobson is reviewed.

## B. Any Alleged Weaknesses Go to Weight, Not Admissibility

Mr. Jacobson's opinions are directed at the eXp Defendants' knowledge, vetting, and supervisory obligations. That is consistent with the role of a standard-of-care expert. Any perceived gaps or inconsistencies are appropriate subjects for cross-examination.

## IV.   CONCLUSION

Defendants' Motion asks the Court to resolve disputed facts and exclude testimony that directly addresses those disputes. Mr. Jacobson is qualified, his methodology is reliable, and his opinions will assist the jury and provide testimony on the standard of care for real estate brokerages like eXp. For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in Limine.

Date: April 9, 2026

By: /s/ Jennifer A. Lenze
Jennifer A. Lenze (CA No 246858)
LENZE LAWYERS, PLC
999 Corporate Drive, Suite 100
Ladera Ranch, California 92694
Telephone (310) 322-8800
jlenze@lenzelawyers.com

Brooke F. Cohen TX 24007019 PHV Adm
Andrea S. Hirsch, GA 666557 PHV Adm
COHEN HIRSCH, LP
5256 Peachtree Road, Suite 195-E
Atlanta, Georgia 30341
Tel: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com

Attorneys for Plaintiff

11

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed and served on all counsel of record by way of the Court's CM/ECF filing system on April 9, 2026.

<u>/s/ Jennifer A. Lenze</u>
Jennifer A. Lenze

PLAINTIFF'S OPPOSITION TO DEENDANT EXP REALTY, EXP WORLD HOLDINGS, & GLENN SANFORD'S MOTION IN LIMINE OF LAWRENCE JACOBSON