# FILED UNDER SEAL

## EXHIBIT "C"

## Deposition of Debbie Penny

## July 29, 2025

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FABIOLA ACEVEDO, JANE DOE 1, | ) |
| JANE DOE 2, JANE DOE 3, and | ) Case No. |
| JOHN DOE 1, | ) 2:23-CV-01304-AB-AGR |
| Plaintiffs, | ) |
| vs. | ) |
| EXP REALTY, LLC, EXP WORLD | ) |
| HOLDINGS, INC., MICHAEL L. | ) |
| BJORKMAN; DAVID S. GOLDEN; | ) |
| GLENN SANFORD; BRENT GOVE; and | ) |
| DOES 1-10, | ) |
| Defendants. | ) |
| ------------------------------- | ) |

VIDEOCONFERENCE VIDEOTAPED DEPOSITION OF

DEBBIE PENNY

TUESDAY, JULY 29, 2025

10:17 A.M.

REPORTED BY:
SUSAN NELSON, C.S.R. No. 3202
JOB NO. 7511422
PAGES: 259-494

broker back in June of 2018 for eXp Realty of California. Correct? 14:02:37 14:02:40
A. Correct. 14:02:42
Q. And, at that point in time, you were managing broker under Ray Marquez. Correct? 14:02:43 14:02:44
A. Correct. 14:02:48
Q. And, in your role as managing broker, you supported the roles and responsibilities of the California state broker. Correct? 14:02:48 14:02:51 14:02:57
MR. PALLARES: Objection. Form. 14:02:58
THE WITNESS: I believe what's throwing me is the word "supported." 14:03:01 14:03:02
BY MS. LENZE: 14:03:04
Q. Did you assist Mr. Marquez in his roles and responsibilities as the California state broker? 14:03:05 14:03:08
MR. PALLARES: Objection. Form. 14:03:12
THE WITNESS: It's still an odd question. 14:03:20
BY MS. LENZE: 14:03:22
Q. Let me ask you this. What did -- what were your roles and responsibilities back in June of 2018 as the managing broker? 14:03:22 14:03:25 14:03:28
MR. PALLARES: Asked and answered. 14:03:30
THE WITNESS: I answered questions that the agents might have regarding transactions when they came into the virtual California broker room. The 14:03:34 14:03:37 14:03:40



same with emails, Workplace Chats. It was transactional, transactional help for the agents. And I taught the contracts class. 14:03:44 14:03:54 14:03:58
BY MS. LENZE: 14:04:00
Q. If you saw something concerning about a potential new agent, as a managing broker, would you have been required to let Mr. Marquez know? 14:04:06 14:04:09 14:04:15
MR. PALLARES: Objection. Form. 14:04:19
THE WITNESS: Again, that question -- the word "required." 14:04:21 14:04:31
BY MS. LENZE: 14:04:33
Q. Sure. Let me ask it this way. In becoming a managing broker, you understood the obligations -- well, strike that. 14:04:33 14:04:41 14:04:46
In becoming a managing broker, you had your broker's license. Correct? 14:04:46 14:04:49
A. Correct. 14:04:50
Q. And you understood the roles of the department of the state broker. Correct? 14:04:51 14:04:55
A. Correct. 14:04:57
Q. And you understood the roles and responsibilities of the California state broker at the time. Correct? 14:04:57 14:05:00 14:05:02
A. Correct. 14:05:03
MR. PALLARES: Objection. Form. 14:05:03



BY MS. LENZE: 14:05:04
Q. And you understood that the -- one of the roles and responsibilities of the California state broker back in June of 2018 was the vetting of potential new agents. Correct? 14:05:05 14:05:09 14:05:12 14:05:16
MR. PALLARES: Objection. Form. 14:05:17
THE WITNESS: To the extent of checking the DRE site, yes. 14:05:18 14:05:27
BY MS. LENZE: 14:05:29
Q. You understood back in June of 2018 that the only vetting process, as you understood it, was to check the DRE site. Correct? 14:05:34 14:05:44 14:05:48
MR. PALLARES: Objection. Form. 14:05:52
THE WITNESS: Correct. 14:05:53
BY MS. LENZE: 14:05:53
Q. And my question to you, Ms. Penny, is if in June of 2018 as a managing broker you knew something that was a cause of concern for the safety of other agents at eXp, would you have let Ray Marquez know that -- 14:06:06 14:06:09 14:06:14 14:06:19 14:06:29
MR. LEVINE: Object to the form. 14:06:31
BY MS. LENZE: 14:06:31
Q. -- concern -- okay. I wasn't quite finished. Let me -- let me try the -- 14:06:33 14:06:34
MR. LEVINE: I apologize. 14:06:35



MS. LENZE: -- question again. No, that's okay. Let me -- 14:06:37 14:06:37
MR. LEVINE: There was a pause. My apologies. 14:06:38 14:06:39
MS. LENZE: There was a pause. Sometimes my brain doesn't catch up to my mouth. Let me ask it a little quicker if I could this time. 14:06:39 14:06:41 14:06:44
BY MS. LENZE: 14:06:47
Q. If in June of 2018 you as a managing broker knew something that was -- something about a potential new agent to eXp that posed a risk to other eXp agents, would you have let Ray Marquez know? 14:06:48 14:06:51 14:06:54 14:06:59
MR. PALLARES: Objection. Form. Incomplete hypothetical. 14:07:04 14:07:05
THE WITNESS: If there had been something on the DRE site, yes. 14:07:10 14:07:11
BY MS. LENZE: 14:07:12
Q. As you sit here today, you have no recollection of when you knew that -- well, strike that. 14:07:21 14:07:25 14:07:31
As you sit here today, you have no recollection of the date [redacted] indicated to you that Mr. Bjorkman raped or potentially attempted to rape her. Correct? 14:07:31 14:07:33 14:07:38 14:07:45
MR. PALLARES: Form. 14:07:47

MR. SCHONFELD: Objection. Form and foundation. 14:07:49 14:07:51
THE WITNESS: After thinking about it, it would have been before eXp Realty. It would have been while I was at KW. 14:07:52 14:07:56 14:08:02
BY MS. LENZE: 14:08:09
Q. So, Ms. Penny, while you were at Keller Williams, it's your testimony that [redacted] told you that Defendant Bjorkman had either raped her or attempted to rape her. Correct? 14:08:10 14:08:16 14:08:21 14:08:24
MR. SCHONFELD: Object to the form. Foundation. Misstates prior testimony. Go ahead. 14:08:28 14:08:29
THE WITNESS: I became aware, but I don't recall exactly how I became aware. 14:08:33 14:08:36
BY MS. LENZE: 14:08:38
Q. As you sit here today, do you have a recollection of [redacted] telling you that Defendant Bjorkman raped or attempted to rape her? 14:08:51 14:08:53 14:08:59
MR. PALLARES: Objection. Form. 14:09:04
MR. SCHONFELD: Object to the form, foundation. Asked and answered. Go ahead. 14:09:05 14:09:08
THE WITNESS: Again, I don't recall exactly how I got that information. 14:09:11 14:09:13
BY MS. LENZE: 14:09:15
Q. As you sit here today, you don't know one 14:09:16



way or another whether it came from [redacted] herself? 14:09:18 14:09:21
MR. SCHONFELD: Object to the form and foundation. 14:09:23 14:09:24
THE WITNESS: I don't recall. 14:09:24
BY MS. LENZE: 14:09:25
Q. Do you recall at the time whether you were the California state broker for Keller Williams? 14:09:27 14:09:29
MR. PALLARES: Objection. 14:09:34
MR. SCHONFELD: Same objection. Same objection as last time for me. 14:09:35 14:09:38
THE WITNESS: I was the California broker for that office. 14:09:39 14:09:40
BY MS. LENZE: 14:09:43
Q. As the California broker for that Valencia Keller Williams, did you ask [redacted] to put those allegations of rape or attempted rape into writing? 14:09:44 14:09:48 14:10:01
A. Again, I don't recall -- 14:10:05
MR. SCHONFELD: Form. Foundation. 14:10:06
THE WITNESS: Sorry. I don't recall how I got that information. 14:10:08 14:10:09
BY MS. LENZE: 14:10:10
Q. I appreciate that, Ms. Penny, and I'm asking a little bit of a different question. Not how you got the information, but my question is, once you had 14:10:11 14:10:13 14:10:18



that information, do you have a recollection of asking [redacted] -- going to [redacted] and asking her to put that information in writing about the alleged rape or poten- -- attempted rape that you described? 14:10:21 14:10:24 14:10:30 14:10:36
A. I don't recall. 14:10:41
MR. SCHONFELD: Form. Foundation. 14:10:41
BY MS. LENZE: 14:10:48
Q. You don't recall? 14:10:49
A. I don't recall. 14:10:50
Q. But you do recall now having thought about [redacted] and a rape or attempted rape by Defendant Bjorkman as being something you learned while the brokerage -- by -- while you were a California broker of that particular Keller Williams. Correct? 14:10:51 14:11:00 14:11:05 14:11:11 14:11:17 14:11:21
MR. SCHONFELD: Form. Foundation. Misstates prior testimony. Go ahead. 14:11:22 14:11:23
THE WITNESS: An allegation of, yes. 14:11:25
BY MS. LENZE: 14:11:27
Q. Do you recall -- well, let me introduce the next exhibit. 14:11:30 14:11:45
Do you recall sending Mr. Haggard an email related to Defendant Bjorkman? 14:11:53 14:11:56
MR. PALLARES: Objection. Form. 14:12:00
THE WITNESS: I don't recall. 14:12:03



MS. LENZE: I'm going to introduce the next exhibit in line, Exhibit 30, eXp_PEN_000034. 14:12:05 14:12:08
(The document referred to was marked as Exhibit 30.) 14:12:08 14:12:28
MR. PALLARES: I'm sorry, you mentioned an email. Is this -- is this an email? 14:12:28 14:12:31
MS. LENZE: No. 14:12:33
MR. PALLARES: Okay. 14:12:34
BY MS. LENZE: 14:12:35
Q. Let me know when you're ready, Ms. Penny. 14:12:38
A. I'm ready. 14:12:39
Q. Okay. Do you recall this Facebook Workplace Chat of May 11th, 2021? 14:12:40 14:12:46
A. I don't recall. 14:12:48
Q. Does this appear to be a Workplace Chat conversation between yourself and Mr. Haggard? 14:12:49 14:12:53
A. It appears to be. 14:12:59
Q. Understanding you don't recall the specific conversation, I take it you don't recall if the three blanks on Exhibit 30 ever had any messages. Correct? 14:13:00 14:13:10 14:13:14
A. I don't recall. 14:13:20
MR. PALLARES: Belated objection. Form. 14:13:24
BY MS. LENZE: 14:13:26
Q. Mr. Haggard's message block of 9:21 and 32 seconds is blank. Correct? 14:13:27 14:13:31

MR. SCHONFELD: This is Richard. I do 16:41:38
not -- do not -- need a transcript. Thank you. I am 16:41:39
signing off. 16:41:42
MR. LEVINE: And a dirty, Ms. Reporter, 16:41:43
thank you, or a rough, whichever term you prefer, as 16:41:45
well as a video that is synced. 16:41:49
THE REPORTER: Thank you. 16:41:52
MS. LENZE: And Plaintiffs get one 16:41:54
automatically I think from our order, but just if you 16:41:55
need it for record -- 16:41:58
THE REPORTER: Thank you. 16:42:00
MS. LENZE: -- here's our order. Thank you. 16:42:00
MR. PALLARES: Yes, and -- 16:42:03
MR. LEVINE: Have a nice drive back, Bill. 16:42:05
I'm going to sign off. Thank you. 16:42:05
MR. PALLARES: Okay. Thank you. We're 16:42:07
done. We'll get -- we'll get a copy of the 16:42:08
transcript as well. 16:42:10
THE REPORTER: Thank you. 16:42:11
THE VIDEOGRAPHER: And, Mr. Pallares, did 16:42:13
you want the video? 16:42:14
MR. PALLARES: Sure. 16:42:14
THE VIDEOGRAPHER: Synced? Synced with the 16:42:15
transcript? 16:42:17
MR. PALLARES: Yes. 16:42:17

Page 488

THE VIDEOGRAPHER: And, Ms. Lenze, are you 16:42:18
holding off on the video? 16:42:21
MS. LENZE: Yes, we'll hold off on the video 16:42:22
order. Thank you so much. 16:42:24
THE VIDEOGRAPHER: Okay. I'll take us off 16:42:25
the record. We're going off the record. The time is 16:42:26
4:42 p.m., and this concludes today's testimony given 16:42:28
by Debbie Penny. The total number of media used was 16:42:33
four and will be retained by Veritext. 16:42:36
(Whereupon, at 4:42 p.m., the 16:42:36
virtual videoconference videotaped 16:42:36
deposition of DEBBIE PENNY was 16:42:36
adjourned.)

Page 489

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES ) ss.

I, DEBBIE PENNY, hereby declare under the penalties of perjury of the laws of the United States that the foregoing is true and correct.

Executed this __________ day of ____________________, 2025, at ____________________________, California.

______________________

DEBBIE PENNY

Page 490

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES ) ss.

I, SUSAN NELSON, C.S.R. 3202, in and for the State of California, do hereby certify:

That, prior to being examined, the witness named in the foregoing deposition was by me duly sworn to testify the truth, the whole truth and nothing but the truth; that said virtual videoconference videotaped deposition was taken down by me stenographically at the time and place therein named to the best of my ability, and thereafter transcribed via computer-aided transcription under my direction, and the same is a true, correct and complete transcript of said proceedings;

Before completion of the deposition, review of the transcript [x] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not interested in the event of the action.

Wi y of August, 2025.

Susan Nelson, C.S.R. No. 3202
Certified Shorthand Reporter
State of California

Page 491