WILLIAM E. PALLARES, SB# 187740
  Email: William.Pallares@lewisbrisbois.com
MACK H. REED, (*Pro Hac Vice* Pending)
  E-Mail: Mack.Reed@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

IVY A. WANG, SB# 224899
  Email: Ivy.Wang@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

DANIEL J. WADLEY, (*Admitted Pro Hac Vice*)
  Email: wadleyd@gtlaw.com
**GREENBERG TRAURIG, LLP**
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6900
Facsimile: 801.994.9041

Attorneys for Defendants,
eXp REALTY, LLC, eXp WORLD
HOLDINGS, INC., and GLENN SANFORD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANYA ROBERTS,<br><br>Plaintiff,<br><br>vs.<br><br>eXp REALTY, LLC, eXp WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN, DAVID S. GOLDEN, BRENT GOVE, EMILY KEENAN, GLENN SANFORD, MICHAEL SHERRARD, and DOES 1-10,<br><br>Defendants. | Case No. 2:23-CV-10492-AB-AGR<br><br>**DEFENDANTS eXp REALTY, LLC, eXp WORLD HOLDINGS INC., AND GLENN SANFORD'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT**<br><br>Trial Date:   August 31, 2026 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Defendants eXp REALTY, LLC and GLENN SANFORD respectfully respond to the Statement of Genuine Disputes of Plaintiff ANYA ROBERTS in support of eXp REALTY, LLC and GLENN SANFORD's Reply to the Opposition to Motion for Summary Judgment.[1]

| No. | Opposing Party's Dispute and Supporting Evidence | Moving Party's Response |
|---|---|---|
| 001 | eXp addressed agent misconduct through eXp's written policies which centralized investigation and discipline at the company level. The SOPs provided that "[h]ow eXp handles policy violators is up to the company," that "severe violations will be submitted to the compliance committee for resolution," and that the committee would "make a determination of eXp's course of action." <br><br> Evidence: Haggard 30(b)(6) Dep. (Aug. 27, 2024) 50:7-15; 70:24-71:8; 75:20-76:7; 337:14-19. Exhibit 2 to Haggard 30(b)(6) Dep. (Aug 27, 2024) | This SGD is not a disputed fact. |
| 002 | Agent Compliance existed to "help enforce eXp's policies with our independent contractors," Agent Attraction was one of the activities in which agents were "representing eXp," and substantive or severe attraction | This SGD is not a disputed fact. |

[1] Plaintiff's filing has no basis under the Local Rules and should be dismissed outright. It is unclear what purpose this "Statement of Genuine Disputes" has in its current form. If Plaintiff intended to file "Additional Undisputed Facts," she has done so in violation of the Rules. *See L.R. 56-1 through 56-4.* Defendants respond to these "Statements" out of an abundance of caution.



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | complaints were escalated internally for an outcome discussion. The Agent Compliance Committee was designed to weigh in on the outcome of the agent compliance determination of a policy violation.<br><br>Evidence: Haggard 30(b)(6) Dep. (Aug. 27, 2024) 10:3-11:1; 166:14-167:4; 273:17-274:23; Bramble 1 Vol. II (Octo. 31, 25)465: 21-467:13; Haggard Vol. 1, 30(b)(6) (Aug. 27, 24) 10: 3-8; 14:15-16; 166:2-170:3, Ex. 2 to Haggard Vol. 1 30(b)(6) (Aug 27, 24) | |
| 003 | Golden's and Bjorkman's contracts reflected the same company-created recruiting structure. Each ICA retained the contractor "exclusively for the Company," stated that the Revenue Share Plan existed "to provide a financial incentive to Contractors who recruit and retain agents to eXp Realty," and barred sponsor changes absent written permission from each agent in the contractor's upline plus a $1,000 fee.<br><br>Evidence: Doc. 154, Ex. 1, Pallares Dec, Golden's ICA, GOLDEN 0031, 0035, 0037; Doc. 154, Ex. 4, Pallares' Dec, Bjorkman ICA, 2eXp_005638, 2eXp_005641-43. | This SGD is not a disputed fact. |
| 004 | Bjorkman's and other agent's ICA also gave eXp the "sole right | This SGD is not a disputed fact. |

| | | | |
|---|---|---|---|
| | | and discretion" to review recruiting practices and to restrict attracting agents or release the contractor from the Company.<br><br>Evidence: Doc. 154, Ex. 4, Pallares Dec, Bjorkman ICA, 2eXp_005654. | |
| | 005 | Golden was actively attempting to move Ms. Roberts into his sponsor line. Before Ms. Roberts would switch sponsors, she wanted Holly Madden on board, and the Las Vegas trip was for Golden to explain the sponsor-switch opportunity and bring Ms. Madden into the process.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 191:5-25; 192:10-23; 211:20-212:3; Madden Dep. Vol. I (Dec. 12, 2025), 81:19-82:1. | Golden testified that Roberts drove the effort to make Golden her sponsor. 10/27/25 Golden Dep. at 753:2-25. This dispute is immaterial. Because Roberts was already a Real Estate Agent with eXp Realty, LLC, her switch to having Golden as her sponsor would not have made any difference to eXp Realty or Glenn Sanford.  SUF # 30, 32, 79.<br><br>It is undisputed that Golden offered to help Roberts. |
| | 006 | Once in Las Vegas, Golden discussed what he was willing and able to do for Ms. Roberts and Ms. Madden if they moved into his organization.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 194:19-195:1. | See Response to SGD ¶ 5. |
| | 007 | Ms. Madden corroborated that Golden promised salary, help, "secrets," and advancement and wanted them in Las Vegas to "go over everything."<br><br>Evidence: Madden Dep. Vol. I 81:2-8, 81:19-25, 82:1. | This SGD is not a disputed fact. |
| | 008 | Golden fused that sponsor-switch effort with elite eXp | See Response to SGD ¶ 5. It is undisputed that Roberts' access to |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS BRISBOIS BISGAARD & SMITH LLP<br>ATTORNEYS AT LAW

| | | |
|---|---|---|
| | access. While "they were trying to get me to make that decision," Ms. Roberts' access to Brent Gove changed, including access to calls, private lunches, VIP events, and the Grant Cardone event.<br><br>Evidence: Roberts Dep. Vol. II (Nov. 18, 2025) 154:10-21; 156:8-22. | Brent Gove changed during the referenced time period. |
| 009 | The second Las Vegas trip was another Golden-orchestrated opportunity for Roberts and Madden to spend time with Gove, attend the Grant Cardone event, and continue discussing a sponsor change into Golden's organization.<br><br>Evidence: Madden Dep. Vol. 2 (Dec. 12, 2025) 296:12-17; Roberts V1 (Nov. 14, 2025) 208:6-23, 209:19-22, 211:20-212:3, 218:6-23, 223:13-24. | See Response to SGD ¶ 5. |
| 010 | In March 2020, Golden invited Ms. Roberts and Ms. Madden to Flagler Beach/Daytona so they could observe how he and Bjorkman ran recruiting events for agents in their downline.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 231:22-232:13; Madden Dep. Vol. I (Dec. 12, 2025) 79:11-19, 98:12-99:12; Golden Dep. Vol. IV (Nov. 19, 2025) 1075:2-18, 1076:4-17, 1076:24-1077:8. | This SGD is not a disputed fact. |
| 011 | The event they were going to observe was being run with Ms. | This SGD is not a disputed fact. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Megan Farrell-Nelson, an agent in Golden's and Bjorkman's downline.<br><br>Evidence: Roberts Dep. Vol. I, 232:8-13. | |
| 012 | Golden had already described Bjorkman to Ms. Roberts as his business partner and longtime friend.<br><br>Evidence: Roberts Dep. Vol. I, 233:4-13, 233:20-234:2. | This SGD is not a disputed fact. |
| 013 | The Florida trip was not a random social excursion. Ms. Roberts and Ms. Madden both understood it as part of Golden's ongoing effort to draw Ms. Roberts closer through business opportunity, recruiting access, and sponsor-line promises.<br><br>Evidence: Roberts Dep. Vol. I 231:22-232:13, 234:4-10; Madden Dep. Vol. I 98:11-19. 99:21-100:5, 101:1-11. | See Response to SGD ¶ 5. |
| 014 | Bjorkman was not a bystander to that Florida sequence. He arrived at the room with luggage, announced he was staying there with Golden, later admitted "a hundred percent" he shared the room with Golden, and was present with Roberts before the GHB package arrived.<br><br>Evidence: Madden Dep. V1 (Dec. 12, 2025) 102:12-103:7; Bjorkman Dep. Vol. II (Oct. 13, 2025) 404:17-405:5, 405:14-22; Roberts Dep. V1 (Nov. 14, 2025) 238:10-239:2. | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 015 | While Roberts was in the room with both men, Bjorkman asked whether the package had arrived and what was happening before Golden retrieved it.<br><br>Evidence: Roberts Dep. Vol. 1 (Nov. 14, 2025) 249:22-24. | This SGD is not a disputed fact. |
|---|---|---|
| 016 | Both Golden and Bjorkman were excited when it arrived.<br><br>Evidence: Roberts Dep. V1 (Nov. 14, 2025) 246:17-19, 249:24-25, 250:1-2. | This SGD is not a disputed fact. |
| 017 | Golden had arranged for GHB to be shipped to the Hard Rock Hotel before the trip.<br><br>Golden Dep. Vol. I (Jun. 23, 2025) Ex. 7 at 1–2. | This SGD is not a disputed fact. |
| 018 | After the package arrived, Golden told Ms. Roberts it contained GHB, falsely described it as a performance-enhancing substance commonly used in the exercise world, and assured her he knew enough about it to give it to her safely.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 248:21-23, 250:12-25, 251:5-15, 252:2-17, 253:4-10. | Plaintiff's SGD 018 is argumentative in that it claims Golden "falsely described it as a performance-enhancing substance . . ." Otherwise, this SGD is undisputed. |
| 019 | Ms. Roberts then consumed GHB in the hotel room Golden, Bjorkman, and Roberts were sharing.<br><br>Evidence: Golden Dep. V3 (Oct. 27, 2025) 784:22-24, 786:9-12, 795:3-24, 796:9-19. | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 020 | After Ms. Roberts consumed the GHB, her memory fragmented. She recalled only flashes and periods of slipping in and out of consciousness.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025), 253:4-18; 257:2-17. | This SGD is not a disputed fact. |
|---|---|---|
| 021 | The next morning, Bjorkman was still in the room and walked into the bathroom naked while Ms. Roberts was showering. Roberts said, "What are you doing," and Bjorkman responded, "Oh, now you're shy.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025), 261:16-20. | This SGD is not a disputed fact. |
| 022 | Bjorkman likewise placed himself there and responded in his own version, "You weren't a prude last night."<br><br>Evidence: Bjorkman Dep. Vol. II (Oct. 13, 2025) 406:2-8. | It is unclear what Plaintiff means by "likewise placed himself there." Otherwise, this SGD is undisputed. |
| 023 | By September and October 2020, eXp had notice not merely of misconduct in the abstract, but also of Ms. Roberts specifically as a potential victim of Golden and Bjorkman. Ms. Farrell-Nelson later wrote that she had already reported the matter "almost 2 years ago," had had "countless phone calls" with Haggard and Gesing, and was only reducing the matter to writing because Bramble asked her to do so after a video conference. | Plaintiff's misrepresentation of this exhibit does not create a disputed fact. While it is undisputed that Farrell-Nelson made a report in 2020, there is no evidence that she identified Roberts as a potential victim of Golden in Bjorkman in 2020. The report made in 2020, Farrell Nelson 5.20.25 Dep. Ex. 27, makes no mention of Roberts. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Evidence: Farrell-Nelson V1 (Jan. 23, 2025) Exhibit 3 at 1:¶1. | |
| 024 | Her letter stated that the Las Vegas event had been "marketed to me as an EXP recruiting/retention event," that Golden and Bjorkman invited her, that 30 to 40 eXp agents or recruits attended, and that Ms. Roberts was the eXp agent Golden and Bjorkman brought to her house after an "educational/recruiting event," where Ms. Roberts was visibly intoxicated and said Golden and Bjorkman had given her "some sort of drug."<br><br>Evidence: Farrell-Nelson Vol. I (Jan. 23, 2025) Exhibit 3 at 2:¶4. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 025 | Ms. Farrell-Nelson also provided the Las Vegas police case number.<br><br>Evidence: Farrell-Nelson V1 (Jan. 23, 2025) Exhibit 3 at 2:¶1. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 026 | Noelle Nielsen's October 6, 2020, statement was addressed to Dave Conord, Jason Gesing, and Cory Haggard and was captioned "Bjorkman/Golden Investigation."<br><br>Evidence: Nielsen (Nov. 21, 2024) Exhibit 2 at 1:¶1. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 027 | She wrote that Golden and Bjorkman used Marco Polo "to communicate and recruit," that from her perspective "they were eXp for me," and that the | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | |
|---|---|---|
| | sponsor structure and inability to switch sponsors put women in a vulnerable position.<br><br>Evidence: Nielsen (Nov. 21, 2024) Exhibit 2 at 3:¶2, 7:¶2, 10:¶3. | response. |
| 028 | Under company policy, sexual-assault complaints made to another department, including HR or a member of the C-suite, were to be transferred to Agent Compliance and/or legal, and serious complaints were to be investigated through witness interviews and reviewed in weekly meetings.<br><br>Evidence: Haggard 30(b)(6) Dep. (Aug. 27, 2024), 69:14-20, 70:7-23, 71:1-15, 151:7-20, 152:1-25, 153:15-24. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 029 | eXp Realty and World Holdings were on formal preservation notice no later than August 11, 2022, and Bramble acknowledged internally that eXp had received notice to safeguard and not destroy documents.<br><br>Evidence: Preservation Letter, Aug. 11, 2022, at 12; Gesing Vol. II Dep. (Oct. 24, 2025) 566:2-11 and Exhibit 37 to the Gesing Vol. II Dep. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 030 | Even after that notice, no Workplace-specific litigation-hold policy was identified, the steps taken to preserve Workplace chats could not be explained, the company did not preserve the 90- | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

LEWIS<br>BRISBOIS<br>BISGAARD<br>& SMITH LLP<br>ATTORNEYS AT LAW

| | | |
|---|---|---|
| | day security logs needed to explain deletions, Stacey Onnen's Workplace chats were not recoverable, her account had been deleted, and the company could not determine who deleted it or why.<br><br>Evidence: Tollefson 30(b)(6) Dep. (Apr. 11, 2025) 91:2-92:2, 126:8-21, 127:12-20, 145:29, 146:5-21; Pallares Letter, Jan. 3, 2025, at 1; Onnen Dep. (Jan. 6, 2025) 176:1-11. | |
| 031 | Multiple produced Workplace chats contained blank message entries that witnesses could not explain, and no legitimate reason for a genuine Workplace message to appear blank was identified.<br><br>Evidence: Haggard Dep. Vol. III (May 2, 2025) 71:3-8; Bramble Rough Dep. (Jun. 20, 2025) 156:4-16; Penny Dep. 221:4-10, 224:5; Nuth Dep. (Oct. 3, 2025) 209:917; Tollefson 30(b)(6) Dep. (Apr. 11, 2025) 149:3-23. Hirsch Decl. (Correspondence from Plaintiff's counsel documented these preservation deficiencies) | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 032 | Dr. Chitra Raghavan opined that Roberts's account and clinical presentation are consistent with involuntary intoxication or the ingestion of substances without informed awareness of their nature or quantity. She further concluded that Roberts's reported amnesia is consistent with a level of impairment that would have | *See* Evidentiary Objections, ECF Doc. No. 256. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | precluded meaningful, informed consent at the time the sexual activity occurred.<br><br>Evidence: Raghavan Decl. (Jan. 9, 2025) 6:¶7, 6¶10, 8¶15; 25–26, 29 | |
| 033 | Stacey Onnen was not a peripheral custodian. She joined eXp in March 2018 as Senior Vice President of Brokerage Operations, later became President of Brokerage Operations, and testified that as President she was part of eXp's executive team.<br><br>Evidence: Onnen Dep. (Jan. 6, 2025) 24:19-25:6, 33:21-25, 37:12-23. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 034 | From March 2018 through January 2022, Stacey Onnen held senior leadership roles at eXp, including Senior Vice President of Brokerage Operations and later President of Brokerage Operations, and she was part of eXp's executive team.<br><br>Evidence: Onnen Dep. (Jan. 6, 2025) 24:19-25:6, 33:21-25, 37:12-23. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 035 | Golden-related allegations were routed directly to eXp's compliance committee through leadership, and the compliance committee looked into Golden.<br><br>Evidence: Onnen Dep. (Jan. 6, 2025) 326:15-21, 327:5-18, 338:3-25, 339:1-7. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | |
|---|---|---|
| 036 | Communications concerning Golden and the accusations involving Bjorkman were maintained in the compliance chat, and compliance materials were circulated through a group chat that included the relevant committee members.<br><br>Evidence: Onnen Dep. (Jan. 6, 2025) 130: 6-12, 193:12-25, 194:1-16, 327:18-25, 328:1-23. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 037 | eXp's compliance committee communicated through Workplace chat, Stacey Onnen had Workplace chats with Bramble, and by the time of this litigation those chats were no longer visible.<br><br>Evidence: Bramble Rough Dep. (Jun. 20, 2025) 187:9-14, 188:20-22. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 038 | Workplace and email were the primary forms of communication eXp used in investigating sexual-misconduct complaints.<br><br>Evidence: Haggard Dep. Vol. III (May 2, 2025) 68:5-25, 69:1-21. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 039 | By October 1, 2020, an investigation into Golden was alleged to be underway through eXp's compliance process, but no such investigation has been produced.<br><br>Evidence: Gesing V2 Dep. (Oct. 24, 2025) 429:6-19. | Plaintiff's citation to Gesing V2 Dep. (Oct. 24, 2025) 429:6-19 supports the statement that an investigation was underway, but it does not state that "no such investigation has been produced." Because Plaintiff has not identified evidence supporting this allegation that evidence of the investigation has not been produced, the Court must disregard this allegation. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 040 | Under eXp's procedures for a serious policy violation, an investigation required opening a case file, interviewing the complainant, witnesses, and accused agent where possible, obtaining written statements where possible, and collecting and attaching evidentiary documents to the case file.<br><br>Evidence: Haggard Dep. Vol. III. (May 2, 2025) 34:4-18, 35:14-25, 36:1-18. | This SGD is not a disputed fact. |
|---|---|---|
| 041 | On September 16, 2020, eXp Realty's CEO, Jason Gesing reports to eXp's Crisis Team that he has learned through eXp World Holdings, Boad of Directors member Gene Frederick and Kevin Cottrell of a Facebook post by Christy Lundy that she was drugged at a real estate event in Las Vegas.<br>Evidence: Ex 7 to Gesing Vol I (Jun. 3, 2025) at eXp_HAG_000727. | This SGD is not a disputed fact. |
| 042 | After receiving information about the Facebook Post, Gesing alerts the team that according to Frederick and Cottrell, "Mike and David are notorious for wanting to have a good time and pushing the boundaries of acceptable behavior."<br><br>Evidence: Ex 7 to Gesing Vol I (Jun. 3, 2025) at eXp_HAG_000727. | The exhibit speaks for itself and appears to only attribute the quote to Cottrell. Otherwise, this SGD is not a disputed fact. |
| 043 | On September 18, 2020, eXp was notified that an eXp agent | This SGD is not a disputed fact. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | reported she had been raped by Michael Bjorkman; eXp management discussed those allegations and decided to take action that same day; and eXp removed Bjorkman from associating his real estate license with the company.<br><br>Evidence: Haggard Dep. (Aug. 20, 2025) 11:19– 25; Haggard Dep. (Aug. 20, 2025) 12:8–20; Haggard Dep. (Aug. 20, 2025) 13:5–9. | |
| 044 | On September 18, 2020, Agent Compliance member Jim Nuth informs the crisis team that he spoke with Defendant Bjorkman's state broker, Debbie Penny, and she disclosed that she was aware that KW had previously terminated Defendant Bjorkman due to issues related to drinking and fights. Despite also knowing that there were also rape allegations lodged against Defendant Bjorkman, that was not noted in the crisis teams' workplace chats.<br><br>Evidence: Ex 12 to Haggard Vol I (May 2, 2025). | Haggard May 2, 2025 Dep. Ex. 12 speaks for itself, and the first sentence of SGD 44 generally describes this exhibit. The workplace chats discuss the rape allegations against Defendant Bjorkman on pages eXp_HAG_000819 on eXp_HAG_000821.<br><br>There is no dispute that Megan Farrell-Nelson made rape allegations against Defendant Bjorkman. |
| 045 | On September 28, 2020, Agent Compliance members Haggard, Onnen, Bramble and Nuth discuss allegations that Defendant Golden was harassing Ms. Megan Farrell-Nelson, an agent in Defendants Bjorkman and Golden's downline and "interfering with a legal matter | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

| | | |
|---|---|---|
| | and her right to due process."<br><br>Evidence: Ex 15 Haggard Depo Vol IV (Aug. 20, 2025). | |
| 046 | On October 1, 2020, another agent in Defendants Bjorkman and Golden's downline, Noelle Nielsen, notified eXp that she believes she was also drugged by Defendants' Bjorkman and Golden.<br><br>Evidence: Ex 16.1 Haggard Vol. IV (Aug. 20, 2025) at 2exp_005536-37. | 8/20/25 Haggard Depo. Ex. 16.1 speaks for itself. Nowhere on pages 2eXp_005536-37 does the document state Nielsen notified eXp that she was also drugged by Defendants Bjorkman and Golden. |
| 047 | That same day, Mr. Haggard was aware of "a lot of accusations around David Golden. And yet, I did feel that - I did feel concern about him being at eXp."<br><br>Evidence: Haggard 122:2-8. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 048 | On October 3, 2020, Ms. Tami Sims complained to Mr. Haggard that she was assaulted by Defendant Bjorkman and that Bjorkman had told her that Defendant Golden is also a "rapist."<br><br>Evidence: Exhibit 7 to Sims Dep. (Mar 4, 2025) | The 3/4/25 Sims Depo. Exhibit 7 speaks for itself. Nowhere in this exhibit is there a statement that Bjorkman told Sims that Golden was a "rapist." |
| 049 | On October 4, 2020, Ms. Farrell-Nelson calls Mr. Haggard implicating Defendant Golden in her assault.<br><br>Evidence: Ex 16.1 to Haggard Vol. IV (Aug. 20, 2025). | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 050 | In response, Mr. Bramble suggests that eXp start publicly | This SGD has not been cited by Plaintiff in her oppositions to eXp |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | |
|---|---|---|
| | distancing themselves from Golden.<br><br>Evidence: Ex 18 Haggard Vol IV (Aug. 20, 2025). | Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 051 | On October 6, 2020, Ms. Neilson sends a detailed memo captioned "Bjorkman/Golden Investigation" to Dave Conord, Jason Gesing, and Cory Haggard.<br><br>Evidence: Nielsen (Nov. 21, 2024) Exhibit 2 at 1. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 052 | In Ms. Nielsen's memo, she alerted eXp in no uncertain terms of her concerns about Defendants Bjorkman and Golden.<br><br>Evidence: Exhibit 2 to Nielsen (Nov. 21, 2024). | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 053 | Ms. Nielsen informed eXp that she believes she was drugged in Golden and Bjorkman's suite; Golden missed a speaking appearance on stage because he was too drunk or high; Golden and Bjorkman sexually harassed her in Puerto Rico in December 2019; in Puerto Vallarta, Golden tried to get Sandy Stites to come back tohis room with him and his girlfriend and propositioned her; on a recruiting visit to Minnesota, Golden got in a fist fight with another eXp agent Bernier.<br><br>Evidence: Exhibit 2 to Nielsen (Nov. 21, 2024). | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 054 | On October 7, 2020, Mr. Haggard informs the Crisis Team "I also think we need to | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's |

LEWIS<br>BRISBOIS<br>BISGAARD<br>& SMITH LLP<br>ATTORNEYS AT LAW

| | | |
|---|---|---|
| | really look at David [Golden]."<br><br>Evidence: Ex 59 Hag Depo. | motions. As such, this SGD is immaterial and does not require a response. |
| 055 | On November 9, 2020, Ms. Farrell-Nelson sent a detailed written complaint to Mr. Haggard.<br><br>Evidence: Exhibit 29 to Penny Vol. II (Jul 29, 2025). | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 056 | In this complaint, Ms. Farrell-Nelson accuses Defendant Bjorkman of sexually assaulting her and that Defendant Golden provided date rape drugged used to commit the rape.<br><br>Evidence: Exhibit 29 to Penny Vol. II (Jul 29, 2025). | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 057 | Ms. Farrell-Nelson also told eXp that Defendant Golden had asked one of her downline agents to procure him cocaine; offered her husband GHB; brought eXp agent Anya Roberts to his room to have sex with her in Puerto Vallarta and brought that same agent to her house where she was extremely belligerent and intoxicated.<br><br>Evidence: Exhibit 29 to Penny Vol. II (Jul 29, 2025). | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 058 | The World Holdings board regularly received updates on company financial condition, including compensation paid through the revenue-share program.<br><br>Evidence: Bramble 30(b)(6) | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

| | | |
|---|---|---|
| | Dep. 21:18-25, 22:1-7. | |
| 059 | Glenn Sanford testified, "The business of eXp is to attract and retain a customer which in our case, as [sic.] an agent."<br><br>Evidence: Sanford Dep. 126:12-14. | This SGD is not a disputed fact. |
| 060 | eXp Realty grows through its Revenue Share Plan, a sponsor-driven system in which agents recruit other agents into a downline and derive financial benefit from their production.<br><br>Evidence: Keep at 3; Sanford Dep. 38:22-25; Golden Independent Contractor Agreement. | Keep at 3: *See* ECF Doc. No. 256. Plaintiff has failed to properly identify this document in compliance with L.R. 56-2.<br><br>Sanford Dep. 38:22-25: This testimony makes no mention of the Revenue Share Plan, eXp's Growth, or the recruiting process. This testimony has nothing to do with SGD 60.<br><br>Golden Independent Contractor Agreement: Plaintiff has failed to identify which document she is referencing or the pinpoint citation supporting this SGD in compliance with L.R. 56-2.<br><br>There is no dispute that eXp Realty grows its business when Real Estate Agents recruit other productive Real Estate Agents to sell properties. |
| 061 | eXp's Policies and Procedures require that agents conducting recruiting and "Agent Attraction" activities comply with company rules, obtain pre-approval of recruiting materials, and adhere to behavioral standards while acting "as agents of the Company." | Several Policies and Procedures have been produced in this matter, so it is unclear which document Plaintiff is referencing here. As such, Plaintiff fails to identify supporting evidence in compliance with L.R. 56-2. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Evidence: eXp Policies and Procedures at 4, 17, 22. | |
| 062 | eXp's written policies state that "[a]ll reported or suspected occurrences of harassment will be promptly and thoroughly investigated," and that agents who engage in such conduct may be immediately removed.<br><br>Evidence: eXp Policies and Procedures at 21. | Several Policies and Procedures have been produced in this matter, so it is unclear which document Plaintiff is referencing here. As such, Plaintiff fails to identify supporting evidence in compliance with L.R. 56-2. |
| 063 | eXp Realty designed and implemented the sponsor-driven Revenue Share Plan as a central component of its business, expressly to "incentivize" agents to recruit and retain others and expand the company's agent base.<br><br>Evidence: Bramble Deposition 70:20-25, 71:2-7. | James Bramble participated in three separate depositions relating to this matter, and it is unclear from this citation which deposition Plaintiff is referencing. As such, Plaintiff fails to identify supporting evidence in compliance with L.R. 56-2.<br><br>It is undisputed that the Revenue Share Plan helps incentivize agents to recruit productive agents to expand the company's agent base. Plaintiff has failed to cite to any evidence that the Revenue Share Plan is a central component of eXp Realty, LLC's business. |
| 064 | That Revenue Share system operated through a tiered sponsor-line structure in which compensation depended on the recruitment and productivity of downstream agents.<br><br>Evidence: Sanford Deposition 77:18-20; Onnen Deposition 70:3-5. | This SGD is not a disputed fact. |
| 065 | Dr. William Keep testified that eXp's revenue-share model | *See* ECF Doc. No. 256. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | imposes real economic risk on participants because most agents never realize meaningful revenue-share income, the system depends on continuous recruitment and the productivity of downstream agents, and the company's promotional messaging diverges from actual outcomes reflected in eXp's own data.<br><br>Evidence: Keep Deposition 31:1-15; 110:5-10; 123:21-25; 124:1-3; 125:9-20; 128:2-23. | |
| 066 | Dr. William Keep testified that agents choose eXp based on the promise of the revenue-share opportunity, yet only a small percentage ever achieve financial returns.<br><br>Evidence: Keep Dep. 125:9-14; 133:3-10. | This SGD is not a disputed fact. |
| 067 | eXp's own expert, Olsen, identified Company Dollar and transaction-based fees generated from agent transactions while revenue share was distributed through the same sponsor network.<br><br>Evidence: Olsen Report ¶¶ 15-16, 26, 29, 39. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 068 | By September 2020, eXp leadership received reports that Golden and Bjorkman were "notorious" for pushing boundaries and engaging in misconduct involving intoxication and women. | Plaintiff fails to comply with L.R. 56-2 because her evidence fails to identify to which of the four Haggard depositions and multiple "Exhibit 10 to Haggard Deposition" she is citing. She also fails to identify a page number for the citation. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Evidence: Exhibit 10 to Haggard Deposition. | It is otherwise undisputed that eXp Realty received reports about Bjorkman in September 2020. |
| 069 | Those reports described repeated allegations of intoxication, drugging, sexual misconduct, and exploitation in recruiting-related settings involving Golden and Bjorkman.<br><br>Evidence: Exhibit 10 to Haggard Deposition; Exhibit 2 to Nielsen (Nov. 21, 2024). | Plaintiff fails to comply with L.R. 56-2 because her evidence fails to identify to which of the four Haggard depositions and multiple "Exhibit 10 to Haggard Deposition" she is citing. She also fails to identify a page number for either of the exhibits.<br><br>There is no dispute that eXp Realty received reports that reference Bjorkman and Golden. The reports speak for themselves. |
| 070 | Golden's ICA tied the revenue-share plan to company growth and provided that the plan was funded from the percentage of gross commission the company retained on closed transactions, while also stating that the plan's terms and conditions were subject to modification by the board.<br><br>Evidence: Dkt. 154-1 (Pallares Decl., Exhibit 1 at GOLDEN 0031); Haggard 30(b)(6) Dep. 248:17-25, 249:1-14, 250:4-5 | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 071 | Mr. Olsen calculated that eXp received approximately $58,898 in revenue from Plaintiff Roberts between 2018 and 2023—consisting of $19,917 in Company Dollar and $38,982 in fees; Sanford received $692 that can be attributed to income generated by Ms. Roberts. | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Evidence: Olsen Report ¶¶ 39-40, 50. | |
| 072 | Glenn Sanford is the founder and former CEO of eXp Realty and the founder, Chief Executive Officer, Chairman of the Board, and majority shareholder of eXp World Holdings, Inc.<br><br>Evidence: Sanford Dep. 20:11-13; 37:12-17; 43:13-5; 53:6-7: 65:12-14; Mabery 30(b)(6) 51:15-17. | This SGD is not a disputed fact. |
| 073 | Sanford can access any level of management and can direct the implementation of policies and procedures, giving him practical authority to intervene in and control eXp's operations when he chooses.<br><br>Evidence: Sanford Dep. 41:24-43:11. | Within Plaintiff's pinpoint citation, Sanford explicitly states, "In practicality, I can tell you that does not happen." Sanford Dep. 42:4.<br><br>Moving Parties otherwise do not dispute that Sanford had the highest level of authority at eXp Realty during the times mentioned in this lawsuit. |
| 074 | Sanford designed eXp's business model to replicate a multi-level recruiting structure.<br><br>Evidence: Sanford Dep. 55:1–56:25. | Nowhere in Plaintiff's pinpoint citation is there a reference to a "multi-level recruiting structure." Plaintiff has failed to cite evidence in support of this SGD in compliance with L.R. 56-2.<br><br>Evidence: Sanford Dep. 55:1–56:25. |
| 075 | He built eXp's system as a seven-level revenue-sharing structure designed to drive agent recruitment and retention.<br><br>Evidence: Sanford Dep. 55:1–56:25. | This SGD is not a disputed fact. |
| 076 | Sanford structured that system to | This SGD is not a disputed fact. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | share revenue—not profit—so that payouts would be more predictable and directly tied to the recruiting network he built.<br><br>Evidence: Sanford Dep. 55:1–56:25. | |
| 077 | Sanford retained the authority to change the revenue-share system at any time.<br><br>Evidence: Sanford Dep. 57:5–7. | Plaintiff's cited evidence does not support SGD 77. At Sanford Dep. 57:5-7, Sanford states, "We've maintained the ability to change the revenue share system," indicating that the authority went beyond Sanford alone. |
| 078 | According to Sanford, the revenue-share program as the mechanism by which "Agent Attraction is monetized."<br><br>Evidence: Sanford Dep. 89:16–21. | This SGD is not a disputed fact. |
| 079 | The larger an organization becomes, the more potential it has to produce sales and therefore "more revenue share being shared."<br><br>Evidence: Sanford Dep. 100:13-18. | This SGD is not a disputed fact. |
| 080 | The decision whether to preserve revenue-share benefits, including whether to lock in front line qualifying agents, ultimately rests with Sanford.<br><br>Evidence: Gesing Dep. Vol. I (Jun. 3, 2025) 259:6–8. | The citation provided by Plaintiff only supports the allegation that Sanford makes the decision whether to lock in front line qualifying agents. The citation referenced makes no mention of whether to preserve revenue-share benefits. |
| 081 | The terms and conditions of the revenue-share plan are subject to modification by executive management and World | This SGD is not a disputed fact. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Holdings' Board.<br><br>Evidence: Bramble 30(b)(6) Dep. (Dec. 15, 2025) 19:7–25, 21:18–25, 22:1–7, 193:13–194:24. | |
| 082 | eXp Realty benefits financially from the revenue-share system.<br><br>Evidence: Sanford Dep. 89:23-25; 90:15-20; 126:8–14. | This SGD is not a disputed fact. |
| 083 | World Holdings benefits financially from the revenue-share system.<br><br>Evidence: Sanford Dep. 126:16–23. | This SGD is not a disputed fact. |
| 084 | Sanford himself benefits financially from the revenue-share system.<br><br>Evidence: Sanford Dep. 126:25–127:8. | The evidence provided by Plaintiff only mentions agent attraction; it does not reference a "revenue-share system." |
| 085 | Sanford designed the revenue-share program to create a permanent residual income stream for himself and to generate part of his retirement income.<br><br>Evidence: Sanford Dep. 101:15–102:2. | This SGD is not a disputed fact. |
| 086 | Originally, Sanford's compensation was based exclusively on eXp Realty's revenue-share numbers.<br><br>Evidence: Sanford Dep. 104:15–20. | The testimony cited by Plaintiff states "*almost* exclusively." (emphasis added) |
| 087 | Even after the compensation formula changed, it still included | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | revenue share and continued to treat it as one of Sanford's retirement benefits.<br><br>Evidence: Sanford Dep. 106:18–107:7 | |
| 088 | Although Sanford was not a standing member of the Agent Compliance Committee, he knew he had influence over it.<br><br>Evidence: Sanford Dep. 233:9–19. | Disputed to the extent SGD omits language cited within Sanford Dep. 233:9–19, which states, "they [the agent compliance committee] also knew that they had latitude to make the decision and that I would stand by whatever they decided." |
| 089 | Sanford admitted that his influence over the committee was "not really in debate."<br><br>Evidence: Sanford Dep. 233:15-19. | Disputed to the extent SGD omits language cited within Sanford Dep. 233:9–19, which states, "they [the agent compliance committee] also knew that they had latitude to make the decision and that I would stand by whatever they decided." |
| 090 | Even though eXp removed Bjorkman's license from eXp Realty, eXp continued to receive commissions from transactions involving Bjorkman's referrals to eXp agents.<br><br>Evidence: Onnen Dep. 212:1-21. | The citation identified by Plaintiff only describes a single transaction; it does not identify multiple transactions. |
| 091 | Bjorkman continued to receive referral income from those same transactions through his own brokerage.<br><br>Evidence: Onnen Dep. 212:16-22. | The citation identified by Plaintiff only describes a single transaction; it does not identify multiple transactions. |
| 092 | In January 2021, Bjorkman received a referral fee of $11,947.50 from a transaction involving an eXp agent, and eXp received a portion of the commission from that same | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | transaction.<br><br>Evidence: Onnen Dep. 212:16-22. | |
| 093 | Even after his offboarding, Bjorkman could still make money by sending business to eXp agents while eXp continued to earn its share of those transactions.<br><br>Evidence: Onnen Dep. 212:20-22; 214:15–18. | This SGD is not a disputed fact. |
| 094 | On October 13, 2020, Sanford told Bjorkman, "we are trying to do right by you" and "I have your back on the Rev Share."<br><br>Evidence: Ex. 17 to Sanford Dep. at eXp_SAN_000386. | This SGD is not a disputed fact. |
| 095 | eXp World Holding's general counsel, James Bramble, kept Sanford informed on the Compliance Committee's actions related to Bjorkman's vesting status and would relay Sanford's position back to the Compliance Committee.<br><br>Evidence: Sanford Dep. 229:18–24; 231:17-25; Exhibit 20 to Sanford's Dep at 2eXp_005144. | This SGD is not a disputed fact. |
| 096 | Before the October 19, 2020 compliance committee meeting, Sanford had already decided to accelerate Bjorkman's vesting, departing from eXp's written policy requiring a three-year vesting period.<br><br>Evidence: Ex. 21 to Sanford | The Exhibit cited by Plaintiff does states, "Glenn has already made the decision. We are to implement a program where an agent accelerates vesting if they leave involuntarily before 3 months." 2eXp_005055 makes no mention of Bjorkman. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Dep. at 2eXp_005055. | |
| 097 | Internal communications reflect that Sanford made that decision in advance of the committee's discussion.<br><br>Evidence: Ex. 21 to Sanford Dep. at 2eXp_005055. | It is undisputed that Ex. 21 to Sanford Dep. at 2eXp_005055 states, "Glenn has already made the decision. We are to implement a program where an agent accelerates vesting if they leave involuntarily before 3 months." |
| 098 | At the October 19 Compliance Committee Meeting, Jim Bramble relayed Sanford's decision to the committee, which followed that direction and approved accelerated vesting so that Bjorkman's revenue-share benefits would be preserved and paid.<br><br>Evidence: Exhibit 20 to Sanford's Dep at 2eXp_005144. | Plaintiff's citation in support of SGD 98 does not mention any "decision" made by Sanford. Exhibit 20 to Sanford's Dep at 2eXp_005144 speaks for itself and does not create any material disputes of fact. |
| 099 | The October 19, 2020, committee minutes record that Bramble met with Sanford, that Sanford confirmed his position on accelerated vesting, and that the committee followed "Glenn's instruction" to accelerate Bjorkman's vesting period and ensure he would be "paid accordingly."<br><br>Evidence: Exhibit 20 to Sanford's Dep at 2eXp_005144. | This SGD is not a disputed fact. |
| 100 | On October 20, 2020, Bramble confirmed internally in a Workplace Chat that "Glenn has already made the decision [to accelerate vesting]."<br><br>Evidence: Ex. 21 to Sanford Dep. at 2eXp_005055. | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 101 | On November 8, 2020, Bjorkman directly appealed to Defendant Sanford to preserve his Front Line Qualifying Agents and be locked in with his vesting so that he would not "lose everything."<br><br>Evidence: Ex. 22 to Sanford Dep. at eXp_SAN_000391. | This SGD is not a disputed fact. |
|---|---|---|
| 102 | On June 29, 2021, the compliance committee voted 5–1 against allowing Bjorkman to return to eXp but could not reach a decision with respect to granting him some exceptions to receiving payment.<br><br>Evidence: Exhibit 9 to Keating Dep. (Jan. 10, 2025) at 2eXp_000012; Keating Dep. (Jan. 10, 2025) at 203:23-204:3. | This SGD is not a disputed fact. |
| 103 | James Bramble, voted in favor of allowing Bjorkman to return "based on Glenn's comments."<br><br>Evidence: Exhibit 9 to Keating Dep. (Jan. 10, 2025) at 2eXp_000012. | This SGD is not a disputed fact. |
| 104 | Sanford then personally appeared at the July 2, 2021, compliance committee meeting addressing that same issue, despite not previously attending such meetings.<br><br>Evidence: Keating Dep. (Jan. 10, 2025) 206:16– 18. | This SGD is not a disputed fact. |
| 105 | Sanford was aware of the prior vote before attending the meeting.<br><br>Evidence: Keating Dep. (Jan. 10, | Courtney Keating testified that she had an understanding of whether Mr. Sanford was aware of the vote that had occurred on June 29th, |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | |
|---|---|---|
| | 2025) 208:3–6. | 2021. Plaintiff's citation to Keating Dep. (Jan. 10, 2025) 208:3–6 does not otherwise establish that Sanford was in fact aware. Regardless, this SGD does not create a dispute of material fact. |
| 106 | During that meeting, Sanford told the committee that it should not act as "judge, jury, and executioner" and described action before the courts had ruled as a "slippery slope."<br><br>Evidence: Keating Dep. (Jan. 10, 2025) 207:7–14. | This SGD is not a disputed fact. |
| 107 | Keating recalled that Sanford's comments shut down discussion and affected the dynamics of the meeting.<br><br>Evidence: Keating Dep. (Jan. 10, 2025) 207:15–18; 208:2–11. | Nowhere in Plaintiff's citation for SGD 107 does Keating recall that Sanford's comments shut down discussion and affected the dynamics of the meeting. |
| 108 | Following this compliance committee, Sanford told Bjorkman, "I've been lobbying in the background."<br><br>Evidence: Ex. 27 to Sanford Dep. at eXp_SAN_000396. | This SGD is not a disputed fact. |
| 109 | Approximately six (6) months later, in 2022, Felicia Gentry, a member of World Holdings' Board of Directors received a letter addressed to the Board of Directors related to the sexual misconduct allegations that had been lodged against Defendant Bjorkman.<br><br>Evidence: Gentry Dep. 69:19-22. | There is no dispute that Felicia Gentry received a letter; the citation identified by Plaintiff, however, makes no mention of the date she received the letter. |
| 110 | Ms. Gentry brought this issue to | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | the board of directors.<br><br>Evidence: Gentry Dep. 70:21-23. | |
| 111 | The first time Ms. Gentry addressed the board was during a board of directors meeting but because it was not an item on the agenda, the issue was tabled and was not addressed during the meeting.<br><br>Evidence: Gentry Dep. 71:3-16. | Plaintiff's citation does not clearly endorse SGD 111, which states in part, "The issue was - - I would - - I would call it - - we - - the meeting was ending. It was toward the end of the meeting. So it was not addressed in a - - on a formal, like, agenda item." This quote, nor any quote from Plaintiff's citation, does not indicate that the issue was not addressed during the meeting. |
| 112 | Ms. Gentry informed the board that there were agents coming to her about allegations of sexual misconduct.<br><br>Evidence: Gentry Dep. 71:17:23. | This SGD is not a disputed fact. |
| 113 | Mr. Bramble responded by informing Ms. Gentry that there was an internal investigation going on with it with the compliance committee.<br><br>Evidence: Gentry Dep. 71:24-72:2. | This SGD is not a disputed fact. |
| 114 | At a subsequent Board of Directors meeting, Ms. Gentry raised the issue again and was told by some of the other board members to "stay out of it."<br><br>Evidence: Gentry Dep. 75:6-14, Gesing Dep. 537:1–18, 538:1–12. | This SGD is not a disputed fact. |
| 115 | Following this second meeting, Defendant Sanford reached out to Ms. Gentry and requested to have a phone call with her. | This SGD is not a disputed fact. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Evidence: Gentry Dep. 80:20-81:4. | |
| 116 | On that call, Mr. Sanford told Ms. Gentry that there was an internal investigation and it was being handled.<br><br>Evidence: Gentry Dep. 80:5-10. | This SGD is not a disputed fact. |
| 117 | Ms. Gentry made an attempt to pursue an independent investigation through the law firm Jackson Lewis but got "shut down" and "scolded" by Defendant Sanford for making this inquiry to outside counsel.<br><br>Evidence: Gentry Dep. (Oct. 18, 2024) 129:15 – 130:9; 132:6–17; 133:3-8. | This SGD is not a disputed fact. |
| 118 | After the filing of the Acevedo complaint, Sanford personally directed that an internal Workplace Chat group consisting of eXp's Alpha Agents be shut down.<br><br>Evidence: Sanford Dep. 141:10–142:4; 142:25– 143:2. | This SGD is not a disputed fact. Sanford's deposition transcript later indicates that the chat being shut down is different than the chat being deleted. Being shut down means it was "archived and it can't be used for additional conversation." Sanford Dep. 144:8-16. |
| 119 | Defendant Golden made promises to Ms. Roberts of career advancement, including that he would help her switch sponsors, help her get her business going, share recruiting secrets, and support her efforts to build at eXp by leveraging his experience as a top recruiter.<br><br>Evidence: Madden Dep. Vol. I (Dec. 12, 2025), 81:2-9; Roberts | Golden's testimony identified by Plaintiff disputes that he made her "promises," and characterized himself as offering to help her because her sponsor would not help her. Golden Dep. Vol. III (Oct. 27, 2025) 874:14-18; 875:19-24.<br><br>Regardless, this dispute is not of material fact. *See also* Response to SGD 5. |

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Dep. Vol. I (Nov. 14, 2025) 173:1-175:16; Golden Dep. Vol. III (Oct. 27, 2025) 874:14-18; 875:19-24. | |
| 120 | Anya Roberts and her business partner, Holly Madden, traveled to Puerto Vallarta in February 2020 to attend the Freedom Summit, an eXp event in Puerto Vallarta. Roberts testified that she believed top-earning eXp agents possessed "special trade secrets" that made them successful in recruiting, and Madden likewise testified that she and Roberts attended the Freedom Summit in Puerto Vallarta in early February 2020.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025), 77:20-23; 107:15-17; Madden Dep. Vol I (Dec. 12, 2025) 82:7-19, 82:22-23. | Disputed to the description of the event as "an eXp event." Plaintiff correctly identifies the event as a Brent Gove event in SGD 121. Otherwise, This SGD is not a disputed fact. |
| 121 | Defendant Golden was held out as one of the top recruiters at eXp to agents like Ms. Roberts and Ms. Madden, as a model of success inside eXp's recruiting and revenue-share culture, highlighted through his presence on stage at the "Freedom Summit", a Brent Gove event.<br><br>Evidence: Golden Dep. Vol. III (Oct. 27, 2025), 751:11-15; 775:20-24, 776:1-7; 885:2425, 886:1-3; Roberts Dep. Vol. I (Nov. 14, 2025) 107:15-109:10; Gove Dep. Vol. II (June 13, 2025), 64:20-25, 65:110. | This SGD is not a disputed fact. |
| 122 | On the evening of February 7, | This SGD has not been cited by |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | |
|---|---|---|
| | 2020, during the recruiting event, Ms. Roberts and Ms. Madden boarded a catamaran to attend a sunset cruise to attend a private networking event called "Rhythm of the Night" - which was an island dinner and show off the coast of Puerto Vallarta.<br><br>Evidence: Golden Dep. Vol. III (Oct. 27, 2025), 885:21-25, 886:1-3; Roberts Dep. Vol. I (Nov. 14, 2025), 124:12-125:4; Madden Dep. Vol. I (Dec. 12, 2025), 83:19-21. | Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 123 | On the return portion of the sunset cruise, Emily Keenan, Defendant Golden's girlfriend, approached Ms. Roberts and struck up a conversation about shared interests.<br><br>Evidence: Roberts Dep. Vol. III (Dec. 11, 2025), 214:21-215:6; Golden Dep. Vol. III (Oct. 27, 2025), 750:23-25, 751:1-10 | This SGD is not a disputed fact. |
| 124 | Ms. Roberts was holding a drink while speaking to Ms. Keenan.<br><br>Evidence: Roberts Dep. Vol. III (Dec. 11, 2025), 212:8-16. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 125 | Ms. Roberts indicated to Ms. Keenan that she was tired and Ms. Keenan responded by offering Ms. Roberts a pill that was "like a coffee."<br><br>Evidence: Roberts Dep. Vol. III (Dec. 11, 2025), 216:13-19. | This SGD is not a disputed fact. |
| 126 | Ms. Keenan placed the pill in | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Ms. Roberts mouth and said something to the effect of here, take this, it's just an Adderall.<br><br>Evidence: Roberts Dep. Vol 1 (Nov. 14, 2025) 141:15; 142:22-23; Roberts Dep. Vol. III (Dec. 11, 2025) 216:1-6. | |
| 127 | Ms. Keenan then asked Ms. Roberts whether she knew her boyfriend, Defendant Golden, and offered to introduce them.<br><br>Evidence: Golden Dep. Vol. III (Oct. 27, 2025), 750:11-19; 750:23-25; 751:1-10. | This SGD is not a disputed fact. |
| 128 | While Ms. Roberts had never met Defendant Golden, she had heard of him since he had been on stage teaching about his success at eXp through recruiting.<br><br>Evidence: Roberts Dep. Vol I (Nov. 14, 2025) 155:16-20. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 129 | Ms. Roberts met him and, recalls not being attracted to either him or Ms. Keenan.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 157:12-23, 158:7-24; Golden Dep. Vol. III (Oct. 27, 2025), 750:23-25, 751:1-15, 752:3-24. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 130 | Ms. Roberts remembers little else after the boat ride; Madden observed that Roberts did not return with their party and instead arrived back to the hotel lobby on the last bus, and, while the group was talking, Keenan removed Roberts' phone from her back | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | pocket, stepped back with it, and then put it back in Roberts' pocket.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 186:15-19; Madden Dep. Vol. I (Dec. 12, 2025), 83:19-25, 84:1-20; 85:16-25, 86:1-14. | |
| 131 | They began talking about eXp, and she then set her drink down and went to the bathroom, returning to the conversation and the same drink.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 157:12-23, 158:7-24; Golden Dep. Vol. III (Oct. 27, 2025), 750:23-25, 751:1-15, 752:3-24. | This SGD is not a disputed fact. |
| 132 | Ms. Farrell-Nelson saw Ms. Keenan and Ms. Roberts making out on the sunset cruise and found it quite odd in the setting of a work event with families present.<br><br>Evidence: Farrell-Nelson Dep. (May 20, 2025), 608:6-25, 609:3. | This SGD is not a disputed fact. |
| 133 | Ms. Roberts has no memory of this, and this behavior was a complete divergence for Roberts because she had never had a sexual encounter with a woman.<br><br>Evidence: Roberts Dep. Vol I (Nov. 14, 2025), 190:18-191:3; Madden Dep. Vol. II (Dec. 12, 2025), 263:11-19. | This SGD is not a disputed fact. |
| 134 | Ms. Farrell-Nelson ends up in Defendant Golden and Ms. | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Keenan's room while Ms. Roberts is present there with Defendant Golden, Ms. Keenan, Ms. Farrell-Nelson, and another unidentified person.<br><br>Evidence: Farrell-Nelson Dep. Farrell-Nelson Dep. (May 20, 2025), 605:1-10. | |
| 135 | Ms. Farrell-Nelson describes Ms. Roberts as sitting quietly on the bed, withdrawn, and "not really engaging with everyone."<br><br>Evidence: Farrell-Nelson Dep. (May 20, 2025), 605:1-8. | This SGD is not a disputed fact. |
| 136 | Ms. Farrell-Nelson is then abruptly told to leave the room, leaving Ms. Roberts alone with Ms. Keenan and Defendant Golden.<br><br>Evidence: Farrell-Nelson Dep. (May 20, 2025), 605:9-16. | This SGD is not a disputed fact. |
| 137 | The next thing Ms. Roberts remembers coming to on the bed with Ms. Keenan on top of her, with Ms. Keenan's fingers inside of her while Defendant Golden was present, watching and touching his penis.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 165:16-25, 166:1-25, 167:8-25, 168:1-13, 169:10-24, 170:1-25, 171:11-25, 172:6-25, 173:2-25, 174:1-20, 175:1-16. | This SGD is not a disputed fact. |
| 138 | Seemingly sensing Ms. Roberts' discomfort by her repeated apologies and frantic attempt to | The phrase "Seemingly sensing Ms. Roberts' discomfort" is improper, speculative, and not appropriate as |

175896320.1

37

Case No. 2:23-CV-10492-AB-AGR

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | put her clothes back on, Defendant Golden told her to relax and said that Ms. Keenan was leaving the room.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 170:1–171-25. | a factual statement. Otherwise, this SGD is not a disputed fact. |
| 139 | Ms. Roberts remembers feeling disoriented, horrified.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 169:10-24, 170:1-25, 171:11-25, 172:6-25, 173:2-25, 174:1-20, 175:1-16. | Nowhere in these citations does Roberts testify that she was disoriented. Otherwise, this SGD is not a disputed fact. |
| 140 | Defendant Golden immediately redirects, took Ms. Roberts out on the balcony and began discussing sponsor changes, access to Brent Gove and other eXp decisionmakers and ways around eXp's normal policies and procedures.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 171:11-25, 172:1-24, 173:1-25, 174:1-20. | The phrase "Defendant Golden immediately redirects" is argumentative and inappropriate within a statement of fact as required by L.R. 56-2. |
| 141 | Defendant Golden made promises to Ms. Roberts of career advancement, including that he would help her switch sponsors, help her get her business going, share recruiting secrets, and support her efforts to build at eXp by leveraging his experience as a top recruiter.<br><br>Evidence: Madden Dep. Vol. I (Dec. 12, 2025), 81:2-9; Roberts Dep. Vol. I (Nov. 14, 2025) 173:1-175:16; Golden Dep. Vol. III (Oct. | *See* Response to SGD 005. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | 27, 2025) 874:14-18; 875:19-24. | |
| 142 | Defendant Golden also promised Ms. Roberts he would put her on a salary, help her "get to the top" at eXp.<br><br>Evidence: Madden Dep. Vol. I (Dec. 12, 2025), 81:2-8. | This SGD is not a disputed fact. |
| 143 | Promises of salary and financial support were something Defendant Golden had done for other agents he was recruiting.<br><br>Evidence: Nielsen Dep. (Nov. 21, 2024), 148:4-10. | This SGD is not a disputed fact. |
| 144 | Ms. Roberts later learned that Golden's promises of business assistance, salary, and help building at eXp—were intertwined both with her moving into Golden's line and with his expectation that she be sexually involved with both him and Ms. Keenan.<br><br>Evidence: Madden Dep. Vol. I (Dec. 12, 2025), 117:2-25, 118:1-15; Madden Dep. Vol. II (Dec. 12, 2025), 285:24-286:19, 287:6-14; Roberts Dep. Vol. I (Nov. 14, 2025) 165:21-25, 166:1-25, 167:8-25, 168:1-13, 172:18-24, 173:1-25, 174:1-5; Roberts Dep. Vol. III (Dec. 11, 2025) 155:17-24, 156:2-157:1, 183:10-13; Golden Dep. Vol. III (Oct. 27, 2025), 752:3-24, 753:2-25; 761:17-25, 762:125; Golden Dep. Vol. IV (Nov. 19, 2025). | *See* Response to SGD 005. |
| 145 | Unbeknownst to Ms. Roberts, during that trip to Puerto | This SGD is not a disputed fact. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Vallarta, Mr. Golden took pictures of Ms. Roberts of which she has no recollection.<br><br>Evidence: UNDER SEAL Golden Dep. Vol IV (Nov. 19, 2025) Exh. 47-48 and Confidential testimony Pages 947-998.; DECLARATON OF ANYA ROBERTS. | |
| 146 | These photos depict Ms. Roberts lying on a bed, nude and appearing unconscious; another picture depicting Ms. Roberts lying face down, nude with Ms. Keenan on top of her, and another depicting Ms. Roberts wearing lingerie performing yoga poses next to Ms. Keenan.<br><br>Evidence: UNDER SEAL Golden Dep. (Nov. 19, 2025) Exh. 47-48; Golden Dep. Vol IV (Nov. 19, 2025) 929:6-930:17. | This SGD is not a disputed fact. |
| 147 | Also during the Puerto Vallarta conference, Ms. Keenan stole Ms. Roberts' credit card from Ms. Roberts without her knowledge and then texted Defendant Golden a photograph of it with the message "Collateral" to which he replied, "That's hot."<br><br>Evidence: Golden Dep. Vol. III (Oct. 27, 2025), 770:15-25, 771:1-10; Golden Dep. (Nov. 19, 2025) Ex. 46 at 1-2 Golden Dep. Vol. III (Oct. 27, 2025), 886:5-13; Golden Dep. (Nov. 19, 2025) Ex. 46 at 3. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 148 | Defendant Golden states the | This SGD has not been cited by |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | reason for this was to ensure that Ms. Roberts would return.<br><br>Evidence: Golden Dep. Vol. IV (Nov. 19, 2025), 940:20-941-9. | Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 149 | Ms. Farrell-Nelson witnessed this in real time and observed Ms. Celebrating for "pulling" Ms. Roberts.<br><br>Evidence: Farrell-Nelson Dep. (May 20, 2025), 606:6-25, 607:1-12. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 150 | Ms. Madden recalls Ms. Roberts returning to their shared room, after meeting with Defendant Golden and Ms. Roberts being euphoric, frenetic, and disheveled stating that Defendant Golden was going to change their lives, help their careers, and put her on a salary.<br><br>Evidence: Madden Dep. Vol. I (Dec. 12, 2025), 80:22-25, 81:1-8. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 151 | Immediately after returning from Puerto Vallarta, Defendant Golden invited Ms. Roberts and Ms. Madden to Las Vegas to explain the sponsorship-change opportunity for Ms. Roberts to switch from her current sponsor to Defendant Golden and to bring Ms. Madden into that discussion.<br><br>Evidence: Madden Dep. Vol. I (Dec. 12, 2025), 81:19-25, 82:1-1; Roberts Dep. Vol. I (Nov. 14, 2025) 191:5-24, 192:10-23, | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

**41**

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | 211:20-212:3. | |
| 152 | Ms. Madden confirms the trip was about being sold on moving into Defendant Golden's organization/downline and walk them through the details of that opportunity.<br><br>Evidence: Madden Dep. Vol. I (Dec. 12, 2025), 81:19-25, 82:1-1; Madden Dep. Vol. II (Dec. 12, 2025), 296:1-17; 297:5-13; 298:8-23. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 153 | On February 11, 2020, just two days after returning from Puerto Vallarta, Ms. Roberts and Ms. Madden flew to Las Vegas to meet with Defendant Golden.<br><br>Evidence: Madden Dep. Vol. I (Dec. 12, 2025), 81:19-25, 82:1-1; 82:17-20; Golden Dep. Vol. IV (Nov. 19, 2025), 1034:14-1035:2, | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 154 | Before Ms. Roberts met Defendant Bjorkman in person, Defendant Golden had already described him as his business partner and longtime friend.<br><br>Evidence: Roberts Dep. Vol. I (Nov. 14, 2025) 233:6-13. | This SGD is not a disputed fact. |
| 155 | Defendant Golden recruited Defendant Bjorkman to eXp in 2018.<br><br>Evidence: Golden Dep. Vol. III (Oct. 27, 2025), 742:14-18; Bjorkman Dep. Vol. III (Oct. 29, 2025), 8:7-11; Bjorkman's ICA (Dkt. 154-4). | This SGD is not a disputed fact. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| 156 | Defendant Golden and Defendant Bjorkman had a history together that dated back a decade from the "REO" days.<br><br>Evidence: Zagorsky Dep. (July 25, 2025) 27:1-29:16; 33:3-22-35:19; 36:13-22. | This SGD is not a disputed fact. |
| 157 | During their time at eXp. Defendant Golden and Defendant Bjorkman routinely manipulated the placements of their recruits.<br><br>Evidence: Golden Dep. Vol. I (June 23, 2025), 237:1-25, 238:1-20; Acevedo Dep. Vol. II (May 22, 2025), 497:23-25, 498:1-2; 499:14-16; 454:19-25; 455:1-13; Brady Nelson Dep. (May 19, 2025), 221:8-14. TEXTS showing placement of people under other people they recruited. | The deposition testimony speaks for itself and does not support an argument that they "routinely manipulated the placements of their recruits." Such an allegation is not appropriate for a statement of fact as the terms "routinely" and "manipulated" are argumentative. |
| 158 | After making her feel "silly" for not knowing about GHB given her interest in fitness; Defendant Golden persuaded Ms. Roberts to take the GHB, reassuring her that he knew what he was doing and could give it to her safely.<br><br>Evidence: Roberts Dep. Vol. II (Nov. 18, 2025), 196:11-25, 197:1-18; Golden Dep. Vol. III (Oct. 27, 2025), 784:19-25, 785:1-6; Roberts Dep. Vol. I (Nov. 14, 2025) 251:22-252:1. | This SGD is not a disputed fact. |
| 159 | Defendant Bjorkman knew what GHB was and had personal experience with it before the Flagler trip as he admits to using | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | it twice with Defendant Golden; and twice he was drugged in Las Vegas by strangers to the point he was made unconscious.<br><br>Evidence: Bjorkman Dep. Vol. I (Aug. 6, 2025) 227:24-229:22; Bjorkman Dep. Vol. II (Oct. 13, 2025), 453:6-22. | |
| 160 | Defendant Bjorkman explained that Ms. Roberts was "very flirty and trying to make out and grabby," and that she was "[t]rying to kiss me and stuff like that."<br><br>Evidence: Bjorkman Dep. Vol II (Oct. 13, 2025) 406:5-18. | This SGD is not a disputed fact. |
| 161 | Ms. Roberts testified that she felt something bad had happened the night before based on an unexplained sense of familiarity Defendant Bjorkman had toward her that morning, which she found disturbing given her lack of memory.<br><br>Evidence: Madden Dep. Vol. II (Dec. 12, 2025), 210:7-21. | This SGD is not a disputed fact. |
| 162 | Ms. Farrell-Nelson saw Defendant Golden with GHB at her house.<br><br>Evidence: Farrell-Nelson Dep. (May 20, 2025), 623:10-25, 624:1-9. | This SGD is not a disputed fact. |
| 163 | eXp's multi-step vetting process includes the managing broker as a "second step;" Sanford confirmed that Debbie Penny served in that role for Bjorkman. | Nowhere in Sanford Dep. 21:9-19 is there a reference to Debbie Penny. Plaintiff fails to identify any citation in support of "Sanford confirmed that Debbie Penny |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Evidence: Sanford Dep. 21:9-19 | served in that role for Bjorkman." This allegation must not be considered. It is undisputed that eXp's multi-step vetting process includes the managing broker as a "second step". |
| 164 | Sanford further testified that if Penny had known of sexual misconduct allegations before Bjorkman joined eXp, that information would have been material to the onboarding decision.

Evidence: Sanford Dep. 23:19-23; 208:5-21. | This SGD is not a disputed fact. |
| 165 | eXp only implemented a policy and procedure for reporting sexual harassment in November of 2018.

Evidence: Exhibit 28 to Haggard 30(b)(6) Dep. and pages 211:18-213:8; 216:19-218:3; 153:3-156:25; 196:22-198:9. | This SGD is not a disputed fact. |
| 166 | eXp never trained their agents on the reporting policies and procedures even when they were implemented.

Evidence: Haggard 30(b)(6) Deposition (Dec. 16, 2024) 126:16-127: 21 | This statement is misleading because eXp Realty cannot require trainings for Real Estate Agents because they are independent contractors. *See, e.g.*, 5/29/25 Penny Dep. at 118:17-23. While the statement is undisputed on its face, it must be read in context of what eXp is legally permitted to require. |
| 167 | Both Defendant Golden and Defendant Bjorkman were excited when the package arrived, and Defendant Golden went to the front desk to pick it up and bring it to the room. | This SGD is not a disputed fact. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Evidence: Roberts Dep. Vol. II (Nov. 18, 2025), 195:18-25, 196:1 | |
| 168 | Agents understood they could report to their upline.<br><br>Evidence: Declaration of Anya Roberts. | It is unclear what Plaintiff is indicating agents understood they could report to their upline. Further Plaintiff fails to provide a pincite to her Declaration in violation of L.R. 56-2. This dispute is immaterial. |
| 169 | eXp had a duty to oversee its agents.<br><br>Evidence: Deposition of Jacobson 26:15-28:13; 33:1-17; 58:25-61:11; 61:12-62:18; 64:4-65:4; 65:19-69; Expert Report of Lawrence Jacobson. | Disputed to the extent the statement is overly broad and out of context. eXp Realty has an obligation to supervise its Real Estate Agents from a regulatory perspective. *See, e.g.*, 5/29/25 Penny Dep. 34:1-14. This dispute is immaterial. |
| 170 | Bjorkman also testified that he "know[s] for a fact" that he did not take GHB that weekend in Flagler.<br><br>Evidence: Bjorkman Dep. Vol. II (Oct. 13, 2025), 407:6-10. | This SGD is not a disputed fact. |
| 171 | Defendant Golden was an Alpha agent at eXp which was a top recruiter in the company.<br><br>Evidence: Golden Dep. Vol. I (June 23, 2025) Page 303: Line 23 - Page 304: Line 12. | This SGD is not a disputed fact. |
| 172 | Defendant Bjorkman was a top recruiter in eXp.<br><br>Evidence: Bjorkman Dep. Vol. I (Aug. 6, 2025) 116:15-117:6; Exhibit 24 to Bjorkman Dep. (Oct. 29, 2025). | This SGD is not a disputed fact. |
| 173 | eXp World Holdings was the parent company of eXp Realty | This SGD has not been cited by Plaintiff in her oppositions to eXp |

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | and had responsibilities with respect to the revenue-share program.<br><br>Evidence: Bramble 30(b)(6) Dep. (Dec. 15, 2025) 18:9-16; 19:6-15; 20:8-17; Dkt. 162-2 (Bramble Declaration) ¶ 2. | Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 174 | World Holdings exercised oversight over its subsidiaries, including eXp Realty, and the World Holdings board was responsible for putting management in place for World Holdings and, through that chain, eXp Realty.<br><br>Evidence: Bramble 30(b)(6) Dep. (Dec. 15, 2025) 19:22-21:12; Dkt. 162-2 (Bramble Dec.) ¶ 4. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 175 | eXp Realty, LLC had received complaints of sexual harassment and assault prior to the assault of Ms. Roberts.<br><br>Evidence: Onnen Dep. 245:13-250:19; Exhibit 29 to Onnen Dep.; Exhibits 3, 4 and 5 (2eXp_003301-2eXp_003320) to Haggard Dep (May 2, 2025); Depo of Haggard (May 2, 2025) 59:15-61:15; 61:16-67:6; 70:17; 71:16; 85:24-90:2. | None of the citations support the conclusion that eXp Realty, LLC had received complaints of sexual assault. |
| 176 | Golden focused on the recruiting aspect at eXp.<br><br>Evidence: Golden Dep. Vol. 1 (June 23, 2025) Page 308: Lines 16-23. | This SGD is not a disputed fact. |
| 177 | When eXp conducted investigation the Standard | This SGD has not been cited by Plaintiff in her oppositions to eXp |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Operating Procedure called for knowledge of the influencer/ICON and/or a significant producer status of the agent was required to inform certain members of management.<br><br>Evidence: Haggard Dep. Vol. 1 (May 2, 2025) Ex. 2 at 2926 under Step 2. | Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 178 | eXp started the Agent Compliance Dept in 2019 overseeing approximately 17,000 agents and approximately 30,000 in 2020 for the purpose of investigating violations or suspected agent violations of their ICAs.<br><br>Evidence: Haggard 30(b)(6) Dep. (Aug, 27, 2024) Page 35: Line 6-10; Page 94: Lines 1724; Page 34: Line 22-Page 38: Line 16. | This SGD is not a disputed fact. |
| 179 | Defendant Bjorkman signed a settlement agreement with eXp; continued to be paid revenue share following his termination; and continued to recruit in the shadows.<br><br>Evidence: Bjorkman Dep. Vol I (Aug. 6, 2025) Bjorkman Vol. 1 (Aug 6, 2025) 83: 19-84: 6; 90:4-97:15; 156:13-158:18 Ex. 4, Ex. 6. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 180 | James Bramble, World Holdings' General Counsel, Courtney Keating, World Holdings' Chief Marketing Officer (CMO) were both members of eXp Realty's Agent Compliance Committee. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | Evidence: Dkt. 162-2; Bramble Dec. ¶ 6. | |
| 181 | eXp Realty's management team regularly reports to World Holdings' Board of Directors.<br><br>Evidence: Dkt. 162-2; Bramble Dec. ¶ 7. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 182 | In September 2020, eXp Realty reported to World Holdings that serious allegations of sexual misconduct were being leveled against Bjorkman.<br><br>Evidence: Dkt. 162-2; Bramble Dec. ¶ 13. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 183 | When Fabiola Acevedo disclosed that she believed she had been drugged and assaulted, that information was escalated to Bramble, Gesing, and a board member, and was internally framed as involving Acevedo, Mike Bjorkman, and whether Nicole Russo would receive a free FLQA, while also taking the position that the event was not a company event and there was nothing the company could do.<br><br>Evidence: Keating (Nov. 17, 2025) Dep. 35:1- 36:16, 60:15-62:17, 201:25-203:21. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 184 | Under eXp Realty's policy, complaints related to sexual harassment made to HR or a C-suite member were supposed to be transferred to Agent Compliance and/or legal, and serious complaints were to be | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

49

Case No. 2:23-CV-10492-AB-AGR

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| | | |
|---|---|---|
| | investigated through witness interviews and reviewed in weekly meetings.<br><br>Evidence: Haggard Aug. 27, 2024, Dep. 69:14–20, 70:7–23, 71:1–15, 151:7–20, 152:1–25, 153:15–24. | |
| 185 | Building large recruiting organizations through the Revenue Share Program was part of the engine that grew eXp Realty, which ultimately benefited World Holdings stock-price growth.<br><br>Evidence: Keep Dep. 169:12–25, 170:1–16, 234:21–25, 235:1–12. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 186 | Courtney Keating was part of the World Holdings C-suite, had no formal CMO role at eXp Realty, but was nevertheless placed on the Agent Compliance Committee as a voting member.<br><br>Evidence: Keating Dep. 18:1–20, 19:16–19, 20:1–8, 35:5–8, 60:9–16, 61:9–24. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 187 | James Bramble likewise sat on that committee and had a vote in its determinations.<br><br>Evidence: Bramble Oct. 31, 2025, Dep. 362:16–20, 363:1–3, 365:1–4. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 188 | Gesing, meanwhile, occupied overlapping roles in complaint handling, compliance, and the World Holdings board.<br><br>Evidence: Haggard 30(b)(6) Dep. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

175896320.1　　　　　　　　　　50　　　　　　Case No. 2:23-CV-10492-AB-AGR
eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| | | |
|---|---|---|
| | 86:6–25, 87:1–18; Gesing Dep. 50:21–25, 51:1–9. | |
| 189 | Gentry confirmed that sexual-assault allegations were discussed at board meetings, that those discussions were not reflected in the minutes, that the board had a private Workplace channel, and that Bramble had access to it.<br><br>Evidence: Gentry Dep. 49:10–20, 50:5–21, 53:8–21. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 190 | Dr. Keep testified that eXp's MLM compensation structure was "a particular way to do business," that "the heart of the funding that goes to revenue share" came from real-estate transactions, and that "revenue share is derived from real estate transaction commissions."<br><br>Evidence: Keep Dep. 215:25–216:6; 217:3–4. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 191 | Dr. Keep testified that roughly ten percent of commissions supported company operations and another ten percent went to revenue share.<br><br>Evidence: Keep Dep. 234:4–7. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 192 | Roberts testified that "alpha agents" were the top recruiters in the company—the agents with the largest revenue-share organizations—and that she wanted to become one "very much so" because that was how to "make the most money."<br><br>Evidence: Roberts Dep. Vol I. (Nov. 14, 2025) 42:10–25, 43:1– | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

| 6. | | |
|---|---|---|
| 193 | She also testified that at eXp the "sole path to success was not by selling real estate, but attracting more people to join eXp," and that the company's focus was on "recruitment and the money that could be made by recruiting others."<br><br>Evidence: Roberts Dep. Vol. III (Dec. 11, 2025) 148:11–25, 149:1–7. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 194 | Having Chris Bear as her sponsor meant Roberts lacked mentorship, was not getting systems or processes, and was being competed against for recruits.<br><br>Evidence: Roberts Dep. Vol. III (Dec. 11, 2025) 149:15–25, 150:1–3; Roberts Dep. Vol. IV (Dec. 12, 2025) 47:12–25, 48:1–7. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 195 | Golden and Gove presented themselves as the solution to Roberts' problems and that her understanding was that Golden saw her as an opportunity to increase his and Gove's revenue share.<br><br>Evidence: Roberts Dep. Vol. IV (Dec. 12, 2025) 49:23–25, 50:1–2; Roberts Dep. Vol. III (Dec. 11, 2025) 150:18–25, 151:1–10. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |
| 196 | Madden corroborated that Golden was offering salary, help, "secrets," and advancement if Roberts and Madden moved into his organization. | This SGD has not been cited by Plaintiff in her oppositions to eXp Realty, LLC's or Glenn Sanford's motions. As such, this SGD is immaterial and does not require a response. |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

175896320.1

Case No. 2:23-CV-10492-AB-AGR

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Evidence: Madden Dep. Vol. I 81:2–8, 81:19–25, 82:1. | |

Respectfully submitted,

DATED:  May 1, 2026          LEWIS BRISBOIS BISGAARD & SMITH LLP

By:          /s/ William E. Pallares

WILLIAM E. PALLARES
Attorneys for Defendants, eXp REALTY, LLC, eXp WORLD  HOLDINGS, INC., and GLENN SANFORD

eXp'S AND SANFORD'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May, 2026, I electronically filed the foregoing DEFENDANTS eXp REALTY, LLC, eXp WORLD HOLDINGS INC., AND GLENN SANFORD'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT  with the Clerk of the Court using the CM/ECF system.

/s/ *Debbie Wilhelm*
Debbie Wilhelm

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW