Jennifer A. Lenze, Esq., CA Bar No. 246858
**LENZE LAWYERS, PLC**
999 Corporate Drive, Suite 100
Ladera Ranch, CA 91765
T: (310) 322-8800
F: (310) 322-8811
jlenze@lenzelawyers.com

Brooke Cohen, Esq., TX Bar No. 24007019 PHV admitted
Andrea Hirsch, Esq. GA Bar No. 666557 PHV admitted
**COHEN HIRSCH, LP**
5256 Peachtree Road, Suite 195-E
Atlanta, GA 30341
T: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com
*Attorneys for PLAINTIFF*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANYA ROBERTS, | **CASE NO. 2:23-cv-10492-AB-CTS** |
| Plaintiffs, | |
| v. | **PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE DEFESE EXPERT MATTHEW W. NORMAN, M.D.** |
| EXP REALTY, LLC, EXP WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN; DAVID S. GOLDEN; BRENT GOVE, GLENN SANFORD, and DOES 1-10, | **TRIAL DATE:** August 31, 2026 |
| | **PTC:** August 14, 2026 |
| | **TIME:** 11:00 a.m. |
| | **Ctrm:** 7 B |
| Defendants. | **Judge: Honorable André Birotte, Jr.** |

i

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 14, 2026 at 11:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 7B of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California, Plaintiff Anya Roberts will and hereby does move *in limine*, pursuant to Federal Rules of Evidence 403, and 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), for an order excluding the testimony, opinions, and reports of MATTHEW W. NORMAN, M.D., the retained expert of Defendants eXp Realty, LLC, eXp World Holdings, Inc., and Glenn Sanford (the "eXp Defendants"), in his entirety or, in the alternative, limiting his testimony as set forth below.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of counsel and exhibits thereto (including Dr. Norman's January 9, 2026 expert report ("Report"), his  January 29, 2026 rebuttal report ("Rebuttal"), and the transcript of her February 29, 2026 deposition ("Dep.")), hereinafter submitted with the Declaration of Jennifer A. Lenze, and attached as exhibits B, C, and A respectively; all pleadings and papers on file, and such further argument and evidence as the Court may consider.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 6, 2026 and July 17, 2026. Counsel were unable to resolve the dispute.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

## I.    INTRODUCTION

Defendants have retained Matthew W. Norman, M.D., a forensic psychiatrist, to opine that "confirmed covert administration of gamma-hydroxybutyrate (GHB) is uncommon in DFSA cases generally." That is the entirety of his opinion. Dr. Norman conducted no examination of Plaintiff, reviewed no case-specific evidence, and — by his own repeated and unequivocal admission — offers no opinion about whether Plaintiff was drugged, whether her account is truthful, or whether any assault occurred. His January 9, 2026 report states that his "analysis is based on the general scientific understanding of DFSA and GHB, and not on any specific facts or evidence in this case."

An expert who offers only a population-level base rate, while expressly disclaiming any application of that base rate to the facts, offers the jury nothing it can properly use. His testimony fails Rule 702's relevance-and-fit requirement because it is not tied to the facts of the case. Worse, its only conceivable use is an impermissible one: to invite jurors to reason that because covert GHB drugging is statistically "uncommon," Plaintiff probably was not drugged — precisely the forbidden base-rate and profile inference that courts routinely exclude. And because a lay jury will inevitably translate "uncommon in the population" into "unlikely for this plaintiff," the testimony operates as a thinly disguised comment on Plaintiff's

1

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

credibility, an issue reserved to the jury. Dr. Norman's January 29, 2026 Supplemental Report compounds the problem. It abandons even the pretense of independent expertise and instead walks through opposing experts' footnotes, arguing that particular articles do not support particular sentences. That is advocacy — the work of a brief, not an expert opinion — and it is neither a proper subject of expert testimony nor within Dr. Norman's demonstrated qualifications. Dr. Norman's opinions and testimony in their entirety.

## II.    LEGAL STANDARD

Under Federal Rule of Evidence 702, an expert may testify only if, among other things, the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," and the opinion "reflects a reliable application of … principles and methods to the facts of the case." Fed. R. Evid. 702(a), (d). The trial court serves as a gatekeeper and must ensure that proffered expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The 2023 amendments to Rule 702 confirm that the proponent must show each requirement is more likely met than not, and that an expert's opinion may not go beyond what the underlying basis reliably supports.

2

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

Relevance under *Daubert* requires "fit": expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* An opinion that is "connected to existing data only by the *ipse dixit* of the expert," or that leaves "too great an analytical gap between the data and the opinion proffered," may be excluded. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Separately, an expert may not opine on witness credibility, *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989), and even relevant expert testimony must be excluded where its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury, Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595 (noting expert evidence "can be both powerful and quite misleading").

### III.   ARGUMENT

**A.   Dr. Norman's Opinion Does Not "Fit" This Case and Will Not Assist the Jury, Because Ingestion Is Admitted and He Could Identify No Fact It Would Help Decide.**

Rule 702 and *Daubert* require that expert testimony be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* Dr. Norman's single opinion — that *covert* GHB

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

administration is "uncommon" across populations of DFSA complainants — is not tied to any disputed issue here.

The reason is concrete. Defendant Golden has admitted under oath that he gave Plaintiff GHB and that she consumed it, and Dr. Norman reviewed that testimony without altering his opinion. (Norman Dep. 48:11–24.) Whether covert drugging is statistically "uncommon" in the abstract says nothing about a case in which administration is admitted and not covert. Dr. Norman himself could not bridge that gap. Asked what disputed fact his opinion would help the jury decide once ingestion is admitted, he answered, "I don't know how to answer that" (*id.* 42:22–43:21), and, "I don't know" what disputed fact his specialized knowledge would assist (*id.* 49:8–14). When an expert cannot identify the fact in issue his testimony would help resolve, the testimony does not "help the trier of fact" within the meaning of Rule 702(a) and must be excluded.

The analytical gap is the expert's own. Under *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997), a court may exclude an opinion connected to the data "only by the *ipse dixit* of the expert" or separated from it by "too great an analytical gap." Dr. Norman supplies a population statistic and then declines — repeatedly and expressly — to connect it to Plaintiff, to the admitted ingestion, or to any issue the jury must decide. A base rate the expert refuses to apply, in a case whose central

4

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

predicate (ingestion) the base rate does not even address, is the paradigm of testimony that lacks fit. It should be excluded under Rule 702.

**B.     Dr. Norman's Opinions Invite Impermissible Base-Rate and Profile Reasoning and Function as a Comment on Plaintiff's Credibility.**

Testimony that a category of events is statistically rare, offered to suggest that the event did not occur in the individual case, is classic impermissible profile and base-rate evidence. It asks the jury to infer that *this* Plaintiff conforms to a statistical norm — that because covert GHB administration is "uncommon," her report of being drugged is probably mistaken or false. Courts exclude such reasoning because it substitutes group statistics for individualized proof and invites the jury to decide a specific factual dispute based on probabilities rather than evidence about the person before them.

The prejudice is compounded by the subject matter. Dr. Norman's conclusion, though phrased as a neutral epidemiological observation, will be heard by the jury as a statement that Plaintiff's account of being drugged is unlikely to be true. That is a comment on Plaintiff's credibility dressed in the language of science — and "an expert witness is not permitted to testify specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility." *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989). Credibility "is for the jury," *United States v. Scheffer*, 523 U.S. 303, 313 (1998), and an expert who tells the jury

5

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

that the plaintiff's central factual claim is statistically improbable impermissibly invades that province.

Notably, Dr. Norman's own initial report crosses from the general to the particular in exactly the way that reveals the testimony's true purpose: he opines that "the available scientific evidence does not support the conclusion that covert drugging represents a population level predominant explanation for *the Plaintiff's* reported intoxication and memory disturbance." January 9, 2026 report at Par. 36(e)(Emphasis added.) That sentence applies his base rate directly to Plaintiff — while his deposition disclaims doing any such thing, agreeing that "population frequency does not determine what happened in a specific case" and that he has "no opinion in particular on Ms. Roberts." See January 9, 2026 report at Paragraph 38, 41.  (Norman Dep. 79:14–20; 32:16–33:18.) The jury cannot be expected to hold that contradiction in mind. The natural and intended effect of the "uncommon" opinion is to tell the jury that Plaintiff's account is scientifically improbable — precisely the inference Rule 702 and the credibility cases forbid.

**C.      The Opinion Is Unreliable and Exceeds Dr. Norman's Qualifications.**

Even setting aside fit, the "uncommon" opinion is independently inadmissible because it is not "the product of reliable principles and methods" reliably applied. Fed. R. Evid. 702(c)–(d). Dr. Norman offers a quantitative, population-level

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

conclusion — a prevalence judgment — but conceded he lacks the training and did none of the work such a conclusion requires. He agreed he is "not a biostatistician," "not an epidemiologist," and "not a forensic toxicologist," does not operate a toxicology laboratory, and does not "calculate prevalence rates from published DFSA toxicology studies." (Norman Dep. 24:4–18.) He agreed that "[r]eading articles is not the same as conducting a prevalence study." (*Id.* 24:19–22.)

His method matched those concessions. He performed no systematic review with predefined inclusion and exclusion criteria, no meta-analysis, no statistical pooling of prevalence rates, no confidence intervals, and no sensitivity analysis. (*Id.* 25:23–30:3.) He acknowledged that prevalence findings depend on which cases are tested and which biological samples are collected, that samples collected late may miss drugs that were in fact consumed, that "not detected is not the same as not present," and that he "did not quantify how under detection would affect [his] uncommon conclusion." (*Id.* 28:10–29:15.) An expert who draws a prevalence conclusion he is not qualified to draw, by a method that omits every accepted step for drawing it, offers precisely the *ipse dixit* that *Joiner* and amended Rule 702 forbid. The opinion should be excluded as unreliable and beyond his expertise.

**D.    The Supplemental Report Is Attorney-Style Citation Criticism, Not Expert Opinion.**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

Dr. Norman's January 29, 2026 Supplemental Report is not expert opinion; it is legal argument in the guise of expertise. It proceeds through the reports of Drs. Raghavan and LeBeau and contends, sentence by sentence and footnote by footnote, that a cited article "does not support Dr. Raghavan's paragraph as written," that a study "extends beyond the scope of the cited evidence," or that a conclusion "does not appear in the article and is not derived from the data reviewed." This is the work of cross-examination and briefing — the province of counsel — not the reliable application of scientific methodology to facts under Rule 702.

Dr. Norman's own deposition confirmed that these critiques are quarrels over wording and citation, not scientific disagreements a jury needs an expert to resolve. As to Dr. Raghavan, he agreed his "main criticism" was her use of the word "typical" rather than "often," and that whether the underlying figures are "typical" is a question the jury "can determine … within the purview of a juror." (Norman Dep. 96:1–16.) As to Dr. LeBeau, he agreed he did *not* dispute the substantive opinion that GHB can cause a "walking blackout" in which a person appears alert and mobile; his only objection was to the footnote LeBeau cited — a study of adolescent rats. (*Id.* 122:23–124:24.) Whether a footnote supports the sentence it follows is ordinary source-checking that counsel will perform on cross-examination and in argument; it is not "beyond the common knowledge of the average layman." *See*

8

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

*United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017). Repackaging that critique as "expert opinion" lends it a false imprimatur of scientific authority and usurps the roles of counsel and the Court.

The Supplemental Report is independently objectionable because several passages exceed Dr. Norman's qualifications. He is a forensic psychiatrist who conceded he is "not a toxicologist." (Norman Dep. 78:16–18; 24:9–11.) Yet the passages he critiques concern forensic toxicology and analytical detection — GHB hair testing, plasma half-lives, and pharmacokinetics. To the extent the Supplemental Report offers toxicological opinions, no adequate foundation establishes that Dr. Norman is qualified to give them; to the extent it offers only citation criticism, it is not expert testimony at all. Either way, it should be excluded.

**E.   Any Marginal Probative Value Is Substantially Outweighed by the Risk of Unfair Prejudice and Jury Confusion.**

Even if any of Dr. Norman's opinions cleared Rule 702 — and none does — they should be excluded under Rule 403. Expert testimony carries a special risk of unfair prejudice because juries "may be inclined to give greater weight" to opinions bearing the label of science. *Daubert*, 509 U.S. at 595. Here, the probative value is minimal to nonexistent — a base rate about *covert* drugging in a case where ingestion is admitted, which the expert could not connect to any disputed fact — while the prejudicial pull is substantial: the jury will hear a credentialed physician

9

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

suggest that Plaintiff's account of being drugged is statistically improbable, and will be tempted to decide the case on population statistics rather than the evidence about Plaintiff herself.

The testimony also threatens to confuse the issues and waste time. Litigating global DFSA epidemiology — competing systematic reviews, forensic case series, detection-window methodology, and endogenous-GHB thresholds — would spawn a series of mini-trials on questions untethered to whether Plaintiff was drugged. And presenting the Supplemental Report's citation critiques through an expert would invite the jury to treat a lawyer's argument as scientific fact. These dangers substantially outweigh whatever slight probative value the opinions retain. Exclusion is warranted under Rule 403.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and exclude the opinions and testimony of Matthew W. Norman, M.D., in their entirety.

By: /s/ Jennifer A. Lenze

Jennifer A. Lenze (CA No 246858)
LENZE LAWYERS, PLC
999 Corporate Drive, Suite 100
Ladera Ranch, California 92694

10

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**

Telephone (310) 322-8800
jlenze@lenzelawyers.com

Brooke F. Cohen TX 24007019 PHV Adm
Andrea S. Hirsch, GA 666557 PHV Adm
COHEN HIRSCH, LP
5256 Peachtree Road, Suite 195-E
Atlanta, Georgia 30341
Tel: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com

Attorneys for Plaintiff

11

**PLAINTIFF'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 11 TO EXCLUDE MATTHEW W. NORMAN, M.D.**