WILLIAM E. PALLARES, SB# 187740
    Email: William.Pallares@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

IVY A. WANG, SB# 224899
    Email: Ivy.Wang@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800

DANIEL J. WADLEY, (*Admitted Pro Hac Vice*)
    Email: wadleyd@gtlaw.com
**GREENBERG TRAURIG, LLP**
222 South Main Street, Suite 1730
Salt Lake City, Utah 84101
Telephone: 801.478.6900
Facsimile: 801.994.9041

Attorneys for Defendants,
eXp REALTY, LLC, eXp WORLD HOLDINGS, INC.,
and GLENN SANFORD

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA,

| | |
|---|---|
| ANYA ROBERTS,<br><br>            Plaintiff,<br><br>      vs.<br><br>eXp REALTY, LLC, eXp WORLD HOLDINGS, INC., MICHAEL L. BJORKMAN, DAVID S. GOLDEN, BRENT GOVE, EMILY KEENAN, GLENN SANFORD, MICHAEL SHERRARD, and DOES 1-10,<br><br>            Defendants. | Case No. 2:23-CV-10492-AB-CTS<br><br>**DEFENDANTS eXp REALTY, LLC, eXp WORLD HOLDINGS, INC., AND GLENN SANFORD'S DAUBERT MOTION TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE OF WILLIAM KEEP**<br><br>Trial Date:  August 31, 2026 |

180797292.1

Case No. 2:23-CV-10492-AB-CTS

eXp'S AND SANFORD'S DAUBERT MOTION TO EXCLUDE WILLIAM KEEP

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 14, 2026, in Courtroom 7B of the above-entitled court, the Honorable André Birotte Jr. presiding, defendants eXp World Holdings, Inc., eXp Realty, LLC, and Glenn Sanford (collectively, the "eXp Defendants") will, and hereby do, move pursuant to Fed. R. Evid. 104(a) and 702:

1.  To exclude Plaintiff Anya Roberts' ("Roberts") witness William Keep ("Keep") from providing expert testimony at trial;

2.  To preclude the presentation, reference to, or admission of Keep's expert report, and addendums, or testimony in their entirety;

3.  Alternatively, in the event Keep is permitted to testify as an expert witness, to preclude the presentation or admission of Keep's expert report, and addendums, or testimony concerning (i) the characteristics of pyramid schemes or illegal MLMs; (ii) legal and ethical issues with MLMs; (iii) whether eXp Defendants share characteristics of a pyramid scheme or illegal MLM; and (iv) any reference to eXp Defendants being a pyramid scheme or illegal MLM; and (v) any reference to the term "pyramid scheme."

4.  To preclude all parties, witnesses, and attorneys from referring to the fact this motion has been filed and/or granted; and

5.  To advise and caution each party and each party's witnesses to strictly follow these instructions.

This motion is based upon this notice, the attached memorandum of points and authorities, and upon such other and further evidence as may be presented to the Court prior to on at the time of hearing.

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

This motion is made following the conference of counsel pursuant to Local Rule 7-3 that took place on July 17, 2026. (See Declaration of William E. Pallares ("Pallares Decl.") at ¶11.)

Respectfully Submitted,

DATED:  July 24, 2026          LEWIS BRISBOIS BISGAARD & SMITH LLP

By:        /s/ William E. Pallares
          WILLIAM E. PALLARES
          Attorneys for Defendants, eXp REALTY, LLC, eXp WORLD  HOLDINGS, INC., and GLENN SANFORD

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.  INTRODUCTION**

Defendants eXp World Holdings, Inc.,[1] eXp Realty, LLC (together, the "eXp Entities"), and Glenn Sanford (the eXp Entities and Glenn Sanford, collectively, the "eXp Defendants") respectfully request that, pursuant to Fed. R. Evid. 104(a) and 702, this Court preclude William Keep from testifying as an expert witness and trial, and to preclude all parties, witnesses, and attorneys from presenting or admitting Keep's expert report, addendums or notes, and testimony in their entirety. In the event this Court permits Keep to testify as an expert witness, the eXp Defendants alternatively request that this Court preclude the presentation or admission of Keep's expert report or testimony including, but not limited to: (i) the characteristics of pyramid schemes or illegal MLMs; (ii) legal and ethical issues with MLMs; (iii) whether the eXp entities share characteristics of a pyramid scheme or illegal MLM; and (iv) any reference to the eXp entities being a pyramid scheme or illegal MLM; and (v) any reference to the term "pyramid scheme."[2]

**2.  FACTS RELEVANT TO THIS MOTION**

eXp Realty, LLC, ("eXp Realty") is a real estate brokerage company. (ECF No. 153-1, SUF #64) eXp Realty is not in the recruiting or "agent attraction" business, and it only generates revenue through the closing of real estate transactions. (ECF No. 153-1, SUF #64.) As part of its compensation structure, eXp Realty offers a Revenue Share Plan to its real estate agents. (ECF No. 153-1, SUF #71.) The Revenue Share Plan is funded solely through real estate transactions, and not by any fees eXp Realty collects from real estate agents affiliated with the company. (ECF No. 153-1, SUF #66.)  Payments made to real estate agents under

---

[1] Currently known as AGNT, INC.

[2] For the sake of brevity, we use the term "pyramid scheme" synonymously with other terms that Plaintiff may use at trial such as "Ponzi scheme" and "illegal MLM."

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the Revenue Share Plan are on revenue generated from actual real estate transactions, and the payments are not dependent upon the number of individuals participating in the Revenue Share Plan, or the number of agents that any given agent may attract to eXp Realty. (ECF No. 153-1, SUF #67, 69.)

On June 13, 2024, Roberts filed her First Amended Complaint ("FAC"). (ECF No. 84.) The FAC asserts two counts against eXp Defendants: Count III, violation of the 18 U.S.C. § 1595[3]; and Count VII, Negligent Hiring, Retention, and Supervision. (ECF No. 84, ¶¶ 257-263, 281-291.) The FAC describes the "venture" – an element of Count III – as a "multi-level marketing pyramid scheme which rewards participants for recruitment of new agents, not for selling real estate." (ECF No. 84, ¶231.)

**3.    <u>SUMMARY OF RELEVANT EXPERT OPINIONS OF WILLIAM KEEP.</u>**

In his initial report ("Report" or "Keep Report"), Keep proffers the following information and opinions:

    i.    How legal multilevel marketing models ("MLMs") operate, as compared to "illegal pyramid schemes";[4]

    ii.    Common characteristics of MLM business models;[5]

    iii.    Legal and ethical issues with MLM models;[6] and

    iv.    How eXp Realty[7] operates as an MLM and has shared characteristics of other MLM models.[8]

Keep further opines that eXp Realty shares some characteristics with MLMs

---

[3] The Trafficking Victims Protection Reauthorization Act ("TVPRA"). Specifically, Roberts claims eXp Defendants participated in a "venture" as defined by the TVPRA.
[4] Keep Report at 3-5.
[5] Keep Report at 6.
[6] Keep Report at 7-9.
[7] Keep indicates that his report focuses on eXp Realty, LLC, as opposed to all eXp Defendants. (Keep Report at 3.)
[8] Keep Report at 9-23.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

including: (1) eXp Realty maintains complex Policies and Procedures ("P&Ps"); (2) eXp Realty contains unilateral control over contract modification, P&Ps, and compensation structure; (3) annual income is skewed to leading upline participants; (4) emphasis on ongoing recruitment; (5) emphasis on engagement with company resources; and (6) and (7) leading upline participants enjoy the benefits of asymmetric information and asymmetric power. (Pallares Decl. ¶ 5, Ex. 2, Keep Report at 6, 9-23.)

In his deposition, Keep acknowledged that even when a company exhibits some elements of an MLM structure, it does not necessarily mean it is an illegal pyramid scheme. (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 32:14-33:2.) As it relates to this case, Keep confirmed in his deposition that he has "not drawn any analogy between eXp and illegal pyramid schemes approximate." (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 66:12-19.) Additionally, Keep asserts that agent recruitment is not the only aspect of the eXp Realty business model that generates compensation or revenue. (Pallares Decl. ¶¶ 5, 9, Ex. 2, Keep Report at 12; Ex. 6, Heisz Rebuttal at WILLIAM KEEP – 000001.)

Keep testified that he is always retained to (1) describe the characteristics of an illegal pyramid scheme, and (2) compare those characteristics to the business at issue in a lawsuit. (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 26:3-19.) Additionally, Keep testified that he believes that all MLM companies engage in either active or passive deceptive practices. (*Id.* at 75:22-76:6.)

Further, Keep's opinion that all MLM companies, including the eXp Entities, engage in deceptive practices centers on his assumption that all eXp agents joined eXp because of the revenue share program. (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 57:24-60:20.) When asked as to the basis of Keep's opinion, Keep responded that only a small percentage of eXp agents actually participate in and benefit from the revenue share program. (*Id.*) However, Keep admitted that the only way to determine why agents actually joined eXp is to conduct a survey. (*Id.* at 67:24-

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

68:2.)  Keep then admitted that he conducted no survey, in effect conceding that he has no basis for his assumption regarding why agents choose to join eXp Realty. (*Id.*)

**4.  THIS COURT HAS THE AUTHORITY TO EXCLUDE TESTIMONY WHICH FAILS TO MEET THE *DAUBERT* THRESHOLD FOR EXPERT OPINION EVIDENCE**

Fed. R. Evid. 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702 also provides that a witness may be qualified as an expert if "the testimony is based on sufficient facts or data."  "Where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . ., the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'"  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999).  "Rule 702 requires that expert testimony relate to scientific, technical, or specialized knowledge, which does not include unsupported speculation and subjective beliefs."  *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).  If the testimonial evidence fails in this regard, the expert opinion is inadmissible.  *Id.* An expert opinion is not admissible under Rule 702 unless the subject matter at issue is beyond the common knowledge of the average layman. *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 549 (C.D. Cal. 2014).

In applying Rule 702, the Court functions as a gatekeeper, determining whether proffered expert testimony meets the requirements of Rule 702 by a preponderance of the evidence."  *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F.Supp.2d 1021, 1026 (C.D. Cal. 2013) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)).  This "gatekeeping" obligation, requiring an inquiry into both relevance and reliability, applies to not only "scientific" testimony, "but to all expert testimony," including testimony like Keep's. *See Kumho Tire Co., Ltd.,* 526

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

U.S. at 147; Fed. R. Evid. 702. The offering party must prove admissibility. *Lust v. Merrell Dow. Pharms.*, 89 F.3d 594, 598 (9th Cir. 1996). The offering party must also show by a preponderance of the evidence that (1) the expert is qualified to render the opinion; and (2) the opinion offered has adequate factual and scientific support for that opinion. *Daubert*, 509 U.S. at 592-93. The district court's review of proposed expert testimony must be exacting because expert opinion "can be both powerful and quite misleading." *Daubert,* 509 U.S. at 595.

In reviewing proposed testimony, the Court must ensure that the expert's methodology is reliable. The Supreme Court has provided guidance concerning the reliability analysis and identifies the following factors for consideration: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential error rate; and (4) whether the theory or technique enjoys "general acceptance" within a relevant 'scientific community.'" *Daubert,* 509 U.S. at 593-94; *Kumho Tire Co.,* 526 U.S. at 137.

### A. Keep Fails to Meet the Daubert Standard and Must Be Disqualified as an Expert.

#### 1. Keep Is Not A Qualified Expert Under Rule 702.

Fed. R. Evid. 702 requires expert testimony to be given by a *qualified* expert. A witness may be qualified as an expert by "knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." (Fed. R. Evid. 702; *Kumho Tire Co.,* 526 U.S. at 147.) Here, Keep's qualifications do not satisfy the threshold of Rule 702.

Keep achieved a doctorate degree in Marketing in 1991. (Pallares Decl. ¶ 6, Ex. 3.) Since that time, Keep's professional experience has been limited to academia and academic research. (*Id.*) Keep has never worked in the real estate industry, either for a brokerage or as a real estate agent. Keep has no professional training or experience with real estate companies or brokerages, or how they operate. Keep

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

lacks the necessary skills, education, knowledge or training specific to real estate companies and their operation and, therefore, cannot qualify as an expert under Rule 702 regarding opinions having to do with the operation of a real estate brokerage company. For this reason, his opinions must be excluded.

Further, to the extent Keep intends to offer opinion regarding the law on pyramid schemes, this is also inadmissible for lack of qualification. Keep is not an attorney and lacks any legal training, degree, or basis for providing such opinions. Let alone, an expert may not offer a legal opinion or an opinion on the ultimate issue of law in a matter. *United States v. Diaz,* 876 F.3d 1194, 1197 (9th Cir. 2017) (holding "an expert witness cannot give an opinion as to [his] legal conclusions i.e., an opinion on an ultimate issue of law.") (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)).

### 2. Keep's Opinions are Not Based on a Reliable Methodology.

Section Two of Keep's report discusses seven common "characteristics" of other MLM companies, which Keep frequently references thereafter in his report. The "characteristics" Keep identifies are apparently derived from Keep's own independent research and professional experience as a marketing professor. In Section Four of the report, Keep details various alleged aspects of eXp Realty's operation which he contends share the "characteristics" of other MLM companies.

The cornerstone of Keep's methodology in this case, i.e. his reliance on his own formulation of so-called "characteristics" of other MLM companies (including those accused of being pyramid schemes), renders his analysis unreliable under Rule 702, and irrelevant under Rule 403.

First, the "characteristics" of other MLM companies that have been historically involved in civil actions or regulatory cases have no relevance to the question of whether eXp Realty meets the legal definition of a pyramid scheme. The "characteristics" identified by Keep, which are nothing more than generalized business practices, elements of which can be found across industries and companies,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

do not form a part of the applicable legal test as outlined in *Webster v. Omnitrition Intern., Inc.*, 79 F.3d 776, 781 (9th Cir. 1996). eXp Realty may share certain qualities or characteristics with other MLM companies, but so do virtually every other business, and the mere commonality of certain "characteristics" does not constitute illegality. Regardless, the characteristics of other MLM companies are not relevant.

Second, Keep's comparison of eXp Realty to other MLM companies sued as pyramid schemes fails to meet Rule 702's requirement that an expert's testimony consist of "scientific, technical, or other specialized knowledge." (Fed. R. Evid. 702(a).) Rather than an attempt at scientific or technical analysis, Keep's cursory comparison of eXp Realty to other MLM companies is more akin to an anecdotal comparison not based on any legal standard. Keep's analysis does not rise to the level of scientific or technical reasoning required by Rule 702, and it should be excluded on that basis.

### 3. Keep's Opinions are Not Based on Sufficient Facts and Are Unreliable.

In drafting his report and forming his opinions, Keep reviewed only a very narrow set of documents produced in discovery including: one Independent Contractor Agreement ("ICA"), four of eXp Defendants' Policies and Procedures Manuals ("P&Ps"), four of eXp Defendants' income disclosures, YouTube videos, and an unverified spreadsheet provided by Roberts' counsel.[9] (Pallares Decl. ¶¶ 4, 5, 10, Ex. 2, Keep Report at 9, 19; Ex. 7, Keep Addendum; Keep Dep. 47:2-4; 115:17-

---

[9] Keep testified that his assumptions about revenue and the figures included in his report, are premised upon a spreadsheet which he believes is "an extrapolation of a monthly reporting", was prepared by Ashley Golladay and then provided to Roberts' counsel. (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 89:5-93:6.) However, Keep admits "I don't have any information as to whether it [the spreadsheet] actually represents true and actual eXp data other than as it was represented to me." (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 93:3-6.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

116:2, 88:23-91:21) Keep did not review relevant deposition testimony, including testimony from the eXp Defendants' 30(b)(6) witnesses who provide relevant factual background as to the eXp Defendants' business model, agent recruitment processes, compensation structure, P&Ps, and revenue share plan. Keep also failed to review any revenue share or income data for any of the defendants or Plaintiff herself. Keep further confirmed that he did not rely on any survey data, market statistics, or other data relating to the eXp Defendants' recruitment, agent retention, or agents' participation in the revenue share plan. (Pallares Decl. ¶ 4,5, Ex. 1, Keep Dep. 67:24-68:2; Ex. 2.) Indeed, Keep testified "I am going to agree with you, I do not have all the information about how eXp operates and how – how the money flows." (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 34:2-5.)

The factual bases for Keep's conclusions are poorly developed, and Keep has failed to review pertinent discovery and testimony concerning the topics which he analyzes. Instead, Keep asserts bare conclusions that eXp Realty shares some characteristics with MLMs including: (1) eXp Realty maintains complex P&Ps; (2) eXp Realty contains unilateral control over contract modification, P&Ps, and compensation structure; (3) annual income is skewed to leading upline participants; (4) emphasis on ongoing recruitment; (5) emphasis on engagement with company resources; and (6) and (7) leading upline participants enjoy the benefits of asymmetric information and asymmetric power. (Pallares Decl. ¶ 5, Ex. 2, Keep Report at 6, 9-23.) These conclusions are premised on Keep's subjective belief and experience, but fail to consider relevant facts including 30(b)(6) testimony from Cory Haggard, James Bramble, and Brandon Williams. Extensive revenue share and compensation data concerning Roberts and Defendants Bjorkman and Golden was also produced in discovery and include information as to the agents upline and downline, but was not reviewed by Keep. Indeed, Keep admits that he received limited information concerning this case and did not have a full purview of all the facts. (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 34:2-12, 35:10-36:17.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Keep also provides a rebuttal report to the eXp Defendants' economics expert Gary Olsen, and disputes Olsen's conclusion that Roberts' economic contributions to eXp Defendants were "immaterial." (Pallares Decl. ¶ 7, Ex. 4, Olsen Rebuttal Report) Keep goes on to criticize Olsen for allegedly failing to consider Roberts' "contributions" via recruitment and her downline agents. (*Id.*; Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 199:2-209:17.) However, Keep admits that he has no information regarding Roberts' time or effort spent on agent recruitment, and he did not review the revenue share data produced via discovery. (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 34:2-12, 210:4-8.) Keep's criticisms of Olsen's report and calculations not only lack sufficient factual foundation, but also exceed the scope of his retention.[10]

Expert testimony which lacks sufficient factual foundation is not admissible evidence at trial. (Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. at 149.)  Here, Keep has failed to consider, or include as part of his analysis, relevant and important discovery and testimony that was produced in this case and readily available to him. Keep himself admits that he does not have all the information about the eXp Defendants' business operations or finances. Absent this key information, Keep's analysis is incomplete and lacks a sufficient factual foundation such that his testimony and report, including his rebuttal to Olsen, are unreliable and should not be admitted as evidence at trial.

## B.    Alternatively, Keep's Opinions Must Be Limited.

The Court may determine before trial that evidence is admissible and should be excluded. "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. U.S.,* 469 U.S. 38, 41 n.4 (1984).

---

[10] Keep was retained to (1) describe the characteristics of an illegal pyramid scheme, and (2) compare those characteristics to the business at issue in a lawsuit – not calculate the economic contributions made by Roberts, which he concedes he did not actually attempt to do. (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 26:3-19.)



To that end, parties may file motions in limine before or during trial "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Id.* at 40 n.2.

To resolve these motions, the Court is guided by Fed. R. Evid. 401 and 403. Specifically, the Court considers whether evidence is relevant: if it "has any tendency to make a fact more or less probable than it would be without the evidence" and whether "the fact is of consequence in determining the action." Fed. R. Evid. 401. But the Court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. If the value is clearly outweighed by the prejudice, the Court cannot admit the evidence. *See Blind-Doan v. Sanders*, 291 F.3d 1079, 1083 (9th Cir. 2002); *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003); *United States v. Roberson*, 581 F. Supp. 3d 65, 71 (DC 2022); *J.S. v. Children of Am., Inc.*, 696 Fed. Appx. 39, 41 (2d Cir. 2017).

### 1.    Keep's Opinions are Irrelevant and Would Substantially Prejudice the eXp Defendants.

In the event that this Court determines Keep qualifies as an expert under Rule 702, his expert testimony and evidence as to pyramid schemes and eXp Defendants' operations must be limited. Specifically, Keep's opinions which describe (i) the characteristics of pyramid schemes or illegal MLMs; (ii) legal and ethical issues with MLMs; (iii) whether eXp Defendants share characteristics of a pyramid scheme or illegal MLM; and (iv) any reference to eXp Defendants being a pyramid scheme or illegal MLM; and (v) any reference to the term "pyramid scheme." (Pallares Decl. ¶ 5, Ex. 2, Keep Report at 2-23.)

Keep's opinions and testimony have no bearing on Plaintiff's claims against the eXp Defendants. Even so, any relevance Keep's opinion *may* arguably have is

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

substantially outweighed by the unfair prejudice his opinions would have against the eXp Defendants. (Fed. R. Evid. 403.) Any reference, or implication, by Keep that eXp Realty operates as a pyramid scheme, or is similar to a pyramid scheme, will only serve to inflame the jury and cause significant harm to the eXp Defendants. (Fed. R. Evid. 403.)

This matter is not an antitrust litigation or a regulatory action. There are no legal questions before the court as to whether the eXp Entities were operating as an illegal pyramid scheme. *See, c.f., F.T.C. v. BurnLouge, Inc.,* 753 F.3 878 (9th Cir. 2014) (FTC action alleging unfair and deceptive practices of defendants' alleges operation of a pyramid scheme); *U.S. Gold Unlimited Inc.,* 177 F.3d 472 (6th Cir. 1999) (appeal of defendant's conviction of mail fraud, money laundering, and conspiracy arising out of operation of alleged pyramid and Ponzi scheme); *In re PFA Insurance Marketing Litigation,* Case No. 4:18-cv-03771 YGR, 2022 WL 3146557 (N.D. Cal. June 15, 2022). Nor must Roberts demonstrate that the eXp Entities operate as a "pyramid scheme" to prove her claims. In other words, Keep's opinions serve no purpose to further the claims or defenses in this action.

By proffering expert testimony of the eXp Entities' alleged similarities to an MLM, Roberts attempts to improperly analogize the eXp Entities as a "pyramid scheme."[11] Colloquially, a "pyramid scheme" is understood to be a derogatory term for businesses which engage in deceptive, fraudulent, or unlawful activities or transactions. However, courts have developed and apply a legal definition for identifying "pyramid schemes." A pyramid scheme is "characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to

---

[11] While Roberts may attempt to make this analogy, we emphasize that Keep has explicitly stated "I have not drawn any analogy between eXp and illegal pyramid schemes approximate." (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 66:18-19.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

ultimate users." *Id.* (emphasis omitted) (quoting *Webster v. Omnitrition Intern., Inc.*, 79 F.3d 776, 781 (9th Cir. 1996))." *Chang v. US Glob. Sys.,* 2:18-CV-03724-JAK (SPX), 2025 WL 4678048 (C.D. Cal. Sept. 26, 2025). Courts have consistently acknowledged that "[n]ot all MLM businesses are illegal pyramid schemes." *Fed. Trade Comm'n v. BurnLounge, Inc.*, 753 F.3d 878, 883 (9th Cir. 2014).

Regardless, any factual or legal determination that eXp Defendants operate as a pyramid scheme – which it does not – is irrelevant to Roberts' claims. To succeed on her claims under the TVPRA, Roberts must demonstrate, *inter alia,* that eXp engaged or benefitted from a "venture." Roberts has repeatedly asserted that the venture which eXp Defendants participated in, and benefitted from, was the recruitment of real estate agents, not that the eXp Entities operate as an illegal scheme. (ECF No. 84, ¶¶ 231-37, 258.) For this reason, a secondary question of whether the eXp Defendants' agent recruitment program operates as a pyramid scheme is irrelevant to her claims. Thus, Keep's opinions, such as they are, would do nothing to support or prove Roberts' TVPRA claims against the eXp Defendants, namely Count III of the FAC. (ECF No. 84.)

Furthermore, permitting Keep's testimony and opinions about pyramid schemes, and the supposed shared characteristics between eXp Defendants and MLMs or pyramid schemes, would be highly prejudicial to the eXp Defendants. If the eXp Defendants' are accused of operating a "pyramid scheme" by the Plaintiff, without any actual evidence in support of this smear, there would be a significant risk that the jury would adopt and apply the colloquial understanding of this term and would be improperly prejudiced against the eXp Defendants. Federal Rule of Evidence 403 expressly prohibits the admission of such evidence.

Accordingly, all of Keep's opinions which describe (i) the characteristics of pyramid schemes or illegal MLMs; (ii) legal and ethical issues with MLMs; (iii) whether eXp Defendants share characteristics of a pyramid scheme or illegal MLM; and (iii) any reference to eXp Defendants being a pyramid scheme or illegal MLM,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

should be excluded. (Pallares Decl. ¶ 5, Ex. 2, Keep Report at 2-23.)

### 2.    Keep's Opinions Fail to Assist the Trier of Fact.

The eXp Defendants anticipate that the Plaintiff will use Keep's report and testimony in an attempt to demonstrate that the eXp Defendants' business model is akin to a "pyramid scheme.," However, notably absent from Keep's Report are any conclusions or opinions concerning eXp Defendants' business model. Keep states that the eXp Entities business model shares *some* characteristics of an MLM model, but his conclusions stop there. (Pallares Decl. ¶ 5, Ex. 12, Keep Report at 9-23.) Keep has repeatedly emphasized that he did <u>not</u> conclude that the eXp Defendants operate as a "pyramid scheme" and that he does not make opinions as to whether an MLM is a "pyramid scheme." (Pallares Decl. ¶¶ 4,8, Ex. 1, Keep Dep. 66:18-19; Ex. 6, Jovanovic Rebuttal Report at WILLIAM KEEP - 000005.) Keep specifically noted that "[n]othing in my report supports a claim that I compare eXp to a pyramid scheme or that I am of the opinion that companies adopting an MLM model are disguised illegal pyramid schemes." (Pallares Decl. ¶ 8, Ex. 6, Jovanovic Rebuttal Report at WILLIAM KEEP - 000005.) Keep also testified that, based on the limited information he reviewed, he believes eXp is a legitimate MLM. (Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 33:18-34:12; *see also* Keep Dep. 66:18-19 (stating "I have not drawn any analogy between eXp and illegal pyramid schemes approximate.").) Keep further testified that he offers no opinion regarding Roberts' alleged harm. Specifically, whether she was harmed by the purported characteristics eXp Defendants may share with other MLMs. (*Id.* at 253:9-254:8.)

Notwithstanding Keep's testimony, Roberts may nevertheless attempt to improperly present Keep's report and testimony under the guise of "expertise" to persuade the jury that eXp operates as a pyramid scheme – which it does not. Keep's report and testimony would directly contradict such an attempt by Plaintiff. Accordingly, Keep's report and testimony should be excluded as evidence from trial in their entirety.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

### 3.    Keep's Opinions Are Impermissible Legal Conclusions.

In support of his conclusions, Keep relies in part upon case law research, and legal opinions rendered in other cases for which he was retained. (*See, e.g.,* Pallares Decl. ¶ 4, Ex. 1, Keep Dep. 22:5-19; 23:14-24:13.) To the extent Keep attempts to tie the facts of this case to other legal opinions which set forth the legal standard for identifying a pyramid scheme, such testimony or evidence is inadmissible as an improper legal conclusion. Fed. R. Evid. 702, 704(a).

The eXp Defendants request this Court preclude any testimony or evidence in which Keep attempts to discern whether the eXp Defendants' practices or alleged scheme do or do not satisfy the legal standards or elements for establishing the existence of a pyramid scheme. The eXp Defendants further request that Keep be precluded from opining as to the applicable legal standards for identifying a pyramid scheme. *See, e.g., In re PFA Insurance Marketing Litigation,* Case No. 4:18-cv-03771 YGR, 2022 WL 3146557. Such testimony and evidence is inadmissible pursuant to Fed. R. Evid. 702 and 704(a), and squarely fall within the purview of this Court. *Diaz,* 876 F.3d at 1197 (holding "an expert witness cannot give an opinion as to [his] legal conclusions i.e., an opinion on an ultimate issue of law.").

### 4.    Keep's Opinions Exceed His Scope of Expertise and Scope of Retention.

Keep is not qualified to opine on issues of financial calculations or accounting. (Pallares Decl. ¶ 5, Ex. 2, Keep Report at 1.) Keep does not have an education or background in finance or accounting, nor does he present any qualifications which would indicate he is qualified to testify on such matters. Yet, Keep provides a rebuttal opinion to Olsen – an accounting expert – criticizing his methodology, calculations, and conclusions. (Keep Olsen Rebuttal Report.) More specifically, Keep opines that Olsen's analysis failed to consider how an MLM model operates and economic factors specific to eXp Defendants (such as Roberts'

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

downline revenue share data; and stock splits and dividends). (*Id.*) Not only does Keep lack sufficient data or evidence to conduct this analysis himself, he lacks the credentials, education, and experience to criticize Olsen's report. An financial analysis and accounting of revenue share and compensation falls well outside Keep's claimed expertise and should be excluded. (Fed. R. Evid. 702; *Kumho Tire Co., Ltd.,* 526 U.S. at 149-51.).

Further, Keep's scope of retention is limited to providing knowledge as to MLM models in practice and comparing that information against the eXp Entitie's business model. (Pallares Decl. ¶ 4,5, Ex. 2 Keep Report at 2; Ex. 1, Keep Dep. 37:18-39:20.) Specifically, Keep focused on "the power imbalance between upline and downline participants and the dynamics that drive misleading and/or deceptive earning representations as part of the recruiting and retention processes." (Pallares Decl. ¶ 4, Ex. 1, Keep Report at 7; Keep Dep. 41:17-43:18.) Keep admits he was not retained to offer opinions on whether the eXp Defendants' compensation structure is an "illegal pyramid scheme." (*Id.* at 33:10-17.) Similarly, Keep was not retained to analyze revenue share data or perform financial analysis or calculations.

Because Keep lacks the expertise to provide opinion as to financial or accounting calculations, and because he was not retained for this purpose, his testimony and rebuttal report as to Gary Olsen's opinions and conclusions should be excluded from evidence at trial.

## 5.    CONCLUSION

The eXp Defendants respectfully request that this Court grant this *Daubert* motion in its entirety and decline to qualify Mr. William Keep as an expert at trial, exclude Mr. Keep's testimony and report from evidence at trial, including his rebuttal reports, and exclude any presentation or reference to Mr. Keep's opinions or conclusions as detailed above in this motion.

Altneratively, and in the event his Court qualifies Mr. Keep and an expert at trial, eXp Defendants respectfully request that this court excluding evidence or

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

testimony as to Mr. Keep's opinions which describe (i) the characteristics of pyramid schemes or illegal MLMs; (ii) legal and ethical issues with MLMs; (iii) whether eXp Defendants share characteristics of a pyramid scheme or illegal MLM; and (iv) any reference to eXp Defendants being a pyramid scheme or illegal MLM; and (v) any reference to the term "pyramid scheme."

Respectfully submitted,

DATED:  July 24, 2026                    LEWIS BRISBOIS BISGAARD & SMITH LLP


By:      /s/ William E. Pallares
_____
WILLIAM E. PALLARES
Attorneys for Defendants, eXp REALTY, LLC, eXp WORLD  HOLDINGS, INC., and GLENN SANFORD

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2026, I electronically filed the foregoing DEFENDANTS eXp REALTY, LLC, eXp WORLD HOLDINGS, INC. AND GLENN SANFORD'S DAUBERT MOTION TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE OF WILLIAM KEEP with the Clerk of the Court using the CM/ECF system.

/s/ William E. Pallares
William E. Pallares

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

180797292.1

20

Case No. 2:23-CV-10492-AB-CTS

eXp'S AND SANFORD'S DAUBERT MOTION TO EXCLUDE WILLIAM KEEP