# EXHIBIT 1

Page 1

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

_____

VIDEO-RECORDED DEPOSITION OF:  JAMES BRAMBLE -
JUNE 20, 2025

_____

FABIOLA ACEVEDO, JANE DOE 1,      )
JANE DOE 2, JANE DOE 3, AND       )
JOHN DOE,                         )
                                  )
     Plaintiff,                   ) Case No.
                                  ) 2:23-cv-01304-AB-AGR
v.                                )
                                  )
EXP REALTY, LLC; EXP WORLD        )
HOLDINGS, INC.; MICHAEL L.        )
BJORKMAN; DAVID S. GOLDEN;        )
GLENN SANFORD; BRENT GOVE;        )
And DOES 1-10,                    )
                                  )
Defendants.                       )
_____

          PURSUANT TO NOTICE AND AGREEMENT, the

video-recorded deposition of JAMES BRAMBLE, was taken

on behalf of the Defendant David Golden at Lewis

Brisbois Bisgaard & Smith, LLP, 6550 South Millrock

Drive, Suite 200, Salt Lake City, Utah, on

June 20, 2025, at 9:34 a.m., before Danielle Lanser,

Registered Professional Reporter, Certified Realtime

Reporter, Registered Merit Reporter, Utah Certified

Reporter, and Notary Public within Colorado.



Page 147

legal conclusion.

A.    I don't mean exonerated in -- I did not mean exonerated as in -- as if he were being charged with the crime.

Q.    (BY MS. LENZE)  And you say here, "By the way, false claims of this sort are very, very rare. Lots of evidence to believe a victim who makes the allegation.  Due process for sure.  But just saying, false claims are rare."

Is that what you were referring to earlier, sir?

MR. PALLARES:  Object to form.

MR. DeMARCO:  Object to form.

Q.    (BY MS. LENZE)  Sorry.  Let me restate that.

MR. PALLARES:  You also cut out a little bit, Jennifer.

Q.    (BY MS. LENZE)  Is that comment there, Mr. Bramble, of 2:15 and 5 seconds what you were referring to about your position that women making allegations of sexual misconduct are to be believed?

MR. DeMARCO:  Object to form.

A.    So I'm giving my opinion.  I felt that I was pretty well-informed.  I have personal examples.  I, myself, am a victim of sexual assault.  My daughter is. And I've done a lot of research.  And I know that it's



MAGNA
LEGAL SERVICES

Page 148

somewhere close to, depending on the study and how it's worded, close to 90 percent of the people who make the allegation, it's at least based somewhat in truth.

MR. DeMARCO:  Just would object.  May call for expert opinion.  And lacks foundation.

MR. LEVINE:  Move to strike.  This is Levine.

MR. DeMARCO:  Yeah.  Joined.

Q.   (BY MS. LENZE)  I'm sorry to hear that happened to you and your daughter, sir.  My --

MR. LEVINE:  Objection.  Move to strike comment from counsel.

I'm not being insensitive.  I just want to keep a clean record.  Sorry.  We all share your feelings.

Q.   (BY MS. LENZE)  My question to you, Mr. Bramble, is:  For you in your role as general counsel at eXp and your role as a member of the compliance committee, were the allegations of women --

A.   Unfortunately, you're cutting out again to the point where I can't follow --

MR. PALLARES:  You're cutting out, Jen.  Sorry.

Q.   (BY MS. LENZE)  Okay.  No.  That's okay.  That's okay.

A.   You're back.



Q.    I'm not referring to any criminal case.

A.    Okay.

Q.    I'm talking about your investigation, sir, as general counsel, if you're aware of any physical evidence to support the allegation.

MR. PALLARES:  Okay.

Q.    (BY MR. DeMARCO)  So the answer then, if I'm correct, is, besides the statements of the alleged victims, you're not aware of any physical evidence, correct?

A.    That's not my answer.

Q.    Okay.  But you cannot identify any other evidence besides your alleged statements, correct?

MS. LENZE:  Object to form.

A.    What I immediately recall of the discussions that we had in making the determination that we thought the allegations were credible enough to take action was that the statement of the witness was strong.

Q.    (BY MR. DeMARCO)  You testified earlier, something to the effect of that, the alleged -- alleged victims almost always are telling the truth.

Do you remember saying that?

A.    So I don't remember --

Q.    Hold up.  Hold up.

Answer the question.



Page 305

MR. PALLARES:  Whoa.  Whoa.  Whoa.

A.    Let me --

MR. PALLARES:  He's answering the question.

MR. DeMARCO:  He's not answering.

MR. PALLARES:  Okay.  But you don't interrupt him when he's answering.

Go ahead.

Q.    (BY MR. DeMARCO)  Do you remember giving that testimony today?

MR. PALLARES:  No.  He's answering your prior question.

A.    I don't remember the specific conversation that that -- the question pointed to.  But I do agree with the sentiments that were expressed in it.

Q.    (BY MR. DeMARCO)  Okay.  And I think you even testified that -- you said something to the -- along the lines of, 90 percent of alleged victims tell the truth.

Do you remember testifying to that?

A.    That's not specifically my testimony, but I do remember the conversation.

Q.    Okay.  Then please clarify what you mean. And when you are referring to "conversation," you're referring to the deposition, correct?

A.    In this deposition, the conversation that I



Page 306

was having with -- I believe it's Ms. Lenze.

Q.    Okay.  So you believe that 90 percent of alleged victims are always telling the truth; is that right?

A.    That's --

MR. PALLARES:  Objection.  Form.

THE WITNESS:  Sorry.

MR. PALLARES:  Go ahead.

A.    That wasn't my testimony.

Q.    (BY MR. DeMARCO) Okay.  Then please clarify your testimony.

MR. PALLARES:  You want him to repeat his testimony, but go ahead --

Q.    (BY MR. DeMARCO)  No, I want you to clarify --

MR. PALLARES:  Go ahead and repeat it.

A.    My independent research has been that there are studies that show that somewhere approaching 90 percent of people that make allegations of sexual assault, that those allegations are based at least, in part, in truth.

Q.    (BY MR. DeMARCO)  Okay.  Can you refer to me to any specific study you're mentioning right now?

A.    I'm -- I don't -- I'm not mentioning a specific study.  I don't and I can't.


MAGNA
LEGAL SERVICES

Page 307

MS. LENZE:  And --

Q.  (BY MR. DeMARCO)  Okay.  And --

MS. LENZE:  Same objection to form.

Go ahead.

Q.  (BY MR. DeMARCO)  Okay.  And you're not an expert on whether alleged victims tell the truth, correct?

A.  I'm not.

Q.  Okay.  And you can't point to a single study that you reference that supports your assertion, correct?

MS. LENZE:  Object to form.

A.  I'm not sure which study I referenced.  My research that I have done -- I helped do a research paper several years ago and I have read other studies that say that, in general, up to 90 percent, it varies, of individuals who claim that they've been sexually assaulted are based at least in part on truth.  That's my understanding.

Q.  (BY MR. DeMARCO)  Okay.  What study -- what article did you help write?

MR. PALLARES:  Okay.  Go ahead.

Q.  (BY MR. DeMARCO)  He referenced it.

A.  I didn't help write an article.

Q.  What did you help do?



Page 308

A.    Help write a research paper.

Q.    For who?

A.    My daughter.

Q.    Okay.  And I know, with all due respect, and I mean this respectfully, that -- I know you've testified around and I'm not going to ask you about the specifics on that, but I -- I perceive that your -- your -- you believe your daughter was a victim of sexual assault; is that correct?

MR. PALLARES:  Don't answer that question.

THE WITNESS:  Okay.

MR. PALLARES:  We're not doing this line of questioning.  All right?

MR. DeMARCO:  Okay.  Well, if you're instructing him not to answer.

Q.    (BY MR. DeMARCO)  But it's fair to say, you're biased due to personal experience for somebody whose been accused of sexual assault; is that correct?

MS. LENZE:  Object to form.

A.    No.  I don't think I'm biased.

Q.    (BY MR. DeMARCO) Okay.  And you're aware that there has been wrongful convictions for people who have been accused of sexual assault.

Are you aware of that?

MS. LENZE:  Object to form.


MAGNA
LEGAL SERVICES

Page 309

MR. PALLARES:  Same.

Go ahead and answer.  Are you aware of that?

A.    I suspect that that's the case.  I can't point to a specific example.

Q.    (BY MR. DeMARCO) Okay.  And under your own belief that people almost always are telling the truth for alleged victims, under your own beliefs, that that would mean sometimes people are not telling the truth, correct?

A.    I --

MS. LENZE:  Object to form.

A.    Sorry.

MR. PALLARES:  Go ahead.  She's objecting to form.

A.    And, again, not trying to be argumentive.  I just don't want my testimony to be misrepresented.

My understanding is that research shows that up to 90 percent of people who make such allegations are making allegations that are at least based in truth.

Q.    (BY MR. DeMARCO)  Okay.

A.    And with that caveat, I do think that sometimes people lie and sometimes people make false accusations.

Q.    And people can exaggerate, correct?



Page 310

MS. LENZE:  Object to form.

A.    Yes.

Q.    (BY MR. DeMARCO)  Okay.  And people can be motivated to make claims so they can get money, correct?

MS. LENZE:  Object to form.

A.    I am not an expert, but I suspect people who are deceptive, that money might be one of the reasons they are.

Q.    (BY MR. DeMARCO)  Okay.  Especially against people who they think have a lot of money, correct?

MS. LENZE:  Object to form.

A.    I just don't -- don't know.  I -- I don't know.

Q.    (BY MR. DeMARCO)  When did you form this opinion that almost always alleged victims are telling the truth?

A.    So that's not my opinion.  I can restate it, if you want.  But if you --

Q.    Yeah.  I want to clarify because I do not want any confusion --

MR. PALLARES:  Okay.

Q.    (BY MR. DeMARCO)  -- what your opinion is.

MR. PALLARES:  And I don't want you interrupting on what he's answering.  Okay?



Go ahead.

A.   My understanding is that there is research that suggests that up to 90 percent, I think I've seen 80 percent and I've seen 90, of people who make allegations that they were sexually assaulted are making the allegation at least based in truth.

Q.   (BY MR. DeMARCO)  Okay.  And I -- this will be my final question on this.  And, again, I -- you brought this up.  Okay?  That -- were these opinions you had -- or -- or sorry, was the incident, the unfortunate incident that you referenced regarding your daughter, was that prior to September 2020?

MR. PALLARES:  Please don't answer that question.

THE WITNESS:  Okay.

MR. DeMARCO:  Okay.  Counsel, you're instructing him not to answer it?

MR. PALLARES:  Is that a question?

Q.   (BY MR. DeMARCO)  You agree that also sometimes you're aware of situations where alleged victims are motivated to make allegations of sexual assault because they don't want their spouse to find out they voluntarily might have had sexual relations with someone, correct?

MS. LENZE:  Object to form.

