Ivy A. Wang (SBN CA 224899)
Daniel J. Wadley (*Admitted Pro Hac Vice*)
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Telephone: 310.586.7700
Facsimile: 310.586.7800
Ivy.Wang@gtlaw.com
wadleyd@gtlaw.com

William E. Pallares (SBN CA 187740)
LEWIS BRISBOIS BISGAARD & SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, CA 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900
William.Pallares@lewisbrisbois.com

Attorneys for Defendants eXp Realty, LLC;
AGNT, Inc. f/k/a eXp World Holdings, Inc.;
and Glenn Sanford

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANYA ROBERTS,<br><br>        Plaintiff,<br><br>v.<br><br>eXp REALTY, LLC; eXp WORLD HOLDINGS, INC.; MICHAEL L. BJORKMAN; DAVID S. GOLDEN; BRENT GOVE; GLENN SANFORD; and DOES 1–10,<br><br>        Defendants. | CASE NO.  2:23-cv-10492-AB-CTS<br><br>Hon. André Birotte Jr., Ctrm 7B<br><br>**eXp DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO ADMIT EVIDENCE OF DEFENDANT GOLDEN'S OTHER ALLEGED SEXUAL ASSAULTS**<br><br>**Hearing Date: August 14, 2026**<br>**Time: 11:00 AM**<br><br>Action Filed:  December 14, 2023<br>FAC Filed: June 13, 2024<br><br>Trial Date: August 31, 2026 |

## I.     INTRODUCTION

The entirety of Plaintiff's case against the defendants is based on the assertion that over a five-week period from February to March 2020, her would-be boyfriend, David Golden, drugged and sexually assaulted (and trafficked) her on four occasions; and Bjorkman participated in the last of the four. Without evidence to support those claims, Plaintiff instead seeks to prove that, while they were both eXp Realty agents, Golden and Bjorkman had a coordinated plan to travel from one real estate conference to the next, where they deployed their "recurring method" of using "professional relationships" to "create opportunities for isolation, intoxication, or impairment" in which they serially abused women. *See* Plaintiff's Motion in Limine Nos. 3 and 4, at 1. Plaintiff proposes to prove the existence of this recurring method of abuse by introducing accusations made by eight different people that, on ten different occasions over a period spanning two decades (two of the accusers claim two incidents), Bjorkman or Golden (or both of them) either drugged them or both drugged them *and* sexually assaulted (or attempted to sexually assault) them. Plaintiff's second motion in limine seeks to admit, under Federal Rule of Evidence 415, evidence related to the two (out of ten) incidents in which Golden is alleged to have participated in a sexual assault or an attempted sexual assault.

This Court should exclude the accusations of sexual assault leveled against Golden because (a) Plaintiff has not presented sufficient evidence to enable a reasonable jury to find, by a preponderance of the evidence, that he sexually assaulted or attempted to sexually assault either of his two accusers, and (b) any possible relevance of the alleged sexual assaults is grossly outweighed by the unfair prejudice, jury confusion, and waste of judicial resources that will result if the Court permits the evidence.

## II.     ARGUMENT

### A.     Golden Did Not Attempt to Sexually Assault N.N.

Plaintiff concedes that attempted sexual assault requires a substantial step be taken toward causing "nonconsensual genital contact [or] penetration" or "touching of specific intimate areas with the intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual

desire." Plaintiff's Motion in Limine No. 1 at 5-6. A "substantial step," means "conduct planned to culminate in the commission of the substantive crime being attempted." *See Carroll v. Trump*, 124 F.4th 140, 161 (2d Cir. 2024).

Plaintiff's assertion that a reasonable jury could find that Golden attempted to sexually assault N.N. in December 2019.  As described by N.N., while sharing an Airbnb with Bjorkman and Golden, she retired to her room, locked the door and discovered they had left a 5-hr energy bottle (which she believed contained GHB) on her pillow. That evening, Golden texted a female colleague who was not at the event, saying "[w]e slipped Noelle a roofie." Golden testified that if he communicated anything like that, it was a joke. Wang Decl. Exh. 5 [Golden Tr.] at 319:25-320:4. In any case, N.N. does not even contend that she was drugged or that she felt any drugging symptoms.  The text was plainly a joking reference to the bottle left on N.N's pillow–not an actual drugging. N.N. further claims that one or both of them rattled the locked doorknob and went away. N.N. does not describe any statements or acts by Golden (or Bjorkman) indicating that they were seeking to have sex with her. Plaintiff, however, speculates that, but for the locked door, they both would have raped N.N. Plaintiff bases her speculation on N.N.'s claim that, months earlier, Bjorkman had made a sexually suggestive comment to N.N. and tried to kiss her.

It is not surprising that Plaintiff is unable to offer any judicial authority holding that the type of conduct alleged by N.N. is attempted sexual assault, as the argument is preposterous on its face. Plaintiff's reliance on *Carroll v. Trump* is misplaced. The attempt described in that case (and admitted under Federal Rules of Evidence 415) involved direct physical contact, including groping, kissing, "grabbing my breasts," and "putting his hand up my skirt." 124 F.4th at 159. The Second Circuit affirmed the admission of testimony about that incident as both a completed sexual offense as defined by federal statute and an attempted sexual assault as defined by Federal Rules of Evidence 413, because a jury could plainly infer that, combined with groping and other direct contact, reaching under a woman's skirt would culminate in Trump touching her genitals without her consent. It is absurd to suggest that rattling a locked door is in the same league as groping a woman under

her skirt or is otherwise a substantial step toward culmination of genital contact.

### B. No Jury Could Find by a Preponderance of Evidence that Farrell Was Sexually Assaulted

As described in the eXp Defendant's Motion in Limine No. 2, no reasonable jury could conclude from the uncontroverted evidence that Farrell was sexually assaulted. Farrell was well aware that Bjorkman and Golden both used and provided their party guests with recreational drugs, such as ecstasy, GHB, and cocaine. *See* eXp Defendants' Motion in Limine No. 2 n.5. On the weekend of her alleged assaults, Golden and Bjorkman were partying with Golden's girlfriend Keenan and their mutual friend A.T. They made no secret of their use of GHB and ecstasy. Farrell testified that upon arriving in Las Vegas she joined Golden in purchasing alcohol, and then came to their suite party (and stayed for the more intimate bubble bath and cuddle puddle) because she wanted to take drugs with them; and she admits she fulfilled her wish by taking multiple doses of ecstasy, tasting GHB, and vaping cannabis throughout the weekend. Wang Decl. Exh. 1 [Farrell Tr. Vol. 1] at 253; Wang Decl. Exh. 2 [Keenan Tr.] at 54-55. She was not lured or isolated for abuse. She intentionally insinuated herself into a private party among four consenting adults she knew were planning to take drugs and have sex because she wanted to join in the fun. They let her join, and she expressed gratitude for them doing so.

Keenan and A.T. testified that Farrell participated in a group bubble bath and then initiated oral sex with each of them. Keenan Tr. at 56-62; Wang Decl. Exh. 3 [A.T. Tr.] at 47-59. The day after her first alleged assault (she performed oral sex on Bjorkman), Farrell breakfasted on ecstasy, and then proceeded to have a great time at a pool party, where she was observed to be gregarious and happy. Keenan Tr. at 67-70; A.T. Tr. at 65-69. Farrell's current claim that she was in a drug-induced haze and only weeks later remembered that she had been raped by Bjorkman late Saturday night is belied by her own, multiple admissions. First, on Sunday morning, Farrell confided in her friend Keenan that she and Bjorkman had sex the night before (and that she was worried about their respective spouses finding out). Keenan Tr. at 73-74. Second, Farrell's counselor, in session notes,

memorialized Farrell's statement that ████████████████████████████████ ████████████████████████████████████████████████ Wang Decl. Exh. 4. Talking a woman into consenting to sex is not rape.  The morning after allegedly being raped, Farrell (a) extended her stay because she was having such a great time, (b) made a public birthday wish that she would be able to spend more time with her assaulters in the future and (c) got her nipple pierced (and paid for Keenan's and A.T.'s piercings) to commemorate the wonderful weekend she had. Keenan Tr. at 73-77; A.T. Tr. at 86.

Plaintiff suggests that because Golden provided some of the drugs that Farrell intentionally took over the weekend, observed the events that transpired in the group shower, and "may" have touched her breast at some point during the evening, he somehow "caused" Farrell to have sex with Bjorkman, Keenan and A.T. and has, therefore, committed sexual assault. *See* Plaintiff's Motion in Limine No. 2 at 3, 5-6. This profoundly illogical argument is based on rank speculation that (a) Golden wanted Farrell to have sex with Keenan, A.T. or Bjorkman, (b) Golden gave her drugs with the intention that she would thereby be induced to have sex with them rather than because she asked him to share his drugs with her, and (c) she would not have had sex with anyone that night but for the drugs Golden gave her. Just reciting the chain of causation that would have to be true to sustain Plaintiff's theory exposes its lunacy. Farrell is a competent adult who testified that she took every single drug she took that night because she wanted to. Full stop. If drugs voluntarily consumed by Farrell contributed to her desire to have sex that night, it does not make either the drugs or the person who shared them with her the "cause" of the sex. By Plaintiff's logic, anyone who shares recreational drugs (or even some red wine) with a friend who later has sex can be held liable for sexual assault. That is absurd.

**C.    The Alleged Attempted and Completed Assaults Are Not Relevant**

Even if another sexual assault is provisionally admissible under Rule 415, it still must be relevant under Federal Rules of Evidence 401–*i.e.*, it must tend to make a disputed fact more or less likely to be true. Nowhere in Plaintiff's Motion in Limine No. 2 does she identify any fact at issue *in this case* (disputed or otherwise) that will be more or less likely

to be found true if the jury hears about N.N.'s doorknob rattling incident or Golden's presence during a group shower with Farrell.

According to Plaintiff, after meeting Golden[1], Plaintiff pursued a romantic relationship with him during which she and Golden shared recreational drugs and had sex, over two weekends at his home and a weekend in Flagler Beach, Florida. Thus, such issues as identity, intent, plan, opportunity, or lack of mistake are not in dispute. *See* eXp Defendants' Opposition to Plaintiff's Motion in Limine No. 3 at 4-6. As Plaintiff acknowledges, Golden freely admits he wanted to, planned to, had an opportunity to, and did take drugs and have sex with Plaintiff on the aforementioned occasions. *See* Plaintiff's Motion in Limine No. 2 at 2. With such admissions, what possible disputed fact could be made more or less likely to be true by hearing N.N.'s or Farrell's allegations? The answer is "none."  The only disputed issue raised by Plaintiff's sexual assault claims is whether Plaintiff was a willing participant or whether, as she now claims, she did not consent to any of the sex she had with Golden. Nothing about the December 2019 door rattling incident or the August 2020 group shower incident even tangentially speaks to that issue.

The evidence that Plaintiff consented to the sexual encounters at Golden's Las Vegas home in February 2020 and in Florida in March 2020 is overwhelming. *After* the two February weekends with Golden, Plaintiff sent Golden dozens of texts describing in graphic detail (a) how much she enjoyed her sexual experiences with him and (b) how eager she was to have more of them, which she accomplished in Florida in March, when they shared drugs and sex again. This is virtually dispositive evidence that Plaintiff consented to all sexual encounters with Golden. In contrast, Plaintiff's assault claim is based on the fanciful story that, even though for all but a few days of the five-week period, she was in Florida

---

[1] The first time they met, on February 7, 2020, Plaintiff had been drinking throughout the day and evening and took an Adderall pill offered by Keenan before being introduced to Golden. Golden was not throwing a party (with or without offering guests recreational drugs). Plaintiff does not contend that Golden secretly drugged her or touched her that evening. She alleges only that she awoke in Golden's suite to find Keenan touching her vagina and Golden touching himself.

eXp DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2

and he was 2,300 miles away in Nevada, Golden kept her such a constant drug-induced fog during the entire period that she does not remember texting him or any of the sex acts in which they engaged. Plaintiff's purported impairment was apparently selective, as she was not prevented from functioning or forming other memories. Plaintiff contends that she lacked the capacity to consent to any of her sexual encounters with Golden. *See* Wang Decl. Exh. 6 [Roberts Tr. Vol 2] at 105-06; 122-24; 135-140; 170-180.

### D.   Any Probative Value is Clearly Outweighed by Unfair Prejudice

Even if bad act evidence is deemed relevant (it is not here), Federal Rules of Evidence 403 requires the Court to assess the relative probative value of the evidence "against the danger" it will cause unfair prejudice, confuse the issues, mislead the jury or cause undue delay. *See Blind-Doan v. Sanders*, 291 F.3d 1079, 1083 (9th Cir. 2002); *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir. 2003); *United States v. Roberson*, 581 F. Supp. 3d 65, 71 (D.D.C. 2022); *J.S. v. Children of Am., Inc.*, 696 Fed. Appx. 39, 41 (2d Cir. 2017). The Court should "consider the similarity of the prior acts ***to the acts charged***; the closeness in time of the prior acts to the acts charged; the frequency of the prior acts; the presence or lack of intervening circumstances; and the necessity of the evidence 'beyond the testimonies already offered at trial.'" *Blind-Doan*, 291 F.3d at 1082 (emphasis added); *Doe v. Glanzer*, 232 F.3d 1258, 1269 (2000) (differences between prior and alleged sexual assaults supported exclusion).

Neither of these two isolated incidents bear any similarity to the story Plaintiff spins in attempting to recast her failed romance as a continuous series of rapes (and a sex trafficking scheme). Rattling the doorknob of a colleague with whom Golden had never taken drugs or had sex, and then walking away, is in no way comparable to a five-week romance with repeated occasions of consensual use of recreational drugs and sex. So too Farrell's story, which is vastly different from what Plaintiff claims happened to her. Plaintiff claims that after two separate weekends at her paramour's home (at which times they partook of recreational drugs and had sex), after sexting with him for days leading up to the Flager Beach event, and after taking drugs with Golden at the Flagler event, Golden

eXp DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 2

suddenly and inexplicably turned on her and either joined Bjorkman in raping her or stood by and let Bjorkman rape her. Farrell, by contrast, celebrated her birthday by inviting herself into a planned intimate party between Bjorkman, A.T., Golden and his girlfriend (who testified that Golden was more than a little displeased to have Farrell join the planned foursome), initiated sex with the two women, and participated in an after-sex "cuddle puddle" in which she thanked them for letting her join them. Golden is no more than a spectator during the bubble bath and shower sex, and is not alleged to have been involved at all in the alleged rape by Bjorkman that occurred the next night.

The eXp Defendants have discussed elsewhere both (a) the prejudicial impact of admitting testimony related to bad acts that would be admissible only as against Bjorkman and/or Golden in this joint trial and (b) the significant expansion of the trial if Plaintiff is permitted to conduct mini-trials of whether Golden or Bjorkman committed other bad acts. The eXp Defendants incorporate those arguments by reference rather than repeat them here. *See* eXp Defendants' Motion in Limine No. 1 at 12-13; eXp Defendants' Motion in Limine No. 2 at 11-12; eXp Defendants' Motion in Limine No. 3 at 10-12; eXp Defendants' Opposition to Plaintiff's Motion in Limine No. 1 at 7-10; eXp Defendants' Opposition to Plaintiff's Motion in Limine No. 3 at 8-9.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion in Limine No. 2.

Dated: July 31, 2026                    GREENBERG TRAURIG, LLP


                                        By */s/ Ivy A. Wang*
                                        Ivy A. Wang
                                        Daniel J. Wadley

                                        Attorneys for Defendants eXp Realty, LLC;
                                        AGNT, Inc. f/k/a eXp World Holdings, Inc.; and
                                        Glenn Sanford