Jennifer A. Lenze, Esq., CA Bar No. 246858
**LENZE LAWYERS, PLC**
999 Corporate Drive, Suite 100
Ladera Ranch, CA 92694
T: (310) 322-8800 F: (310) 322-8811
jlenze@lenzelawyers.com

Brooke Cohen, Esq., TX Bar No. 24007019, PHV admitted
Andrea Hirsch, Esq., GA Bar No. 666557, PHV admitted
**COHEN HIRSCH, LP**
5256 Peachtree Road, Suite 195-E
Atlanta, GA 30341
T: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com
*Attorneys for Plaintiff Anya Roberts*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ANYA ROBERTS,

Plaintiff,

v.

EXP REALTY, LLC; MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD; and DOES 1–10,

Defendants.

**CASE NO. 2:23-cv-10492-AB-CTS**

**PLAINTIFF'S AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

**TRIAL 2**

eXp Realty, LLC and Glenn Sanford

Trial: November 16, 2026
Time: 8:30 a.m.
Courtroom: 7B
Judge: Hon. André Birotte, Jr.

# TABLE OF CONTENTS

I. Scope of Trial 2 and express preservation of claims .......... 1
II. Claims and theories remaining for trial .......... 2
III. The predicate conduct under section 1591 .......... 3
  A. Elements and applicable distinctions .......... 3
  B. Key evidence concerning Mr. Golden .......... 5
  C. Key evidence concerning Mr. Bjorkman .......... 8
IV. Claim 3: Beneficiary liability against each eXp Defendant .......... 9
  A. Elements .......... 9
  B. Key evidence against eXp Realty .......... 10
  C. Key evidence against Sanford .......... 12
  D. Attempt to benefit .......... 14
V. Vicarious liability of eXp Realty .......... 15
  A. Actual authority .......... 15
  B. Apparent authority .......... 15
  C. Ratification .......... 16
VI. Claim 7: Negligent hiring, supervision, and retention .......... 19
VII. Damages and allocation .......... 21
VIII. Defenses and Plaintiff's opposing evidence .......... 23
  A. Limitations .......... 23
  B. Failure of proof and statutory defenses .......... 25
  C. Agency, negligence, and causation defenses .......... 26
  D. Remaining pleaded defenses and objections to submission .......... 26
IX. Evidentiary issues and legal questions .......... 29
X. Jury trial, fees, and preservation .......... 35

# TABLE OF AUTHORITIES

**Cases**


*Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740 (C.D. Cal. 2024)..................4, 10

*B.B. v. County of Los Angeles*, 10 Cal. 5th 1 (2020)........................................21, 28

*Cleveland v. KFC Nat. Management Co.*, 948 F. Supp. 62 (N.D. Ga. 1996) .........31

*Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011) .................................................22

*Doe v. Capital Cities*, 50 Cal. App. 4th 1038 (1996).............................................19

*E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637 (E.D. Wash. 2011).................34

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019). 15–17

*In re Exxon Valdez, 270 F.3d 1215 (9th Cir. 2001)...............................................22*

*Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970 (1999) ..........................................................................................................*27*

*Kristensen v. Credit Payment Services Inc.*, 879 F.3d 1010 (9th Cir. 2018) ..........*16*

*Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133 (2009)............................19

*Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026) (en banc) ...10, 14

*Reich v. Purcell*, 67 Cal. 2d 551 (1967) ..................................................................24

*Reid v. City of San Diego*, 24 Cal. App. 5th 343 (2018) .........................................27

*Thomas v. Duggins Construction Co.*, 139 Cal. App. 4th 1105 (2006) ..................28

*Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906 (2001).............24


**Statutes and Constitutional Provisions**


U.S. Constitution, Seventh Amendment ...................................................................35

18 U.S.C. § 1591 ...............................................................3–4, 10, 19, 34

18 U.S.C. § 1595 .......................................2–3, 5, 9–10, 13–14, 21, 24, 27–29, 35

28 U.S.C. § 1391 ......................................................................................................34

28 U.S.C. § 1920 ......................................................................................................35

Cal. Civ. Code § 1431.2 ...........................................................................................21

Cal. Civ. Code § 3294 ..............................................................................................23

Cal. Code Civ. Proc. § 340.16..................................................................................24

Cal. Code Civ. Proc. § 361 .......... 24
Fla. Stat. § 95.11 .......... 24

## TABLE OF AUTHORITIES (CONTINUED)

**Rules and Other Authorities**

Fed. R. Civ. P. 12 .......... 34
Fed. R. Civ. P. 32 .......... 32
Fed. R. Civ. P. 37 .......... 33
Fed. R. Civ. P. 38 and 39 .......... 35
Fed. R. Civ. P. 54 .......... 35
Fed. R. Evid. 105 .......... 33
Fed. R. Evid. 401 and 403 .......... 31–32
Fed. R. Evid. 404 .......... 31
Fed. R. Evid. 408 .......... 29
Fed. R. Evid. 412 .......... 32
Fed. R. Evid. 415 .......... 30–31
Fed. R. Evid. 703 .......... 34
Fed. R. Evid. 801, 804, and 805 .......... 32–33
C.D. Cal. L.R. 16-4 .......... 1
CACI No. 426 .......... 19
Ninth Circuit Model Civil Jury Instruction 1.12 .......... 25
Ninth Circuit Model Civil Jury Instruction 5.5 .......... 22
Restatement (Third) of Agency sections 1.01, 2.01, 2.03, 4.01, 4.06, 7.08 .......... 15–17
CACI No. 3930 .......... 29

## I. Scope of Trial 2 and express preservation of claims

Plaintiff Anya Roberts submits these amended contentions under Local Rule 16-4, conforming Dkt. 361 to the Court's separate-trial orders (Dkts. 472, 503), its October 9, 2026 order dismissing Counts I and II with prejudice as against Mr. Golden and Mr. Bjorkman only (Dkt. 514), and the proposed Amended Final Pretrial Conference Order. This memorandum supersedes Dkt. 361 as to Trial 2 only. Trial 2 concerns the surviving claims against eXp Realty, LLC and Glenn Sanford, collectively the "eXp Defendants" where appropriate. Liability must be proved separately as to each.

The dismissal entered in Dkt. 514 reaches specified claims against Mr. Golden and Mr. Bjorkman only and resolves no claim against either eXp Defendant. Plaintiff does not by that election withdraw the underlying factual allegations, release either eXp Defendant, concede that the acts did not occur, or abandon a surviving theory. Plaintiff expressly preserves eXp Realty's vicarious liability and requests independent determination of every Trial 2 element and damages. She opposes preclusion, estoppel, or an evidentiary shortcut based on the withdrawal itself. Separately, she requests a ruling before Trial 2 on any asserted effect of a Trial 1 verdict, findings, or judgment. The eXp Defendants now reserve an issue-preclusion argument from Trial 1. Rule 42(b) separate trials within one

action produce no final judgment before Trial 2, the Trial 1 and Trial 2 claims have different elements, and the eXp Defendants are not parties to Trial 1. Plaintiff relies on, and does not relinquish, any preservation protection already contained in the Court's entered orders.

The predicate allegations encompass the course of conduct in Puerto Vallarta, Mexico, in February 2020; Las Vegas, Nevada, in February 2020; and Daytona Beach and Flagler Beach, Florida, in March 2020. Mr. Golden and Mr. Bjorkman are not parties to Trial 2. Plaintiff will prove the applicable predicate violation as part of her TVPRA claims against the eXp Defendants. A qualifying TVPRA violation is a predicate of the federal theories, not an additional element of Claim 7's separate negligence theory.

The claims and defendants presented in Trial 2 are identified in Section II. Plaintiff relies on corporate personnel, communications, and reporting channels to establish notice, knowledge, response, and participation relevant to those surviving claims.

## II. Claims and theories remaining for trial

Claim 3: Beneficiary liability under 18 U.S.C. § 1595(a) against eXp Realty and, separately, Sanford, including the attempt-to-benefit theory preserved in the

proposed amended pretrial order to the extent supported by the evidence and permitted by the Court's rulings.

Claim 7: Negligent hiring, supervision, and retention against eXp Realty, including negligent hiring of Mr. Bjorkman and negligent supervision and retention of Mr. Golden and Mr. Bjorkman.

Vicarious liability: eXp Realty's responsibility for the predicate conduct of Mr. Golden and Mr. Bjorkman under actual authority, apparent authority, and ratification. This preserves Plaintiff's existing position that eXp Realty may be held liable under § 1595 for perpetrator conduct imputed to it under agency principles, independently of statutory beneficiary liability.

Plaintiff seeks past and future noneconomic compensatory damages, punitive damages where authorized, reasonable attorneys' fees under § 1595(a), and recoverable costs. She does not seek lost wages, lost earnings, loss of earning capacity, business-income loss, past or future medical expenses, or other economic damages.

## III. The predicate conduct under section 1591

### A. Elements and applicable distinctions

Plaintiff must establish that Mr. Golden and/or Mr. Bjorkman knowingly engaged in conduct specified in § 1591(a)(1), including recruiting, enticing,

transporting, providing, obtaining, or maintaining Plaintiff, in or affecting interstate or foreign commerce, with knowledge or reckless disregard that force, threats of force, fraud, coercion, or a combination would be used to cause her to engage in a commercial sex act. Plaintiff will identify the acts and state of mind attributable to each actor. 18 U.S.C. § 1591(a)(1). The civil burden is a preponderance of the evidence; the required state of mind is not reduced to negligence.

The commercial-sex requirement demands a connection between a sex act and something of value given to or received by any person on account of that act. Value may be nonmonetary; a formal cash-for-sex bargain is not required. Plaintiff relies on the professional, sponsorship, compensation, recruiting, access, and photographic benefits identified below to establish the statutory connection between the sex acts and the things of value. 18 U.S.C. § 1591(e)(3); *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 764–74 (C.D. Cal. 2024).

Plaintiff maintains that the pleaded facts encompass force and fraud through drug-facilitated incapacitation and exploitation, as well as coercion to the extent the evidence satisfies § 1591(e)(2), including its scheme-or-pattern and serious-harm requirements. She preserves her opposition to the contention that the FAC permits proof of fraud alone. The proposed amended pretrial order identifies the

relevant allegations in FAC paragraphs 135–139, 239–250, and 252–256. Each asserted means remains subject to the Court's instructions and the proof.

Plaintiff also pursues the distinct attempt-to-benefit theory under § 1595 against the eXp Defendants, as addressed in Section IV.

**B. Key evidence concerning Mr. Golden**

Recruitment and access. Mr. Golden was presented as a successful eXp recruiter and used that position in connection with the Puerto Vallarta Freedom Summit and the later trips. Plaintiff contends he offered sponsor-line assistance, compensation, recruiting instruction, access to senior eXp leaders, and help building her business and downline. Those communications, the business context, travel, and company relationships support knowing recruitment and the interstate or foreign commerce nexus.

Puerto Vallarta. Plaintiff's disclosure dated October 2, 2026 further identifies her recollection of awakening barely conscious in Mr. Golden's hotel room while Emily Keenan digitally penetrated her and Mr. Golden stood behind Keenan touching his penis. Plaintiff described the contact as nonconsensual. She relies on the sequence of events, Mr. Golden's conduct and response when she regained awareness, and the surrounding communications as evidence of knowing participation in a common undertaking. Mr. Golden continued discussing

sponsorship, compensation, recruiting methods, and access to influential agents. Plaintiff admits voluntarily taking a pill represented as Adderall on February 8, 2020; that admission does not establish consent to the sexual conduct or identify every substance involved. The disclosed observations supplement the evidence supporting the predicate allegations preserved for Trial 2; they do not dispense with proof of the TVPRA elements.

Las Vegas. Mr. Golden invited Plaintiff and Holly Madden for additional recruiting instruction and sponsor discussions. Plaintiff's October 2 disclosure identifies two February 2020 trips, including the Grant Cardone 10X event, and acknowledges her difficulty separating some memories and fixing exact dates. She recalls Mr. Golden providing a pill represented as Adderall and obtaining a drink for her, and later memory loss after a recruiting dinner. Plaintiff also relies on his admissions that he gave her GHB and engaged in sexual conduct with her, her lack of memory of ingestion and sexual conduct, Madden's observations, and contemporaneous communications. This evidence is offered to establish the asserted means, state of mind, sex acts, and connection to things of value. These February incidents are not attributed to Mr. Bjorkman.

Florida. Mr. Golden arranged for GHB to be shipped to the Daytona Beach hotel, prepared or provided doses, and brought the substance to Farrell-Nelson's home. Plaintiff relies on his admissions and March 2020 messages concerning

procurement, use, and sexual conduct; the witnesses' observations of abrupt impairment; photographs; and her fragmented recollections. His communications with the supplier concerning the shipment and sexual activity support Plaintiff's asserted inferences about his knowledge and conduct.

Plaintiff admits that, on March 12, 2020, in Daytona Beach, she voluntarily ingested a liquid that Mr. Golden and Mr. Bjorkman called "GHB" and described to her as a workout or performance-enhancing substance. She contends, however, that additional ingestions occurred without her knowledge or consent. She further contends that the substance and its effects were materially misrepresented, the resulting impairment was exploited, and she did not consent to the sexual conduct. Her resulting impairment rendered any purported consent ineffective. Expert testimony concerning pharmacology and functioning will remain within the Court's limits.

The alleged professional value to Plaintiff consists of the sponsorship assistance, compensation, recruiting instruction, leader and event access, and business-development assistance described in the trip communications. The alleged photographic value to Mr. Golden consists of sexual photographs he allegedly received or retained. Plaintiff relies on his intertwined recruiting and sexual communications, the trip sequence, his admissions, and the photographs to

establish that the identified value was given or received on account of the alleged sex acts.

**C. Key evidence concerning Mr. Bjorkman**

Plaintiff's predicate allegations concerning Mr. Bjorkman focus on Florida. Mr. Golden described him as a longtime friend and business partner. Both attended the recruiting trip connected with their eXp organizations. Plaintiff relies on their shared room and recruiting arrangements; Mr. Bjorkman's knowledge that GHB was being delivered; his familiarity with its effects, including blackouts; his alleged participation in its administration; and his conduct while Plaintiff was profoundly impaired.

Mr. Bjorkman described Plaintiff's allegedly sexual behavior during a period she cannot remember. The next morning, he entered the bathroom naked while she was showering and stated, "You weren't a prude last night." Plaintiff also relies on the March 13, 2020 communication identified in Dkt. 361. She contends these circumstances support inferences about his knowledge and participation; their weight is for the jury. The promised instruction in conducting recruiting events and building a revenue-share organization supplies the alleged value connection, which must be proved. Plaintiff connects the alleged Florida sexual conduct to the recruiting instruction offered in connection with that trip,

rather than relying on Mr. Bjorkman's general business success as a substitute for the statutory connection.

Plaintiff relies on Mr. Bjorkman's own statutory acts and required mental state to establish his participation in the predicate violation, including the evidence of his knowledge, assistance, and conduct during Plaintiff's impairment.

## IV. Claim 3: Beneficiary liability against each eXp Defendant

### A. Elements

For eXp Realty and separately for Sanford, Plaintiff must prove: (1) that she was a victim of a qualifying TVPRA violation; (2) participation by the Defendant in the relevant venture; (3) a knowing financial or other benefit from that participation, or a legally sufficient attempt to benefit under the preserved alternative; and (4) that the Defendant knew or should have known that the venture had engaged in a qualifying violation. 18 U.S.C. § 1595(a). Plaintiff must establish the relationship among the venture, predicate violation, participation, and benefit, and damages recoverable for the violation. The statute reaches a venture that "has engaged" in a violation; Plaintiff opposes the eXp Defendants' reformulation requiring a venture "engaging in" trafficking when the benefit is received. For an actual-benefit theory, Plaintiff addresses knowledge when that Defendant received

the benefit; for the alternative, she addresses knowledge when the Defendant took the substantial step toward obtaining it.

Participation means taking part and does not require operation or management of the venture. *Ratha v. Rubicon Resources, LLC*, 168 F.4th 541 (9th Cir. 2026) (en banc). Plaintiff opposes grafting a "facilitation" or "direct association" requirement onto participation; the eXp Defendants' own "continuous business relationship" formulation is satisfied by their contractual, sponsor-line, and revenue-share relationships with Mr. Golden and Mr. Bjorkman. Plaintiff contends the revenue-share undertaking described below is the relevant venture and that the governing § 1595 standard does not require each beneficiary personally to commit or participate in the sexual assault. The criminal participation definition in § 1591(e)(4) is not the standard Plaintiff seeks for civil beneficiary liability. See *Acevedo*, 713 F. Supp. 3d at 774–85; Dkt. 472.

Plaintiff identifies the organized recruiting and revenue-share activities of the participants as the relevant venture under § 1595 and contends that the venture engaged in the qualifying conduct through Mr. Golden and Mr. Bjorkman.

**B. Key evidence against eXp Realty**

Participation. eXp Realty created and operated the revenue-share program, established sponsor lines and compensation eligibility, regulated sponsor changes

and recruiting practices, maintained branding and company systems, and retained disciplinary and termination authority. The independent contractor agreements, recruiting materials, corporate testimony, compliance processes, and program records connect those functions to the undertaking used by Mr. Golden and Mr. Bjorkman.

Knowing benefit. Plaintiff relies on evidence of Company Dollar, commissions, transaction and agent fees, recruiting production, sponsor-line growth, and retention of productive agents. Dkt. 361 identifies Gary Olsen's calculations of benefits associated with Plaintiff and evidence of continuing referral transactions involving Mr. Bjorkman. Plaintiff offers this evidence to establish the statutory benefit from participation in the venture.

Knowledge. Plaintiff distinguishes information available before the February-March 2020 harm from later notice relevant to continued benefit and ratification. For earlier notice, she relies on Debbie Penny's pre-affiliation knowledge concerning Mr. Bjorkman and the onboarding evidence. For later notice, Plaintiff's opposition identifies allegations received and discussed by eXp management on September 18, 2020 (Dkt. 225 at 15, citing the accompanying statement of genuine disputes, paragraph 43). The FAC alleges Sims's October 6, 2020 report of drugging, rape, GHB in energy-drink bottles, and recruiting-related intoxication (Dkt. 84, paragraphs 157–162). Farrell-Nelson's identification of

Plaintiff and Nielsen's reports supply additional asserted notice. Plaintiff relies on the content, recipients, timing, reporting responsibilities, and response to attribute each item to eXp Realty.

Continued benefit after notice. Plaintiff contends that eXp Realty failed to contact Plaintiff or reasonably investigate the identified conduct, maintained economic relationships with Mr. Golden and Mr. Bjorkman, and retained benefits from the venture after receiving the relevant information. She relies on continued revenue-share and referral arrangements, retention decisions, and compliance evidence. Plaintiff relies on the sequence of notice, corporate response, and benefits retained or pursued after notice. The alleged continuing referral transactions are separately identified in Dkt. 225 at 19–20, citing the accompanying statement of genuine disputes, paragraphs 90–93.

### C. Key evidence against Sanford

Participation. Plaintiff relies on Sanford's design and promotion of the revenue-share model, authority to influence its terms and benefits, and actual interventions in vesting, qualifying-agent protection, and compliance decisions.

Knowing benefit. Plaintiff relies on evidence of benefits attributable to Sanford's participation, including the revenue-share evidence identified in Dkt. 361 and Olsen's attribution of a benefit from Plaintiff.

Knowledge and response. Plaintiff relies on the record identified in Dkt. 225 at 15–16 and 19–20: Sanford's assurance that he had Mr. Bjorkman's back on revenue share; his alleged decision, before the October 19, 2020 compliance meeting, to accelerate vesting despite the three-year policy; the committee's ensuing approval; and his intervention at the July 2, 2021 compliance meeting after an adverse reinstatement vote. The cited statement of genuine disputes addresses these matters in paragraphs 94–100 and 102–108. Plaintiff also relies on the alleged termination of the outside investigative path supported by Felicia Gentry (Dkt. 225 at 16, citing paragraph 117). These are the communications and decisions from which she asks the jury to infer Sanford's individual knowledge and continuing participation, not merely his executive title. Sanford's roles as founder and, at times, CEO of eXp Realty and as Chairman and CEO of eXp World Holdings are offered to show what he knew and decided, including at the board level; the parent's dismissal does not make his own knowledge and conduct irrelevant.

The evidence is offered to show Sanford's individual knowledge, participation, and protection or retention of benefits after notice. Plaintiff does not seek to impose negligence or vicarious liability on Sanford through those facts. Her surviving claim against him is beneficiary liability under § 1595.

**D. Attempt to benefit**

Plaintiff preserves the attempt-to-benefit alternative against each eXp Defendant to the extent permitted by the Court's August 14, 2026 ruling and supported by evidence. That theory requires proof of intent to obtain the qualifying benefit and a substantial step toward doing so, together with the remaining statutory requirements. It does not require proof that the contemplated benefit was actually received. Plaintiff relies on the recruiting, retention, vesting, and benefit-preservation conduct identified above. For eXp Realty, Plaintiff relies on preserving the referral and recruiting relationships from which the company sought commissions and fees. For Sanford, she relies on his alleged interventions to preserve the revenue-share undertaking in which he sought benefits.

*Ratha* holds that the 2023 clarifying amendment to § 1595(a) applies retroactively. Plaintiff therefore opposes a categorical temporal bar to the preserved attempt theory based on the dates of the underlying conduct. *Ratha* addresses when the defendant's knowledge must exist relative to the benefit or attempt; it does not hold that the venture must still be trafficking when the benefit is received, and § 1595(a) reaches a venture that "has engaged" in a violation. Plaintiff therefore opposes the eXp Defendants' contention that benefits received after Mr. Bjorkman's September 2020 "termination," and eXp Realty's later investigation and decisions, are irrelevant; those benefits flowed from the same

venture and were received with actual knowledge, as the 2020 benefits were received with constructive knowledge.

## V. Vicarious liability of eXp Realty

### A. Actual authority

Plaintiff must establish eXp Realty's manifestation of assent that the alleged agent act on its behalf, the agent's acceptance, the right of control over the relevant undertaking, and the connection between that agency and the actionable conduct required by the governing instructions. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073–76 (9th Cir. 2019); Restatement (Third) of Agency §§ 1.01, 2.01. An independent-contractor label does not alone resolve agency.

The key evidence includes eXp Realty's authorization of agent attraction and sponsor-line recruitment; Mr. Golden's and Mr. Bjorkman's acceptance and pursuit of that undertaking; the agreements and compensation system; and control over recruiting materials, branding, sponsor changes, eligibility, discipline, and termination. Plaintiff contends the recruiting authority was used in the course of the predicate conduct.

### B. Apparent authority

Plaintiff must establish manifestations attributable to eXp Realty that reasonably caused her to believe Mr. Golden or Mr. Bjorkman acted with authority

on its behalf, her reasonable reliance, and the required connection to the harm. Restatement (Third) of Agency §§ 2.03, 7.08.

Plaintiff relies on eXp Realty's presentation and promotion of the men as successful leaders, its branded recruiting structure and events, and company-created sponsor relationships linking access and advancement to senior recruiters. Her testimony concerning reliance when seeking instruction and attending the trips connects the asserted appearance of authority to the access through which the wrongful conduct occurred.

**C. Ratification**

Plaintiff must establish conduct capable of ratification on eXp Realty's behalf, the knowledge required for ratification, and eXp Realty's affirmance or adoption, including acceptance of benefits in circumstances supporting that inference. A principal may be bound by ratification despite incomplete knowledge if it chooses to affirm the conduct knowing that material facts remain unknown. *Henderson*, 918 F.3d at 1073–75; *Kristensen v. Credit Payment Services Inc.*, 879 F.3d 1010, 1014–15 (9th Cir. 2018). Plaintiff requests an instruction preserving both actual knowledge and a choice to affirm while aware that material facts remain unknown; a full-knowledge-only formulation would omit her alternative

theory. *Henderson*, 918 F.3d at 1073–75; Restatement (Third) of Agency sections 4.01 and 4.06.

Plaintiff relies on the combined notice provided by Megan Farrell-Nelson, Tami Sims, and Noelle Nielsen concerning the alleged misconduct of Mr. Golden and Mr. Bjorkman, including their reports, complaints, communications, and related information received by eXp Realty. This includes Farrell-Nelson's identification of Plaintiff as another potential victim and the information reaching corporate leadership and compliance personnel. Plaintiff will establish the substance, timing, recipients, and follow-up for each report through admissible testimony and documents and the foundation for attributing that notice to eXp Realty.

The FAC specifically alleges that, on October 6, 2020, Sims reported information to eXp concerning warnings about drugging and rape, Mr. Bjorkman's possession of GHB in energy-drink bottles, videos of sexual conduct, the Hawaii incident, and the use of intoxication in recruiting agents into sponsorship relationships. FAC ¶¶ 157–162. Plaintiff also relies on the notice supplied by Nielsen and eXp Realty's handling of that information. The reports establish the information communicated to eXp Realty and provide context for its response, continued acceptance of benefits, and ratification.

Plaintiff contends that eXp Realty ignored these reports and warning signs, failed to contact Plaintiff and pursue reasonable investigative leads, and continued to accept benefits and protect the relevant recruiting and revenue-share relationships. Plaintiff relies on that course of conduct, including the protection of Mr. Bjorkman's revenue-share interests, as evidence that eXp Realty chose to affirm the relevant conduct despite actual knowledge or awareness that material facts remained unknown. Plaintiff relies on the corporate communications, decision-making roles, and actions of senior personnel, including Sanford, to connect that notice and response to eXp Realty. Taken together, the reports, ignored warnings, failure to investigate, and continued acceptance of benefits support a finding that eXp Realty ratified the relevant conduct. The alleged affirmance consists of continuing acceptance of benefits and affirmative protection of the recruiting and revenue-share relationships after the described notice, including accelerated vesting and the later reinstatement intervention.

These theories survive independently of the claims personally asserted against Mr. Golden and Mr. Bjorkman, as Plaintiff requests and preserves in Section I and the proposed amended pretrial order. Plaintiff opposes the eXp Defendants' contention that the FAC did not preserve agency-based TVPRA liability against eXp Realty and relies on the Court's disposition of that theory in Dkt. 472. No personal judgment against either alleged agent in Trial 1 is a

prerequisite or substitute for Trial 2 proof. Nor does Dkt. 514 extinguish the theory. Vicarious liability requires an underlying violation by the agent, not a pending claim against the agent; Plaintiff must and will prove Mr. Golden's and Mr. Bjorkman's § 1591 violations in Trial 2, as the eXp Defendants concede she must for Count III. A principal may be sued without its agent, and a dismissal entered without any determination of the merits is not a finding that no violation occurred. Dkt. 472 permitted this theory, including ratification, to proceed over the same pleading objection.

**VI. Claim 7: Negligent hiring, supervision, and retention**

Plaintiff asserts this claim against eXp Realty alone. Liability requires unfitness or a particular risk of harm associated with the agent's work, actual or constructive knowledge of that risk, a negligent hiring, supervision, or retention decision, occurrence of the corresponding harm, and substantial-factor causation. *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996); *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1139–40 (2009); CACI No. 426. Plaintiff maintains that ordinary reasonable care governs this claim; she does not concede the asserted professional-negligence limitation.

Negligent hiring of Mr. Bjorkman. Plaintiff must prove that eXp Realty hired or engaged him, he was unfit or presented the particular risk, eXp Realty

knew or should have known of it when doing so, that unfitness harmed Plaintiff, and the negligent hiring was a substantial factor. The key evidence includes the prior rape allegation, information held by California state broker Debbie Penny, onboarding procedures and testimony about their importance, and the allegedly deficient inquiry before placing Mr. Bjorkman in a recruiting role providing access to agents and recruits.

Negligent supervision of Mr. Golden and Mr. Bjorkman. Plaintiff must prove a known or reasonably discoverable risk requiring supervision, a failure to exercise reasonable supervision, corresponding harm, and substantial-factor causation. She relies on eXp Realty's retained control, reporting and compliance systems, relevant complaints and information available during the applicable period, and deficiencies in training, inquiry, and intervention that permitted the dangerous recruiting activity.

Negligent retention of Mr. Golden and Mr. Bjorkman. Plaintiff must prove that eXp Realty retained the relevant actor after it knew or should have known of the particular risk, that the risk resulted in harm to Plaintiff, and that the negligent retention was a substantial factor. Plaintiff relies on the notice chronology, retention and discipline decisions, continued recruiting access and incentives, and the evidence connecting the resulting exposure to her injury.

Plaintiff distinguishes the chronology for Claim 7 from the later-notice federal and ratification theories. For harm in February-March 2020, she relies on preexisting knowledge or a then-reasonably discoverable risk and an earlier hiring, supervision, or retention failure capable of causing that harm. The later reports and corporate responses also support the beneficiary and ratification theories described above.

## VII. Damages and allocation

Plaintiff seeks past and future noneconomic damages caused by the actionable course of conduct, including emotional distress, mental and physical suffering, humiliation, loss of enjoyment of life, and psychological injury. The abandoned economic categories are listed in Section II. Liability and damages must be connected under the applicable theory as to each Defendant.

Plaintiff seeks joint and several liability under § 1595 for indivisible harm for which the eXp Defendants are legally responsible and opposes importing Cal. Civ. Code § 1431.2 into the federal claim. As to eXp Realty's vicarious liability, she contends its liability is derivative of the underlying intentional conduct and should not be reduced by treating its responsibility as merely comparative negligence. See *B.B. v. County of Los Angeles*, 10 Cal. 5th 1 (2020). Any application of § 1431.2 to the separate negligence claim must be confined to that

claim and cannot reduce recovery independently supported by another theory. Plaintiff preserves the proposed amended pretrial order's proposed conditional verdict procedure.

Plaintiff requests that the Trial 2 jury determine damages independently, without treating a prior verdict amount as a binding ceiling, floor, or evidentiary shortcut, subject to the Court's rulings on the matters identified in Section I. Plaintiff does not seek double compensation for the same injury. Any overlap, payment, settlement credit, satisfaction, or adjustment is for the Court to decide after the Trial 2 verdict, with all objections to entitlement and amount preserved. That remedial accounting is distinct from the preclusion issues on which Plaintiff requests an express ruling.

Punitive damages are available under the TVPRA. *Ditullio v. Boehm*, 662 F.3d 1091, 1096–98 (9th Cir. 2011). Plaintiff requests a preponderance burden and the federal standard of malicious conduct or reckless or callous disregard of federally protected rights. She relies on *Ditullio's* common-law-tort rationale and the preponderance alternative in Ninth Circuit Model Civil Jury Instruction 5.5; compare *In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001) (federal maritime punitive claim). Plaintiff opposes importing California's clear-and-convincing burden into the federal claims and requests claim-specific instructions

resolving the burden expressly, rather than a single heightened standard for all punitive issues.

For punitive damages on a California-law claim, Plaintiff must establish oppression, fraud, or malice by clear and convincing evidence. Corporate liability also requires the applicable officer, director, or managing-agent predicate, including advance knowledge of unfitness and conscious disregard, authorization or ratification, or personal culpability. Cal. Civ. Code § 3294(a)–(c). Plaintiff relies on senior-level notice, the allegedly conscious protection of the recruiting and benefit arrangements, and the conduct proved at trial.

Consistent with the existing rulings, the first phase addresses liability, compensation, and punitive entitlement. Only the amount of punitive damages and financial-condition evidence will be addressed in a second phase before the same jury. Each Defendant requires a separate punitive determination.

## VIII. Defenses and Plaintiff's opposing evidence

### A. Limitations

For unresolved state-law issues in Trial 2, California law is the default. The eXp Defendants bear the burden of establishing a basis for any requested application of another jurisdiction's law, including a material conflict and the relevant governmental interests. The Court conducts comparative-impairment

analysis if a true conflict exists. *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919–20 (2001). This position does not replace the federal law governing the TVPRA claims or disturb any existing choice-of-law ruling. The eXp Defendants' new "law where the alleged conduct occurred" formulation is not California's test, which abandoned the place-of-the-wrong rule. *Reich v. Purcell*, 67 Cal. 2d 551 (1967). The conduct relevant to Claim 7 is eXp Realty's own hiring, supervision, and retention, undertaken from Washington with information held by its California broker—not the assault in Florida.

The eXp Defendants' Seventh Defense invokes limitations, including Nevada and Mexico periods and California's borrowing statute. The defense requires the applicable period, accrual, and commencement after expiration, subject to available tolling, revival, and relation back. The federal claim is governed by § 1595(c), not by a state tort limitations period. The 2020 conduct and 2023 commencement support timeliness under its ten-year period. Plaintiff contends the state sexual-assault-related negligence claim is timely under Cal. Code Civ. Proc. § 340.16 and disputes the contrary borrowing and choice-of-law arguments under § 361. Even on the eXp Defendants' premise, the four-year Florida negligence period then in force, Fla. Stat. § 95.11(3)(a) (2020), ran from March 2020, and this 2023 action is timely. The trip dates, operative allegations,

filing history, and evidence relevant to discovery supply the pertinent factual record.

**B. Failure of proof and statutory defenses**

Plaintiff retains the burden to establish each statutory element. In opposition to contentions of no commercial sex act, qualifying means, venture, participation, benefit, or knowledge, she relies respectively on the communications and value evidence in Section III, the procurement and impairment evidence, the coordinated program and recruiting activity, each Defendant's operational conduct, benefit records, and the Defendant-specific notice chronology in Section IV.

Plaintiff opposes consent-related arguments through evidence of the particular acts, deception, impairment, and lack of effective consent. The multiple fraudulent ingestions and representations by Mr. Golden and Mr. Bjorkman that the liquid they called "GHB" was a workout or performance-enhancing substance all show the above. Plaintiff contends that additional ingestions occurred without her knowledge or consent. She relies on testimony, admissions, contemporaneous communications, witness observations, and expert evidence to establish the conduct and her resulting incapacity. See Ninth Circuit Model Civil Jury Instruction 1.12.

**C. Agency, negligence, and causation defenses**

In opposition to independent-contractor and lack-of-control arguments, Plaintiff relies on the agreements, program controls, and actual recruiting relationship. In opposition to lack of apparent authority, she relies on manifestations attributable to eXp Realty and her reliance. In opposition to lack of ratification, she relies on notice and affirmance or benefit retention. In opposition to lack of duty, foreseeability, breach, or causation, she relies on the risk and timing evidence specified separately for hiring, supervision, and retention. None of these theories is asserted against Sanford after summary judgment.

**D. Remaining pleaded defenses and objections to submission**

Plaintiff's discussion of defenses identified for Trial 2 does not concede their legal availability, evidentiary support, or entitlement to a jury instruction. The Court should require each eXp Defendant to identify the claim to which a defense applies, its legal basis, and the supporting evidence. The affirmative defenses of Mr. Golden and Mr. Bjorkman do not automatically become defenses of the eXp Defendants.

Waiver. This defense requires intentional relinquishment of a known right. Plaintiff disputes knowledge through her impairment, incomplete recollection, and

later discovery, and disputes intentional relinquishment through her account of those circumstances.

Estoppel. The defense requires the applicable representation or conduct, justified reliance, and resulting detriment. Plaintiff disputes any representation surrendering her rights, any reasonable reliance on her impaired or uninformed communications as such a surrender, and any demonstrated detrimental change of position by the particular eXp Defendant.

Plaintiff objects to laches as a defense to the California-law money-damages claim. *Reid v. City of San Diego*, 24 Cal. App. 5th 343, 362 (2018). She likewise disputes use of laches to shorten the express federal limitations period governing her timely § 1595 damages claim. The eXp Defendants must identify any distinct equitable relief to which they contend that doctrine applies.

Unclean hands. Plaintiff disputes both qualifying misconduct and a direct connection to the relief sought. Her testimony concerning deception, impairment, and lack of consent opposes knowing wrongful participation; recruiting, travel, and ingestion do not themselves establish misconduct in the alleged exploitation. *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 978–79 (1999).

In pari delicto. Plaintiff disputes substantially equal responsibility for the particular wrong: the evidence of drug-facilitated incapacity and nonconsensual

contact does not make her an equal participant in that contact. For either doctrine, Plaintiff also disputes legal availability against a federal statutory claim without a separate federal-law basis and requests a threshold ruling before jury submission.

Comparative-fault and allocation issues must be resolved separately for the federal claim, the vicarious-liability theory, and Claim 7. She objects to using a negligence allocation to reduce damages independently recoverable under § 1595 or an established vicarious-liability theory. The governing positions and requested treatment of overlapping recovery are set out in Section VII. Any negligence-only allocation requires the applicable legal and evidentiary foundation. The eXp Defendants' newly asserted "Third Affirmative Defense" would apportion fault to Plaintiff on Claim 7 if she "fails to demonstrate lack of consent." Consent is a disputed element, not an allocation of fault; ingesting a substance misrepresented as a workout supplement is not negligence; and comparative fault does not reduce liability for intentional misconduct or liability derivative of it. *Thomas v. Duggins Construction Co.*, 139 Cal. App. 4th 1105 (2006); *B.B.*, 10 Cal. 5th 1. Plaintiff objects to submission of any defense not pleaded in the eXp Defendants' answer (Dkt. 93).

Mitigation concerns harm reasonably avoidable after injury, not fault for failing to prevent the underlying conduct. A Defendant seeking a reduction must identify the reasonable available measure, the unreasonable failure to use it, and

the amount avoidable. See CACI No. 3930. Plaintiff's testimony about help-seeking and trauma-related functioning opposes that contention. Giving up medical-expense recovery does not concede failure to mitigate continuing distress. Causation defenses remain subject to the distinction between unrelated harm, aggravation, and any injury that can actually be divided.

Punitive objections are governed by the Defendant- and claim-specific standards in Section VII. Section 1595(a) supplies the federal fee basis; entitlement and reasonable amount are for the Court. Any settlement-credit theory requires an applicable legal and factual basis and belongs in the proceedings after the verdict. The eXp Defendants' "Ninth" and "Tenth" defenses concerning the Gove settlement are post-verdict matters for the Court, not jury issues; the settlement may not be disclosed to the jury. Fed. R. Evid. 408. Plaintiff opposes any preclusion or estoppel theory based on the withdrawal or Trial 1 and requests the separate determination described in Section I. Neither a defense label nor a request for fees, costs, or sanctions supplies an independent ground for a jury to reject a proven claim. No counterclaim is identified for Trial 2.

## IX. Evidentiary issues and legal questions

Corporate notice and response. Plaintiff relies on reports and complaints, including those from Megan Farrell-Nelson, Tami Sims, and Noelle Nielsen;

internal communications; investigation procedures; retention decisions; and evidence of continued benefits. These materials establish notice, knowledge, corporate response, ratification, and continuing benefit. Plaintiff relies on the recipient and timing evidence, reporting channels, and corporate decision-making to establish notice to eXp Realty and, separately, Sanford.

Other acts: existing rulings and requested Trial 2 application. Plaintiff relies on Dkt. 471 at 2–4 and the August 14, 2026 oral limitations permitting TH's testimony in part and CL's testimony for an admissible nonpropensity purpose. She requests express confirmation that TH's qualifying testimony may be used under Rule 415 to prove Mr. Bjorkman's predicate conduct in Trial 2 and that CL's testimony may be used for the previously permitted purpose concerning her belief that she was drugged.

The October 2 disclosure describes TH's Santa Monica hotel and Las Vegas pool allegations concerning Mr. Bjorkman and CL's August 2020 Las Vegas observations. Plaintiff relies on the admitted testimony to prove the underlying conduct and permitted nonpropensity issues, together with evidence of reports and communications establishing corporate notice, response, retention, and ratification.

Additional other-act evidence. Plaintiff seeks incident-specific modification or clarification of prior exclusions in light of Trial 2's parties, claims, and purposes. Because neither man faces a personal liability determination in Trial 2,

prejudice tied to claims against them does not justify exclusion here. Plaintiff requests that Rule 403 be applied to the identified evidence and proposed use, with tailored limits; evidence damaging to a defense is not for that reason alone unfairly prejudicial.

Plaintiff contends that Rule 415 remains available for qualifying evidence supporting eXp Realty's alleged vicarious liability. *Cleveland v. KFC Nat. Management Co*., 948 F. Supp. 62, 64–66 (N.D. Ga. 1996), allowed the rule's use against an employer despite the alleged perpetrator's nonparty status. Plaintiff opposes the eXp Defendants' contention that such evidence is admissible only against the actor; where eXp Realty's liability is vicarious, evidence that its agent committed the predicate act is evidence against the principal. Independently, Plaintiff seeks supported nonpropensity uses under Rule 404(b), including knowledge, intent, plan, and absence of mistake. The October 2 disclosure supplies the identified incidents; Plaintiff requests a ruling on each additional incident, Defendant, and purpose under Rules 403, 404(b), and 415(b).

Farrell-Nelson may testify to her personal observations of the Puerto Vallarta and Florida events within the permitted scope. Plaintiff's Puerto Vallarta and Las Vegas experiences remain part of the predicate allegations preserved for Trial 2; their removal as damages claims against the individuals does not eliminate them from Trial 2. The additional details summarized in Section III are offered as

evidence supporting those allegations, subject to the applicable rules and existing rulings. Plaintiff preserves Rule 412 and Rules 401 and 403 objections to sexual-history and unrelated personal-history evidence.

Mr. Golden's and Mr. Bjorkman's testimony and statements. Plaintiff relies on live testimony, designated deposition passages, and contemporaneous communications concerning GHB, sexual conduct, recruitment, sponsorship, and the business relationships. Deposition use requires the notice or representation foundation in Rule 32(a)(1), admissible content, and a permitted use under Rule 32(a)(2)-(8).

Contemporaneous and other out-of-court statements. Plaintiff invokes Rule 801(d)(2)(B)-(D) against eXp Realty where adoption, authority, or a statement within an existing agency relationship is established. She separately invokes Rule 801(d)(2)'s final paragraph for statements admissible against an alleged agent from whom eXp Realty's potential vicarious liability is directly derived, subject to the required relationship and timing foundation. Sanford's own statements are offered against him under Rule 801(d)(2)(A).

Prior testimony and notice. Rule 801(d)(1) applies to qualifying prior statements when the declarant testifies and is subject to cross-examination. If a declarant is unavailable, Plaintiff invokes Rule 804(b)(1) for former testimony with the required opportunity and similar motive to develop it, or Rule 804(b)(3) for

genuinely self-inculpatory statements when its conditions are met. Reports offered to establish what a recipient was told, rather than the reported act's truth, are offered for notice under Rule 801(c). A separate hearsay basis is required for each layer offered for its truth; limits on Defendant and purpose remain governed by Rule 105. See Fed. R. Evid. 801, 804, 805.

Experts. Plaintiff relies on Dr. LeBeau's pharmacology, functioning, and hypothetical-consistency testimony; Dr. Raghavan's testimony concerning personal examination and diagnosis of Plaintiff, understanding of coercive control, drug-facilitated sexual assault, and victim responses; and Dr. Keep's explanation of the MLM and revenue-share structure, within the Court's rulings. Plaintiff preserves objections to defense expert testimony exceeding the permitted scope concerning memory, trafficking indicators, industry standards, credibility, and prevalence.

Communications and preservation of evidence. Plaintiff relies on contemporaneous messages, phone communications, corporate records, and testimony to establish the underlying conduct, corporate knowledge, participation, benefits, and response. Plaintiff preserves requests for relief arising from failure to preserve relevant evidence, including relief under Fed. R. Civ. P. 37(e).

Trial separation. Plaintiff requests neutral instructions identifying the parties and claims before the Trial 2 jury and directing independent adjudication on the

evidence presented in that trial. Plaintiff maintains her proposal that neither jury be told of the other trial or the dismissed claims (proposed Disputed Instruction No. 86), which the eXp Defendants oppose.

Venue. The eXp Defendants' objection to venue under 28 U.S.C. § 1391(b)(2), first raised in their October 2026 edits to the proposed pretrial order, was waived when not raised by motion or answer, Fed. R. Civ. P. 12(h)(1), and forfeited by three years of litigation through summary judgment.

Untimely motions in limine. The eXp Defendants' Trial 2 motions in limine "A" through "G," first identified in the same edits, come after the motion deadline and the August 14, 2026 hearing. In any event, Sanford's role in ending the independent investigation and the board materials are offered as to his own knowledge and eXp Realty's response, not against the dismissed parent; emotional-distress damages are not subject to Rule 26(a)(1)(A)(iii)'s computation requirement, *E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639 (E.D. Wash. 2011); the Golladay revenue-share data are eXp's own records and a proper basis for Keep's opinions, Fed. R. Evid. 703; and Puerto Vallarta is predicate conduct (Section III).

The remaining legal questions include the § 1591 predicate and commercial-value connection; the civil venture, participation, benefit, and knowledge standards; the preserved attempt-to-benefit alternative; the sufficiency of the

pleaded agency-based theory against eXp Realty; the law governing negligence and limitations; the separate punitive standards; deposition and statement foundations; any negligence-only allocation; and post-verdict credits or overlapping recovery. Plaintiff maintains the positions stated above and in the proposed amended pretrial order. Plaintiff requests the express preservation and preclusion determinations described in Section I and relies on any protection already granted by the Court.

**X. Jury trial, fees, and preservation**

Plaintiff timely demanded a jury. Liability, compensatory damages, and punitive issues are jury questions under the Seventh Amendment and Fed. R. Civ. P. 38 and 39, subject to the existing punitive-amount phasing. Plaintiff does not seek additional bifurcation of liability and compensation. The Court determines legal choice-of-law questions, evidentiary foundations, genuinely equitable issues subject to the jury's determination of common facts, fees, costs, and adjustments after the verdict.

Plaintiff seeks reasonable attorneys' fees under § 1595(a), including compensable work on intertwined issues to the extent authorized and reasonably incurred in establishing the surviving federal claims. She will request fees under

Fed. R. Civ. P. 54(d)(2) and applicable local procedures and taxable costs under Rule 54(d)(1) and 28 U.S.C. § 1920.

Except for the expressly withdrawn claims, abandoned economic-damages categories, and matters already resolved by the Court, Plaintiff makes no additional abandonment. All surviving beneficiary, attempted-benefit, agency, apparent-authority, ratification, negligent hiring, negligent supervision, negligent retention, damages, fee, and cost positions against the proper Trial 2 Defendant remain preserved within the Court's rulings. Plaintiff requests independent adjudication of those claims and issues without claim or issue preclusion from the withdrawal or Trial 1.

Dated: October 12, 2026

Respectfully submitted,
**LENZE LAWYERS, PLC**
**COHEN HIRSCH, LP**

By: /s/ Jennifer A. Lenze
Jennifer A. Lenze
Brooke Cohen
Andrea Hirsch
Attorneys for Plaintiff Anya Roberts

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.2, the undersigned certifies that this memorandum contains 6,981 words, as calculated electronically, excluding the items permitted to be excluded by Local Rule 11-6.1, and complies with the applicable word limit.

Dated: October 12, 2026

By: /s/ Jennifer A. Lenze
Jennifer A. Lenze