Jennifer A. Lenze, Esq., CA Bar No. 246858
**LENZE LAWYERS, PLC**
999 Corporate Drive, Suite 100
Ladera Ranch, CA 92694
T: (310) 322-8800 F: (310) 322-8811
jlenze@lenzelawyers.com

Brooke Cohen, Esq., TX Bar No. 24007019, PHV admitted
Andrea Hirsch, Esq., GA Bar No. 666557, PHV admitted
**COHEN HIRSCH, LP**
5256 Peachtree Road, Suite 195-E
Atlanta, GA 30341
T: (678) 268-4683
brooke@cohenhirsch.com
andrea@cohenhirsch.com
*Attorneys for Plaintiff Anya Roberts*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ANYA ROBERTS,

Plaintiff,

v.

EXP REALTY, LLC; MICHAEL L. BJORKMAN; DAVID S. GOLDEN; GLENN SANFORD; and DOES 1–10,

Defendants.

**CASE NO. 2:23-cv-10492-AB-CTS**

**PLAINTIFF'S AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

**TRIAL 1**

Defendant Golden and Defendant Bjorkman

Trial: October 19, 2026
Time: 8:30 a.m.
Courtroom: 7B
Judge: Hon. André Birotte, Jr.

# TABLE OF CONTENTS


I. Scope of Trial 1 and claims preserved for Trial 2 .... 1

II. Claims and governing law .... 3

III. Elements and key evidence for each claim .... 4

- A. Claim 4: Sexual battery against Defendant Golden and Defendant Bjorkman .... 5
- B. Claim 5: Civil battery against Defendant Golden and Defendant Bjorkman .... 8
- C. Claim 6: Intentional infliction of emotional distress .... 9
- D. Responsibility for the other Defendant's conduct .... 10

IV. Damages .... 11

V. Affirmative defenses and Plaintiff's opposing contentions .... 12

- A. Limitations and governing law .... 13
- B. Consent to the particular contact .... 14
- C. Comparative negligence and percentage apportionment .... 15
- D. Causation and genuinely divisible harm .... 16
- E. Laches .... 17
- F. Unclean hands and in pari delicto .... 17
- G. Waiver, estoppel, and generalized inequity .... 18
- H. Mitigation of subsequent damages .... 19
- I. Punitive damages and matters for the Court .... 20

VI. Evidentiary issues and remaining legal questions .... 21

VII. Jury trial and further proceedings .... 26

# TABLE OF AUTHORITIES

## Cases

*Ashcraft v. King*, 228 Cal. App. 3d 604 (1991)................................................ 8, 14

*B.B. v. County of Los Angeles*, 10 Cal. 5th 1 (2020).............................................*15*

*Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138 (2005) ......................*10*

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009) ...............................................................9

*Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970 (1999) ......................................................................................... 17

*Reid v. City of San Diego*, 24 Cal. App. 5th 343 (2018)...................................... 17

*Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906 (2001)................3

## Statutes and Constitutional Provisions

U.S. Constitution, Seventh Amendment ............................................................ 26

28 U.S.C. § 1920 ................................................................................................ 27

Cal. Civ. Code § 1431.2 ..................................................................................... 15

Cal. Civ. Code § 1708.5 .......................................................................................5

Cal. Civ. Code § 3294 .........................................................................................11

Cal. Civ. Code § 3295 .........................................................................................12

Cal. Code Civ. Proc. § 340.16............................................................................. 13

Cal. Code Civ. Proc. § 361 ................................................................................. 13

Fla. Stat. § 95.11(3)(o) (2020)............................................................................. 14

Fla. Stat. § 768.81............................................................................................... 16

## TABLE OF AUTHORITIES (CONTINUED)

**Rules and Other Authorities**

Fed. R. Civ. P. 16 .......... 13
Fed. R. Civ. P. 38 and 39 .......... 26
Fed. R. Civ. P. 54 .......... 27
Fed. R. Evid. 401 and 403 .......... 24
Fed. R. Evid. 404 .......... 4, 21, 22, 24
Fed. R. Evid. 412 .......... 25
Fed. R. Evid. 415 .......... 4, 21, 22, 24
Fed. R. Evid. 702 .......... 25
C.D. Cal. L.R. 16-4 .......... 1
CACI No. 1300 .......... 8
CACI No. 1306 .......... 5
CACI No. 1600 .......... 9
CACI No. 3600 .......... 10
CACI No. 3610 .......... 10
CACI No. 3940 .......... 11
Ninth Circuit Model Civil Jury Instruction 1.12 .......... 9
Restatement (Second) of Torts §§ 18, 876, 892B .......... 8, 10, 15
CACI No. 3930 .......... 20

## I. Scope of Trial 1 and claims preserved for Trial 2

Plaintiff Anya Roberts submits these amended contentions under Local Rule 16-4, conforming Dkt. 361 to the Court's separate-trial orders (Dkts. 472, 503) and the withdrawal order (Dkt. 514) and stating the trial-specific positions set forth in the proposed Amended Final Pretrial Conference Order. The scope and effect of the withdrawal of claims remain governed by the Court's orders, not by this memorandum. This memorandum supersedes Dkt. 361 as to Trial 1 only. Plaintiff's separate Trial 2 memorandum states her contentions against eXp Realty, LLC and Glenn Sanford.

Trial 1 concerns sexual battery, civil battery, and intentional infliction of emotional distress against Defendant Golden and Defendant Bjorkman arising from the events in Daytona Beach and Flagler Beach, Florida, on or about March 10 through March 13, 2020. Plaintiff seeks past and future noneconomic damages and punitive damages against each Defendant. The claim numbers below retain the numbering used in the operative First Amended Complaint (Dkt. 84).

Plaintiff will not seek a verdict in Trial 1 on the TVPRA claims identified as Claims 1 and 2 against Defendant Golden and Defendant Bjorkman, or on the state-law claims against them to the extent those claims seek recovery for the Puerto Vallarta or Las Vegas events. The withdrawal order, Dkt. 514, governs the

withdrawal with prejudice of those specified claims against those Defendants only. Plaintiff does not concede that the alleged conduct did not occur. Evidence concerning those events remains subject to the Court's evidentiary rulings; withdrawal of a claim does not itself establish either admissibility or exclusion of its underlying evidence.

Plaintiff expressly preserves all surviving claims against eXp Realty and Sanford for Trial 2, including proof of Defendant Golden's alleged conduct in Puerto Vallarta, Las Vegas, and Florida and Defendant Bjorkman's alleged conduct in Florida. Plaintiff opposes treating the withdrawal itself as an adjudication of the underlying facts or as a release of either Trial 2 Defendant. Separately, she requests independent adjudication of the Trial 2 claims without a binding factual determination from a Trial 1 verdict, findings, or judgment, and an express ruling before Trial 2 on any asserted preclusive, estoppel, or evidentiary effect. The effect of the withdrawal itself remains distinct from the effect of matters actually adjudicated in Trial 1. The preserved theories include eXp Realty's vicarious liability, direct beneficiary, and negligence liability, and Sanford's beneficiary liability.

## II. Claims and governing law

Plaintiff will pursue Claim 4, sexual battery; Claim 5, civil battery; and Claim 6, intentional infliction of emotional distress; against each Defendant. Each claim includes the concerted-action and aiding-and-abetting theories identified in the proposed amended pretrial order. Those are grounds for imposing liability for an underlying tort, not additional causes of action. Plaintiff will not ask the Trial 1 jury to decide any TVPRA claim or any claim against eXp Realty or Sanford.

California law is the default governing law for the state-law issues presented in Trial 1. Defendant Golden and Defendant Bjorkman, as proponents of another jurisdiction's law, bear the burden of establishing a basis to displace California law. They must timely invoke that law, identify a material difference, and establish the other jurisdiction's interest in applying its rule to the particular issue. If a true conflict exists, the Court determines which jurisdiction's interests would suffer greater impairment. The inquiry is issue-specific. *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919–20 (2001).

Plaintiff maintains that California law governs Claims 4, 5, and 6 and punitive damages. Plaintiff relies on the California connections identified in the proposed amended pretrial order, including Defendant Bjorkman's California domicile. Defendant Golden's Nevada residence does not itself establish that Nevada law governs. Unless Defendants establish grounds for applying another

jurisdiction's law to a particular issue, California law applies. Plaintiff acknowledges her stipulated Florida citizenship in February-March 2020 and the Florida location of the conduct; those facts bear on Florida's interests and must be considered. Plaintiff contends that the place of conduct does not dispense with the required comparison of the particular civil rules on contact, consent, emotional distress, and punitive damages. California's interest in deterring tortious conduct by its domiciliary is relevant to Bjorkman; as to Golden, Plaintiff disputes reliance on his Nevada residence to import Nevada's rules into Florida conduct and requests a separate comparison of the asserted differences in contact, consent, emotional-distress, and punitive-damages law. A choice of substantive tort law does not itself resolve which limitations rule governs. Plaintiff requests issue- and Defendant-specific findings rather than an automatic choice of one state's law for every question and preserves her alternative positions if Florida law is selected.

## III. Elements and key evidence for each claim

Plaintiff also relies on TH's testimony permitted under Rule 415 against Defendant Bjorkman and CL's testimony permitted under Rule 404(b), within the scope of the Court's August 14, 2026 rulings. TH's testimony supplies other-sexual-assault evidence supporting Plaintiff's claims against Defendant Bjorkman, including the propensity inference permitted by Rule 415. CL's testimony supplies

the limited nonpropensity evidence permitted by the Court concerning her belief that she was drugged. Plaintiff relies on this evidence together with her testimony, Defendants' admissions, contemporaneous communications, witness observations, and permitted expert testimony. The testimony and its permitted uses are addressed further in Section VI. The existing written dispositions are in Dkt. 471 at 2–4. The additional incidents and uses requested in Section VI are not represented as already admitted merely because they appear in the October 2 disclosure.

### A. Claim 4: Sexual battery against Defendant Golden and Defendant Bjorkman

For each Defendant, Plaintiff must establish: (1) an intent to cause harmful or offensive contact with an intimate part of Plaintiff, or harmful or offensive contact with Plaintiff by use of an intimate part of the Defendant, with sexually offensive contact resulting directly or indirectly; (2) Plaintiff's lack of consent; and (3) resulting harm or offense. An intimate part includes a sexual organ, anus, groin, buttocks, or female breast. Offensive contact is contact offending a reasonable sense of personal dignity. Cal. Civ. Code § 1708.5; CACI No. 1306. Plaintiff seeks damages caused by the conduct proved. The contact-based theories asserted here do not require proof of penetration.

As to Defendant Golden, the key evidence includes his sworn admissions concerning GHB and sexual conduct during the Florida trip; his March 8–9, 2020 communications arranging shipment to the Hard Rock Hotel in Daytona Beach; his March 12–17 communications concerning receipt, use, and sexual conduct; Plaintiff's account of profound impairment and missing memory; photographs; and the observations of Holly Madden and Megan Farrell-Nelson. Plaintiff contends Defendant Golden's admissions and contemporaneous communications establish sexual contact, while the circumstances of the drug's administration and her inability to function establish lack of effective consent and his intent. The procurement communications bear on preparation and intent; the admissions concerning sexual conduct bear on contact; and Plaintiff's testimony and the witnesses' observations bear on agreement, capacity, and harm. Plaintiff relies on those distinct evidentiary uses rather than treating proof of drug procurement alone as proof of every element.

As to Defendant Bjorkman, Plaintiff relies on his knowledge of the GHB delivery and effects, his alleged participation in its administration, the shared hotel room, his observations and descriptions of Plaintiff while she was impaired, his conduct and statements the following morning, and his March 13, 2020 communication. Plaintiff contends this evidence supports inferences of sexual contact and knowing participation in the wrongful conduct. Plaintiff also relies on

the alternative grounds of responsibility for Defendant Golden's conduct stated in subsection D. For his own alleged conduct, Plaintiff relies on the administration evidence, his observations and descriptions of the impaired Plaintiff, and the following-morning conduct and March 13 communication. For alternative responsibility for Golden's conduct, she relies on the coordinated arrangements, knowledge, and assistance described in subsection D. Neither route rests on shared lodging or friendship alone.

Plaintiff disputes the characterization that her claims against Bjorkman rest solely on the shower remark. Her incomplete recollection does not limit her proof to personally remembered events; she relies on the admissible direct and circumstantial evidence and the alternative liability theories identified here and in the Trial 1 pretrial order.

Plaintiff acknowledges voluntarily ingesting a liquid called "GHB" on March 12, 2020, in Daytona Beach. She contends that Defendants described it as a workout or performance-enhancing substance and that material misrepresentations concerning its nature or effects induced that ingestion. She further contends that additional ingestions occurred without her knowledge or consent, that she did not consent to the sexual contact at issue, and that her resulting impairment rendered any purported consent ineffective. The admitted ingestion does not resolve the disputed representations, knowledge of effects, additional ingestions, or capacity

and consent at the time of particular contact. Consent to sharing a room, ingesting a substance, or an earlier interaction does not establish consent to the particular sexual contact. See *Ashcraft v. King*, 228 Cal. App. 3d 604, 609-10 (1991); Restatement (Second) of Torts section 892B(2)-(3).

**B. Claim 5: Civil battery against Defendant Golden and Defendant Bjorkman**

For each Defendant, Plaintiff must establish: (1) that he touched Plaintiff or caused her to be touched with intent to harm or offend her; (2) that she did not consent; (3) that she was harmed or offended; and (4) where offensiveness is at issue, that a reasonable person in her situation would have been offended. CACI No. 1300. Plaintiff contends that causing ingestion through material deception concerning the substance's nature or expected effects, and the subsequent nonconsensual sexual touching, support this claim. See Restatement (Second) of Torts §§ 18, 892B(2).

The evidence against Defendant Golden includes his procurement, preparation, and provision of GHB; Plaintiff's testimony about the representations made to induce ingestion; his admissions that he brought the bottle to Farrell-Nelson's home and gave Plaintiff additional GHB there; his admitted sexual conduct; and the witnesses' observations of Plaintiff's condition. Plaintiff acknowledges only the one voluntary ingestion in Daytona Beach, Florida based

on a fraudulent misrepresentation and contends that additional ingestions occurred without her knowledge or consent. The sexual-touching theory independently requires proof of lack of consent to that contact.

The evidence against Defendant Bjorkman includes his alleged assistance with administration, knowledge of the delivery and the drug's effects, conduct while Plaintiff was impaired, and statements evidencing knowledge of what occurred. Plaintiff relies on direct and circumstantial evidence of his own conduct and on the derivative grounds in subsection D. Plaintiff's incomplete recollection is supplemented by the admissions, communications, observations, and other direct and circumstantial evidence. See Ninth Circuit Model Civil Jury Instruction 1.12.

**C. Claim 6: Intentional infliction of emotional distress**

For each Defendant, Plaintiff must establish: (1) outrageous conduct; (2) intent to cause emotional distress, or reckless disregard of its probability with the requisite awareness of Plaintiff's presence; (3) severe emotional distress; and (4) that the conduct was a substantial factor in causing that distress. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009); CACI No. 1600.

Against Defendant Golden, Plaintiff relies on the procurement and administration of GHB through the alleged misrepresentations, exploitation of her impairment, nonconsensual sexual conduct, abuse of professional trust, and

subsequent statements minimizing the Florida conduct. Against Defendant Bjorkman, she relies on his knowing assistance, participation during her impairment, and his conduct of entering the bathroom naked while Plaintiff was in the shower and his statements afterward regarding her behavior the previous night about which she had no memory. The claim concerns the overall Florida conduct, not merely an isolated offensive remark.

Plaintiff's testimony, observations of Madden and Farrell-Nelson, contemporaneous communications and photographs, and admissible psychological evidence support the nature, severity, and cause of the resulting distress. Dr. Chitra Raghavan's testimony is offered only within the scope permitted by the Court.

**D. Responsibility for the other Defendant's conduct**

For aiding and abetting, Plaintiff must prove the underlying tort, the assisting Defendant's actual knowledge that the other Defendant's conduct constituted a breach of duty, substantial assistance or encouragement, and resulting harm legally attributable to that assistance. *Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144–46 (2005); CACI No. 3610. For concerted action pursuant to a common design, Plaintiff must prove knowing agreement to the wrongful course, a tort committed pursuant to that design, and resulting harm. Restatement (Second) of Torts § 876(a)–(b); CACI No. 3600. Plaintiff advances

these grounds alternatively to proof that each Defendant personally committed or intentionally caused the tortious conduct attributed to him. An agreement must concern the wrongful course of conduct, not merely travel or business activity. Mere presence, association, or knowledge without substantial assistance or a knowing agreement does not suffice.

Plaintiff relies on the arrangements for the shared room, communications about GHB, each man's knowledge and alleged role in its administration, their conduct during Plaintiff's impairment, and subsequent statements. Liability must be determined separately for each Defendant.

## IV. Damages

Plaintiff seeks compensation for past and future emotional distress, mental and physical suffering, humiliation, loss of enjoyment of life, and psychological injury caused by the Florida conduct. She does not seek lost wages, lost earnings, loss of earning capacity, business-income loss, past or future medical expenses, or other economic damages. Her evidence includes her testimony, lay observations, and expert testimony within the Court's permitted scope. Alternative legal theories do not permit multiple recoveries for the same injury.

Under Plaintiff's California-law position, punitive damages require clear and convincing evidence of oppression, fraud, or malice as to the particular Defendant.

Cal. Civ. Code § 3294(a), (c); CACI No. 3940. Plaintiff relies on the alleged intentional deception, knowing exploitation of impairment, nonconsensual sexual contact, and coordinated conduct. Malice includes conduct intended to cause injury or despicable conduct carried on with willful and conscious disregard of another's rights or safety. Plaintiff seeks separate punitive determinations for Defendant Golden and Defendant Bjorkman.

Consistent with the existing phasing rulings, liability, compensatory damages, and entitlement to punitive damages are tried first. Only if the required predicate is found against a Defendant will the same jury determine the amount of punitive damages against him in a second phase. Financial-condition evidence will be presented only in that phase. Cal. Civ. Code § 3295(d); proposed amended pretrial order, § 13.

## V. Affirmative defenses and Plaintiff's opposing contentions

Plaintiff objects to legally unavailable defenses and disputes the factual predicates of the remaining defenses identified in the proposed amended pretrial order. Identification of a defense in that proposed order or in these contentions does not concede its legal sufficiency, evidentiary support, or entitlement to a jury instruction. No counterclaim is identified for Trial 1. Plaintiff retains the burden of proving the elements of her claims; a Defendant bears the burden applicable to a

genuine defense in avoidance. Denials of Plaintiff's elements do not become separate affirmative defenses merely because they are labeled as such.

Defendants' deletion of separately enumerated issues from Section 8 of the proposed Trial 1 pretrial order, while retaining defenses in Section 7, requires express resolution. Plaintiff preserves her position that omitted issues have been abandoned and does not consent to automatic restoration. Pending that determination, she maintains the opposing legal and factual contentions below. Any proposed addition remains subject to the applicable amendment requirements, including Rule 16(e) after entry of the final pretrial order.

**A. Limitations and governing law**

Defendant Golden's Second and Defendant Bjorkman's Seventh Defenses require an applicable limitations period, accrual date, and expiration before commencement, subject to applicable tolling, revival, and relation back. Plaintiff contends the Florida sexual-assault-related claims are timely under Cal. Code Civ. Proc. § 340.16 and disputes borrowing under Cal. Code Civ. Proc. § 361. The operative allegations, trip dates, filing history, and discovery evidence supply the relevant chronology. Defendant Golden's Nevada residence does not itself establish that Nevada's limitations period governs the Florida claims. Defendants bear the burden described in Section II when seeking to displace California law;

invocation of a foreign limitations period alone does not satisfy that burden. Plaintiff requests a ruling on the governing law before any limitations issue is submitted to the jury and identification of any genuinely disputed historical facts requiring resolution. Plaintiff also preserves her position that the Florida claims were timely under the four-year period applicable to intentional torts if Florida limitations law applies. Fla. Stat. section 95.11(3)(o) (2020). That alternative does not concede displacement of California law.

**B. Consent to the particular contact**

Defendant Golden's Fourth Defense must be evaluated against the particular contact alleged, its scope, and Plaintiff's capacity at the time. Plaintiff retains the burden of establishing lack of consent where required by the claim. Permission for one act does not authorize materially different contact. *Ashcraft v. King*, 228 Cal. App. 3d 604, 609–10 (1991).

Plaintiff acknowledges the initial voluntary ingestion of a liquid that Defendant Golden and Defendant Bjorkman called "GHB" and described as a workout or performance-enhancing substance on March 12, 2020. She contends that additional ingestions occurred without her knowledge or consent. That admission does not concede consent to sexual contact, knowledge of the substance's actual effects, or capacity to consent when the contact occurred.

Plaintiff relies on the alleged representations concerning the substance, the circumstances of administration, observed impairment, contemporaneous communications, admissions, and permitted expert testimony. Her theories include lack of agreement to the sexual contact and inability to give effective consent during the resulting impairment. Where material deception concerning the bodily invasion induced apparent consent, Plaintiff also relies on Restatement (Second) of Torts § 892B(2).

Prior interactions, sharing accommodations, voluntary ingestion, and later friendly communications do not independently establish effective consent to the Florida sexual contact. Plaintiff disputes the inferences Defendants seek to draw and preserves the applicable evidentiary objections. These matters cannot support a comparative-negligence reduction by relabeling willingness to travel or ingest a substance as fault for another person's intentional tort.

**C. Comparative negligence and percentage apportionment**

Plaintiff objects as a matter of law to the comparative-negligence component of Defendant Golden's Eighth Defense, the percentage-apportionment theory in his Ninth Defense, and any corresponding theory asserted by Defendant Bjorkman. An intentional tortfeasor cannot reduce noneconomic liability under Cal. Civ. Code § 1431.2 based on negligence attributed to Plaintiff, a codefendant, or a nonparty.

*B.B. v. County of Los Angeles*, 10 Cal. 5th 1, 29 (2020). Plaintiff requests that the Court exclude instructions and verdict questions seeking that prohibited reduction.

The jury must determine each Defendant's liability for the torts and concerted conduct proved. Plaintiff seeks joint and several compensatory liability for indivisible harm for which both Defendants are legally responsible, with no duplicate recovery. Separate punitive findings remain required. Genuine issues of causation and separable injury are addressed below; they do not authorize a percentage reduction based on Plaintiff's alleged carelessness. Without conceding that Florida law governs, Plaintiff also relies on Fla. Stat. § 768.81(4), which excludes actions based on intentional torts from that comparative-fault statute.

**D. Causation and genuinely divisible harm**

Defendant Golden's Eighth Defense, apart from its impermissible comparative-negligence component, and Defendant Bjorkman's Tenth and Eleventh Defenses contest causation and the harm attributable to the conduct proved. Plaintiff relies on the Florida chronology, witnesses' observations, communications, admissions, and psychological evidence to establish that each Defendant's actionable conduct caused or aggravated her injuries. She does not seek compensation in Trial 1 for unrelated harm or for the withdrawn Puerto Vallarta and Las Vegas claims.

A Defendant seeking a superseding-cause instruction must identify the asserted intervening event and establish a legally sufficient evidentiary basis. Participation by the other Defendant does not sever causation if it was part of the concerted conduct or assistance proved. Evidence of a preexisting condition or another contributing event does not by itself establish that the Florida harm can be divided. Plaintiff requests instructions distinguishing preexisting injury, aggravation, indivisible harm, and any supported division of damages, without converting those issues into comparative fault for an intentional tort.

**E. Laches**

Defendant Golden's Third and Defendant Bjorkman's Fourth Defenses do not bar the money-damages claims presented in Trial 1. Under California law, laches is unavailable against causes of action seeking money judgments, even when equitable claims are also joined. *Reid v. City of San Diego*, 24 Cal. App. 5th 343, 362 (2018). Plaintiff requests a ruling that laches supplies no defense to Claims 4, 5, or 6 and no jury instruction or verdict question. The applicable limitations rules govern timeliness.

**F. Unclean hands and in pari delicto**

The unclean-hands doctrine requires misconduct directly related to the claim and does not authorize a trial of the parties' general morality. *Kendall-Jackson*

*Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 978–79 (1999). Defendant Golden's Sixth and Defendant Bjorkman's Fifth Defenses therefore require identification of qualifying conduct and its direct connection to the relief sought. Plaintiff disputes that her travel, recruiting activities, ingestion, or later communications establish such misconduct. As to qualifying misconduct, the testimony concerning misrepresentation and impairment disputes knowing wrongful participation. As to the required connection, participation in travel or recruiting is not participation in the particular nonconsensual contact for which relief is sought.

Defendant Golden's Fifth Defense, in pari delicto, likewise requires more than an assertion that Plaintiff participated in travel, drinking, or drug use. Plaintiff was not a substantially equal participant in the alleged wrong of subjecting her to nonconsensual sexual contact. Her testimony and the evidence of deception and impairment oppose that characterization. Defendants must establish a recognized legal and factual basis for either doctrine; neither label permits a comparative-negligence deduction otherwise barred for an intentional tort. Plaintiff requests a threshold determination of their legal availability and factual support before any instruction or argument presenting them as independent grounds to deny recovery.

### G. Waiver, estoppel, and generalized inequity

Defendant Bjorkman's Second and Sixth Defenses require the representation or conduct relied upon, legally sufficient reliance, and resulting detriment. His Third Defense requires intentional relinquishment of a known right. Plaintiff denies knowingly abandoning these claims or inducing a detrimental change of position. Her incomplete recollection, impaired functioning, and subsequent discovery bear directly on knowledge and intent. Continued friendly or professional communications do not themselves establish waiver or estoppel. Defendant Bjorkman must identify the claimed relinquishment or reliance and supporting evidence before requesting an instruction. The knowledge and relinquishment elements are disputed through Plaintiff's impaired recollection and later discovery; the reliance and detriment elements require proof of a particular change of position by Bjorkman, not merely the existence of later friendly messages.

Defendant Bjorkman's Ninth Defense, that recovery would be unjust or inequitable, supplies no independent defense without a recognized doctrine and proof of its requirements. Plaintiff objects to any free-standing invitation to deny compensation because a juror disapproves of her conduct or considers an otherwise established recovery unfair.

**H. Mitigation of subsequent damages**

Defendant Golden's Seventh Defense is identified as withdrawn in the proposed amended pretrial order. Defendant Bjorkman's Twelfth Defense requires proof that Plaintiff unreasonably failed to take an available measure after injury, that reasonable action would have reduced the harm, and the amount reasonably avoidable. CACI No. 3930. Defendant Bjorkman bears the applicable burden; Plaintiff need not disprove a speculative treatment benefit.

Mitigation does not impose a duty to have prevented the assault and cannot be used to reduce damages because Plaintiff traveled, consumed a substance, or trusted either Defendant beforehand. Plaintiff relies on testimony concerning her response, efforts to obtain help, and trauma-related functioning. Plaintiff's decision to seek noneconomic damages does not establish unreasonable conduct or avoidable injury. Plaintiff requests that any mitigation instruction be confined to specific avoidable harm supported by the evidence, without a percentage-of-fault question.

**I. Punitive damages and matters for the Court**

Defendant Golden's Tenth Defense contests punitive entitlement. Plaintiff relies on the Defendant-specific proof in Section IV and accepts the applicable heightened burden under her California-law position. Defendant Golden's Twelfth

Defense concerning Mexico does not establish the law governing the Florida claims and presents no independent merits defense to the claims to be tried in Trial 1.

Defendant Golden's First and Eleventh Defenses and Defendant Bjorkman's First, Fourteenth, Sixteenth, Seventeenth, Eighteenth, and Nineteenth Defenses consist of pleading objections, denials, incorporations, and statements seeking to preserve additional defenses. The Court should determine any live legal sufficiency or pleading issue. Plaintiff objects to separate jury instructions on those labels. A general statement seeking to preserve additional defenses does not establish a defense or excuse compliance with the Court's procedures for amendment.

Defendant Bjorkman's Eighth, Thirteenth, Fifteenth, and Twentieth Defenses concern abuse of process, fees, costs, or expenses. Plaintiff disputes any entitlement and seeks no TVPRA fee award against either Trial 1 Defendant on the withdrawn claims. Sanctions and fee requests require an independent legal basis and the applicable procedure; they do not excuse a proven tort. Settlement credits and any prevention of duplicate recovery are for the Court to decide, with all objections preserved. Plaintiff requests that these matters remain outside the jury's liability deliberations.

## VI. Evidentiary issues and remaining legal questions

Other acts: existing rulings and additional uses requested. Plaintiff relies on her October 2, 2026 disclosure under Rules 415(b) and 404(b), identifying the expected testimony and supporting deposition passages for TH, CL, and Plaintiff. Dkt. 471 at 2–4 grants admission in part as to TH and permits CL's testimony for an admissible nonpropensity purpose; the rulings were made without prejudice. Plaintiff relies on those dispositions and the accompanying oral limitations, and separately requests approval of any additional incident or purpose described below before presenting it to the jury.

TH. Plaintiff relies on the ruling permitting TH's Rule 415 testimony concerning Defendant Bjorkman. TH describes the approximately 2007 Santa Monica hotel incident, including drinks prepared by Defendant Bjorkman, memory loss, intermittent awareness during nonconsensual intercourse, and profound impairment. She also describes nonconsensual genital touching and attempted penetration by Defendant Bjorkman at a Las Vegas pool between approximately 2000 and 2005. Plaintiff offers this evidence for the propensity inference permitted by Rule 415, and alternatively, for relevant nonpropensity purposes under Rule 404(b)(2), including recognition of incapacitation, intent, and absence of mistake. Plaintiff also seeks a contextual use of the separately disclosed workplace exposure and masturbation to explain TH's relationship with Defendant Bjorkman and her

responses to his conduct. The contextual exposure evidence and any incident or use beyond the existing ruling are requests for additional permission, not assertions of prior admission. Plaintiff requests separate rulings identifying each qualifying act and its permitted use against Bjorkman.

CL. Plaintiff relies on CL's August 27 and 28, 2020 Las Vegas observations for the nonpropensity purpose permitted by the Court concerning her belief that she was drugged. The disclosed evidence includes visits to the suite occupied by Defendant Bjorkman and Defendant Golden; an August 27 invitation she understood to be for a group gathering; and her August 28 consumption of a drink from an already-open bottle, unusual taste, perceptual changes, vomiting, and memory gaps. CL thereafter posted about the incident and received messages from both Defendant Golden and Defendant Bjorkman regarding the same. The earlier visit supplies context for her comparison. Plaintiff seeks consideration of this evidence on knowledge and absence of mistake based on the evidence connecting each Defendant to the conduct. Plaintiff does not offer CL's belief as a finding that a sexual assault occurred. The requested knowledge or absence-of-mistake inference requires an evidentiary connection to the particular Defendant and must remain within the Court's permitted nonpropensity use.

Plaintiff's other experiences. The notice also identifies the February 8, 2020 Puerto Vallarta incident involving alleged nonconsensual digital penetration by

Emily Keenan while Plaintiff was barely conscious and Defendant Golden's alleged knowing participation, and the two February 2020 Las Vegas trips involving pills represented as Adderall, drinks, sexual contact, and memory gaps. Plaintiff does not recall ingesting GHB during those earlier Las Vegas trips; that account is distinct from the admitted March 12 ingestion in Daytona Beach. Plaintiff seeks admission against Golden for the nonpropensity purposes identified in the October 2 notice, including knowledge of GHB and its effects, preparation, plan, intent, absence of mistake, and the scope or effectiveness of asserted consent under Rules 401, 403, and 404(b)(2). She also preserves her position that particular evidence is inextricably intertwined with the Florida events, subject to the Court's determination. Separately, she seeks Rule 415 consideration against Golden only for conduct the Court finds qualifies. These are requests for incident- and purpose-specific rulings, not assertions that a category is already admitted. The notice identifies Trial Exhibits 281, 282, 386–389 and the disclosed message identified as Chat #203396. No damages for the withdrawn Puerto Vallarta or Las Vegas claims will be requested from the Trial 1 jury. Plaintiff requests an incident-specific ruling and a limiting instruction identifying the Defendant and the purpose for which the evidence may be considered.

Farrell-Nelson will testify as a percipient witness to the Puerto Vallarta and Florida events, including her observations of Plaintiff's condition and Defendants' conduct.

Expert testimony. Plaintiff relies on Dr. LeBeau's testimony concerning GHB pharmacology, interaction with alcohol and other drugs, and effects on cognition, judgment, memory, and functioning, including the permitted hypothetical testimony. Plaintiff relies on Dr. Raghavan's testimony related to her examination and diagnosis of Plaintiff, including permitted general testimony concerning coercive control and victim responses and the permitted testimony concerning memory and post-assault psychological effects. Plaintiff preserves her objections to defense expert testimony exceeding the permitted scope, including credibility opinions and the toxicology-confirmation prevalence statistic. Fed. R. Evid. 702.

Personal-history evidence. Plaintiff preserves relevance, unfair-prejudice, and Rule 412 objections to sexual-history and unrelated personal-history evidence. Plaintiff relies on her testimony concerning her injuries, efforts to obtain help, and counseling.

Communications. Plaintiff relies on contemporaneous messages, communications between Defendant Golden and Defendant Bjorkman, photographs, and testimony concerning the Florida events to establish procurement

and administration of GHB, Defendants' knowledge and participation, Plaintiff's impairment, and the resulting harm.

Trial separation. Plaintiff will present the relevant business background, recruiting relationships, and trip arrangements as context for the Florida conduct. The Trial 1 jury will decide Claims 4, 5, and 6 against Defendant Golden and Defendant Bjorkman on the evidence presented in Trial 1. Plaintiff requests instructions maintaining the independent adjudication of the two trials.

Remaining legal questions include the governing substantive and limitations law; the proper consent, concerted-action, and punitive instructions; and admissibility of evidence from the other trips. Plaintiff preserves the position stated in Section I concerning the withdrawal and independent adjudication of Trial 2, and requests resolution of any disputed preclusion or evidentiary issue before that trial.

## VII. Jury trial and further proceedings

Plaintiff timely demanded a jury. Liability, compensatory damages, and punitive issues are to be decided by the Trial 1 jury under the Seventh Amendment and Fed. R. Civ. P. 38 and 39, with the punitive-amount phase described above. Plaintiff does not request additional separation of liability and compensatory damages. Plaintiff requests threshold legal rulings on the availability of the

asserted equitable defenses. If a legally available equitable defense remains and depends on facts common to the jury-triable claims, the jury should resolve those common facts first. Plaintiff does not concede legal availability, evidentiary support, or exclusive bench determination merely because a defense is labeled equitable.

Plaintiff preserves the proposed procedure for requesting a separate judgment under Fed. R. Civ. P. 54(b). Plaintiff requests that any judgment expressly preserve the Trial 2 claims and issues for independent adjudication. Taxable costs are sought under Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920, subject to the Court's orders and applicable local rules. Nothing here waives any fee recovery otherwise available against the Trial 2 Defendants.

Except for the express withdrawals and abandoned economic-damages categories, Plaintiff makes no additional abandonment by submitting trial-specific

contentions. She requests trial of the claims stated here consistently with the Court's orders and independent adjudication of the claims preserved for Trial 2.

Dated: October 12, 2026

Respectfully submitted,
**LENZE LAWYERS, PLC**
**COHEN HIRSCH, LP**

By: /s/ Jennifer A. Lenze
Jennifer A. Lenze
Brooke Cohen
Andrea Hirsch
Attorneys for Plaintiff Anya Roberts

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.2, the undersigned certifies that this memorandum contains 5,299 words, as calculated electronically, excluding the items permitted to be excluded by Local Rule 11-6.1, and complies with the applicable word limit.

Dated: October 12, 2026

By: /s/ Jennifer A. Lenze
Jennifer A. Lenze